IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DAVID YANOFSKY**
582 Market St. Suite 314
San Francisco, CA 94104

      Plaintiff,

    v.

**UNITED STATES DEPARTMENT OF COMMERCE**
1401 Constitution Avenue, NW
Washington, D.C. 20230,

      Defendant.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

David Yanofsky ("Plaintiff" or "Mr. Yanofsky"), by and through his undersigned counsel, hereby alleges as follows:

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for declaratory, injunctive, and other appropriate relief brought by David Yanofsky, an editor and journalist for *Quartz* (qz.com), a digitally native news outlet.

2. By this action, Plaintiff seeks to compel the Department of Commerce ("DOC" or "Defendant") to comply with its obligations under FOIA to release records concerning foreign travel to and from the United States that Mr. Yanofsky requested in connection with his reporting.

**PARTIES**

3. Plaintiff David Yanofsky is an editor and journalist for Quartz. His reporting is primarily data-driven, relying on the analysis of datasets to identify newsworthy trends and to

1

otherwise gather the news and report on matters of public interest and concern. Mr. Yanofsky has reported extensively on issues relating to travel and tourism for Quartz.

4. Defendant United States Department of Commerce is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiff seeks. The DOC's headquarters is located at 1401 Constitution Avenue NW, Washington, D.C. 20230.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### The I-92 and I-94 Programs and Related Records

7. The International Trade Administration ("ITA") is a bureau within the DOC. The National Travel and Tourism Office ("NTTO") and the Office of Travel and Tourism Industries ("OTTI") are offices within the ITA.

8. Among other duties, NTTO and OTTI manage the Visitors Arrival Program ("I-94 Program") and the United States International Air Traveler Statistics Program ("I-92 Program").

9. The "I–92 Program provides international air traffic statistics to the government and the travel industry, while the I–94 Program provides the official U.S. monthly and annual overseas visitor arrivals to the United States. One of the DOC's bureaus—the International Trade Administration ('the ITA')—uses the statistics that are collected through the I–92 program to generate a publication called the *U.S. International Air Travel Statistics Report*, and to create an underlying data file related to that report ('the I–92 Data File'). Meanwhile, that same bureau uses

the information obtained via the I–94 Program to create another record—the *Summary of International Travel to the United States*—and to generate another data file ('the I–94 Data File') that consists of anonymized data about foreign visitors to the United States." *Yanofsky v. United States Dep't of Commerce*, 306 F. Supp. 3d 292, 295 (D.D.C. 2018).

I-92 Program Records

10. According to the declaration of Ronald Erdmann, the Deputy Director for Research within NTTO, "ITA uses the statistics it collects under the I-92 Program to publish the *U.S. International Air Travel Statistics Report* on a monthly, quarterly, and annual basis. [. . .] ITA also maintains and utilizes a data file related to the report ('I-92 Data File'), which consists of anonymized data about air travelers between the United States and other countries." (italics in original). A true and correct copy of Mr. Erdmann's declaration, as filed in *Yanofsky v. United States Dep't of Commerce*, 306 F. Supp. 3d 292 (D.D.C. 2018) (ECF No. 20-1), is attached hereto as Exhibit A.

11. The ITA maintains websites where it identifies various types of records relating to its I-92 Program.

12. The ITA's website for 2015 I-92 records, for example, lists various types of records for sale and their "price." A true and correct printout of the ITA's website for 2015 I-92 records is attached hereto as Exhibit B. Those records include monthly, quarterly, and annual 2015 "Reports" (in both "printfile" and "Excel" format) with corresponding prices. *Id.* The "Annual Report (printfile & Excel)" for 2015 is listed with a "price" of $1,990. *Id.*

13. The ITA's 2015 I-92 website also lists "Data Files, for internal use only" and "Data Files, for resale" as separate records. Ex. B.

14. The ITA's 2015 I-92 website lists the 2015 "Data Files, for internal use only" with a "price" of $23,745. Ex. B.

15. The ITA's websites for I-92 records from 2014, 2013, 2012, and 2011 also list "Data Files" as separate records with a higher "price" than those years' "Reports." True and correct printouts of those websites are attached, collectively, as Exhibit C.

### I-94 Program Records

16. According to Mr. Erdman, "The 'I-94 International Arrivals Program' or 'I-94 Program' provides data on monthly and annual overseas visitor arrivals to the United States along with select Mexican and Canadian visitor statistics. The information is presented in a report entitled the *Summary of International Travel to the United States* with 35 tables of information about non-U.S. resident visitor arrivals. ITA sells monthly, quarterly, and annual subscriptions to this report for a fee. ITA also sells quarterly and annual publications of a data file called 'Air Arrivals I-94 Database (Detail Arrival Records)' ('I-94 Data File'), which consists of anonymized data about foreign visitors to the United States." Ex. A (italics in original).

17. The ITA maintains websites where it identifies various types of records relating to its I-94 Program.

18. The ITA's website for 2015 I-94 records, for example, lists various types of records for sale and their "price." A true and correct printout of the ITA's website for 2015 I-94 records is attached hereto as Exhibit D.

19. Under the first heading of the ITA's 2015 website for I-94 records, "*Summary of International Travel to the United States*", there are several options identified, including monthly and quarterly subscriptions and an "Annual Issue" either in "printfile" or "printfile & Excel", along with corresponding prices. Ex. D. The "Annual Issue (printfile & Excel)" for 2015 is listed with a "price" of $1, 220.00. *Id.*

20.     The ITA's website for 2015 I-94 records has a second heading—"*Air Arrivals I-94 Database (Detail Arrival Records)*"—that identifies a different set of records from the "*Summary of International Travel to the United States*", specifically, an "Annual datafile" and "Quarterly datafile".  Ex. D (italics in original).  The 2015 "Annual datafile" is listed with a "price" of $ 13,820.00. *Id.*

21.     A third heading on the ITA's 2015 I-94 website is "*Custom Reports (to your specs) and Trend Data*", underneath which it states: "Available in print, excel, and adobe format."  Ex. D (italics in original).  The "Annual Price" for the "Custom Reports" states "Call for Quote".  *Id.*

22.     The ITA's websites for I-94 records from 2014, 2013, 2012, and 2011 also list an "Annual datafile" or Annual, available quarterly" database on CD-ROM for those years as separate records with a higher "price" than those years' monthly and quarterly subscriptions or the "Annual Issue."  True and correct printouts of those websites are attached, collectively, as Exhibit E.

**Plaintiff's FOIA Request**

23.     On or about February 26, 2016, Plaintiff, through his then-counsel, sent a FOIA request to the DOC (the "Request") seeking data files and associated technical documentation related to the I-94 Program and I-92 Program.  A true and correct copy of the Request is attached hereto as Exhibit F, and incorporated by reference herein.

24.     By the Request, Plaintiff requested access to and copies of the "Air Arrivals I-94 Annual Datafile" from 2015, 2014, 2013, 2012 and 2011 and their associated technical documentation.  Plaintiff also requested access to and copies of the "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" for 2015, 2014, 2013, 2012 and 2011 and their associated technical documentation.  Ex. F.

5

25. In the Request, Plaintiff requested that the responsive records be provided in electronic format.  Ex. F.

26. In the Request, Plaintiff also sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

27. On or about March 30, 2016, Plaintiff received a letter from Defendant denying the Request (the "Denial Letter").  A true and correct copy of the Denial Letter is attached hereto as Exhibit G.

28. The Denial Letter stated that the requested records were being "withheld under 5 U.S.C. § 552(a)(4)(A)(vi)", and that 15 U.S.C § 1525 acts as a superseding fee statute with regard to the requested records.  The Denial Letter further stated that the requested records "are not available under the FOIA pursuant to the displacement provision[,]" and must instead be purchased through NTTO.  Ex. G.

29. On or about March 31, 2016, Plaintiff's counsel submitted an administrative appeal on Plaintiff's behalf to the DOC appealing its March 30, 2016 denial of the Request (the "Administrative Appeal").

30. Plaintiff did not receive a response to the Administrative Appeal.

**Plaintiff's Prior Lawsuit and the District Court's Decision**

31. Plaintiff initiated a lawsuit in this Court on May 19, 2016, against Defendant concerning its unlawful withholding of records responsive to his Request.  *See* Compl. for Declaratory and Injunctive Relief, ECF No. 1, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (D.D.C., filed May 19, 2016).

32. Following cross-motions for summary judgment this Court, the Honorable Ketanji Brown Jackson, granted summary judgment to Plaintiff, holding that none of the statutes cited by

6

Defendant qualified for FOIA's displacement provision, 5 U.S.C. § 552(a)(4)(A)(vi), and that the "DOC must follow the FOIA, and determine the fees that are applicable to Yanofsky's FOIA's request in accordance with the FOIA's fee-setting and fee-waiver provisions." *Yanofsky*, 306 F. Supp. 3d at 305 (D.D.C. 2018).

### Defendant's Continued Withholding of Records Following Summary Judgment in Favor of Plaintiff

33. During a telephone call on or about May 24, 2018, Defendant confirmed to Plaintiff's counsel that the DOC would not charge any fee for the records responsive to Plaintiff's Request.

34. On or about June 5, 2018, a FOIA officer from DOC sent an email to Plaintiff with links to two compressed "zip" files: "I-92.zip" and "I-94.zip" (collectively, the "Produced Records"). A true and correct copy of that email is attached as Exhibit H.

35. The "I-92.zip" file contained approximately 35 Excel spreadsheets.

36. The "I-94.zip" file contained approximately five Excel spreadsheets.

37. The Produced Records are not the records sought by Plaintiff in his Request.

38. The Produced Records are not the "I-92 Data File" or "I-94 Data File" referenced in the Erdmann Declaration.

39. Following meet and confer discussions between counsel, and at the suggestion of the Court, Plaintiff filed a motion to enforce judgment on or about October 30, 2018. *See* Pl.'s Mot. to Enforce J., ECF No. 41, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (D.D.C., filed Oct. 30, 2018).

40. In response to Plaintiff's motion to enforce judgment, DOC submitted a declaration from Isabel Hill, the Director of the NTTO, averring that the Produced Records are not the I-92 and I-94 data files Plaintiff requested, but instead "standardized" summary reports

created using those data files. A true and correct copy of Ms. Hill's declaration, as filed in *Yanofsky v. United States Dep't of Commerce*, 306 F. Supp. 3d 292 (D.D.C. 2018) (ECF No. 42-1), is attached hereto as Exhibit I.

41. Ms. Hill further averred that each of the 35 Excel spreadsheets in the "I-92.zip" file produced to Plaintiff on or about June 5, 2018, is a "*U.S. International Air Travel Statistics Report*". Ex. I ¶ 23 (italics in original).

42. Ms. Hill further averred that each of the five Excel spreadsheets in the "I-94.zip" file produced to Plaintiff on or about June 5, 2018, is a "*Summary of International Travel to the United States* report". Hill Decl. ¶ 23 (italics in original).

43. Following briefing from the parties, the Court entered an order on or about April 25, 2019, denying Plaintiff's motion to enforce. Order, ECF No. 47, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (D.D.C. Apr. 25, 2019). The Court's Order stated that the "Court's prior judgment did not reach the issue of the agency's production obligation at all[,]" and that "the post-judgment agency conduct that Yanofsky maintains is inconsistent with this Court's summary judgment order is not, in fact, covered by the order[.]" *Id.*

44. On or about May 16, 2019, Plaintiff filed a motion for reconsideration of the Court's Order denying his motion to enforce.

45. On or about May 17, 2019, the Court entered a minute order denying Plaintiff's motion for reconsideration. Minute Order, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (D.D.C. May 17, 2019). The Court's May 17, 2019 order states, *inter alia*: "if Plaintiff's core concern is that, in the wake of this Court's resolution of his claims pertaining to the agency's fee-setting policies, the agency has persisted in withholding the requested records in alleged violation of the FOIA, his option is to file a complaint that makes that legal claim[.]" *Id.*

46. Defendant has not produced any additional records to Plaintiff in response to his Request since its disclosure of the Produced Records on or about June 5, 2018, nor has it invoked any exemption to withhold records responsive to his Request.

## CAUSE OF ACTION

### Count I: Violation of FOIA for Unlawful Withholding of Agency Records

47. Plaintiff repeats and realleges paragraphs 1–46.

48. Defendant is an agency subject to FOIA.

49. Through his Request, Plaintiff properly asked for records within the possession, custody and/or control of Defendant.

50. The Request complied with all applicable regulations regarding the submission of FOIA requests.

51. Defendant has not released the records sought by the Request.

52. Defendant has not cited any exemptions to withhold records or portions thereof that are responsive to the Request.

53. Defendant has improperly withheld records responsive to the Request in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

54. Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(C)(i).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1) issue a declaration that Plaintiff is entitled to disclosure of the records sought by the Request;

2) enjoin Defendant from withholding all records or portions thereof responsive to the Request;

3) award Plaintiff reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

4) grant all such other relief as the Court may deem just and proper.

Dated: July 31, 2019

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
Email: ktownsend@rcfp.org
Adam A. Marshall
DC Bar No. 1029423
Email: amarshall@rcfp.org
Reporters Committee for
Freedom of the Press
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Counsel for Plaintiff*