IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF COMMERCE<br><br>     Defendant. | Civil Action No. 19-2290 (KBJ) |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7(h), Defendant United States Department of Commerce ("DOC") hereby submits its response to the additional statement of material facts submitted by Plaintiff David Yanofsky.

The response reproduces each paragraph of Plaintiff's additional statement of material facts, and includes Defendant's response. For the convenience of the Court, Defendant has maintained the numbering and reproduced the headings in Plaintiff's submission.

**A. DOC's I-92 and I-94 Programs and Data Files**

39.     The I-92 Program is administered by the International Trade Administration ("ITA"), a component of the National Travel and Tourism Office ("NTTO") within DOC. Marshall Decl. Ex. 1 at ¶3 (hereinafter, the "Erdmann. Decl.").

**Defendant's Response:** Disputed. Although it is unclear what Plaintiff means by "administer[ing]" the program, the I-92 Program is a joint effort between CBP and NTTO. Plaintiff does not dispute that it is a joint program in ¶ 5 of the Statement of Material Facts.

1

40. NTTO's governmental functions include the collection, production, and publication of comprehensive international travel and tourism statistics. Declaration of Isabel Hill (Dec. 6, 2019) (hereinafter, the "Second Hill Decl.") at ¶4.

**Defendant's Response:** Disputed. Although NTTO's statistical program encompasses efforts to collect, produce, and publish of comprehensive international travel and tourism statistics, to the extent that Plaintiff is attempting to imply that such a function is inherently governmental and cannot be performed by non-governmental personnel the material fact is disputed. Furthermore, to the extent that Plaintiff is attempting to imply that NTTO's statistical program has exclusive authority with respect to collecting, producing, and publishing comprehensive international travel and tourism statistics, the material fact is disputed. Defendant notes that CBP obtains statistics used by NTTO's statistical program, and that NTTO utilizes a contractor to produce statistics that it publishes.

41. Information about travelers collected as part of the I-92 Program is transmitted from CBP to DOC. Second Hill Decl. ¶¶8–10.

**Defendant's Response:** Undisputed.

42. ITA takes the data from CBP and "processes [it] using a program called SQL and converts the data into a format that can be used by NTTO." Marshall Decl. Ex. 2 at ¶12 (hereinafter, the "First Hill Decl.").

**Defendant's Response:** Undisputed. To clarify, the data from CBP is converted into a format usable by SQL, and any processing that is done on the data is done within SQL.

43. ITA maintains and utilizes a data file ("I-92 Data File"), which consists of anonymized data about air travelers between the United States and other countries. Erdmann Decl. ¶4; Marshall Decl. Ex. 3 at ¶17; Marshall Decl. Ex. 4 at ¶17.

**Defendant's Response:** Undisputed. This data file contains identical information to the *U.S. International Air Travel Statistics Report*, and was produced to Plaintiff before the instant suit was filed. The only difference between the report and the data file is the format: the report is in .pdf printable format, and the data file is in a .xlsx workbook format. Jan. 2020 Hill Decl. ¶ 7.

44.     The I-92 Data File does not permit information to be retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. Erdmann Decl. ¶4; Marshall Decl. Ex. 3 at ¶17; Marshall Decl. Ex. 4 at ¶17; Second Hill Decl. ¶11.

**Defendant's Response:** Undisputed.

45.     The NTTO creates reports and publications from the I-92 Data File. Erdmann Decl. ¶4; Second Hill Decl. ¶11; Marshall Decl. Ex. 5.

**Defendant's Response:** Undisputed. A report corresponding to a printable format of the I-92 Data File is sold under the name *U.S. International Air Travel Statistics Report*. Jan. 2020 Hill Decl. ¶¶ 6. 7. Defendant notes that the Erdmann declaration states "ITA … maintains and utilizes a data file related to the report ('I-92 Data File')".

46.     One of the publications NTTO creates from the I-92 Data File is the *U.S. International Air Travel Statistics Report*, which is also known as a "Standardized Report." First Hill Decl. ¶13; Second Hill Decl. ¶11; Erdmann Decl. ¶4; Marshall Decl. Ex. 5.

**Defendant's Response:** Undisputed that NTTO creates a printable report of the I-92 Data File and sells it under the name *U.S. International Air Travel Statistics Report*. Jan. 2020 Hill Decl. ¶¶ 6, 7. To the extent Plaintiff is asserting that NTTO creates additional reports from the I-92 Data File, disputed.

47. NTTO also prepares "Customized Data Files" under the I-92 Program. Second Hill Decl. ¶11; First Hill Decl. ¶13.

**Defendant's Response:** Undisputed.

48. The I-92 Standardized Reports do not contain all the information that is contained in the DOC's I-92 Data File. Second Hill Decl. ¶11; Marshall Decl. Ex. 6; Yanofsky Decl., ¶¶11–13.

**Defendant's Response:** Disputed. The standardized report known as the *U.S. International Air Travel Statistics Report* contains the same data as the I-92 Data File. Jan. 2020 Hill Decl. ¶ 7. The only difference between the report and the data file is the format: the report is in .pdf printable format, and the data file is in a .xlsx workbook format which allows the data to be manipulated by the user. *Id.*

49. The date of individual flights is aggregated in the I-92 Standardized Report. Second Hill Decl. ¶11; First Hill Decl. ¶13; Marshall Decl. Ex. 6.

**Defendant's Response:** Undisputed.

50. The date of individual flights can be produced in "Customized Data Files". Second Hill Decl. ¶11; First Hill Decl. ¶13.

**Defendant's Response:** Undisputed.

51. The date of individual flights exists in the I-92 Data File. Second Hill Decl. ¶11; First Hill Decl. ¶13.

**Defendant's Response:** Disputed. The data in the I-92 Data File is identical to the data in the Standardized Report. Jan. 2020 Hill Decl. ¶ 7.

52. The I-94 Program is part of the DOC's international trade activities conducted through ITA. Erdmann Decl. ¶2.

**Defendant's Response:** To the extent Plaintiff is alleging that the I-94 is entirely within DOC, disputed. The I-94 program is a joint effort between CBP and NTTO, a fact which Plaintiff does not appear to dispute in ¶ 11 of the Statement of Material Facts.

53. The I-94 Program provides data on monthly and annual overseas visitor arrivals to the United States along with certain Mexican and Canadian visitor statistics. Erdmann Decl. ¶5.

**Defendant's Response:** Undisputed.

54. Some data that is collected and used as part of the I-94 Program is transmitted from CBP to an NTTO contractor. Second Hill Decl. ¶14.

**Defendant's Response:** Undisputed.

55. NTTO collects additional information that is used in the I-94 Program from Statistics Canada and the Instituto Nacional de Estradística y Geográfia ("INEGI") in Mexico. Second Hill Decl. ¶14.

**Defendant's Response:** Undisputed.

56. NTTO's contractor extracts and anonymizes data relevant to travel and tourism from the information it receives to create the I-94 Data File. Second Hill Decl. ¶¶14, 16; Erdmann Decl. ¶2; Marshall Decl. Ex. 3 at ¶¶12–14; Marshall Decl. Ex. 4 at ¶¶12–14.

**Defendant's Response:** To the extent that Plaintiff is alleging the existence of any data file containing data beyond that contained in the excel workbooks that were produced to Plaintiff prior to the filing of this lawsuit, or any custom reports created, disputed. Jan. 2020 Hill Decl. ¶¶ 16, 17.

57. DOC's I-94 Data File "consists of anonymized data about foreign visitors to the United States." Erdmann Decl. ¶5.

**Defendant's Response:** Undisputed.

58. The DOC's I-94 Data File does not permit information to be retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. Erdmann Decl. ¶5; Second Hill Decl. ¶16.

**Defendant's Response:** Undisputed.

59. NTTO's contractor uses the I-94 Data File to create summary tables that appear in an NTTO report called *Summary of International Travel to the United States*, which is also known as a "Standardized Report." Second Hill Decl. ¶¶16, 18; Marshall Decl. Ex. 5.

**Defendant's Response:** Undisputed. The data in the report is identical to the data in the data file, the only difference being that the report is in printable text format, whereas the data file is in manipulatable excel format. Jan. 2020 Hill Decl. ¶ 17.

60. NTTO also prepares "Customized Data Files" under the I-94 Program. Second Hill Decl. ¶18.

**Defendant's Response:** Undisputed.

61. "Customized Data Files" reflect parameters and file formats specified by a third-party. Second Hill Decl. ¶18.

**Defendant's Response:** Undisputed.

62. Information not included in the I–94 Standardized Report can be set forth in a "customized" DOC publication. Second Hill Decl. ¶18; Marshall Decl. Ex. 7.

**Defendant's Response:** Undisputed.

63. A "customized" DOC I-94 publication could identify "how many Japanese male travelers on a business visa between the ages of 25 and 50 arrived through Los Angeles International Airport (LAX) on a Friday with the first intended address (address while in the U.S.) being Nevada . . . ." Marshall Decl. Ex. 7.

**Defendant's Response:** Undisputed that a customized report could provide such data. It is unclear what Plaintiff means by a "DOC I-94 publication"; Defendant does not publish such information, but Defendant does have a contract in place giving it the ability to require the contractor to create/compile such information from the I-94 data on a level of effort basis. Jan. 2020 Hill Decl. ¶¶ 22, 23.

64. The I-94 Standardized Reports do not contain all the information that is contained in the I-94 Data File. Marshall Decl. Exs. 7, 8; Second Hill Decl. ¶18; Yanofsky Decl., ¶¶11–13.

**Defendant's Response:** Disputed. The data in the report is identical to the data in the data file, the only difference being that the report is in printable text format, whereas the data file is in manipulatable excel format. Jan. 2020 Hill Decl. ¶ 17.

**B. Plaintiff's Request and *Yanofsky I***

65. On February 26, 2016, Plaintiff, through his then-counsel, sent a FOIA request to the DOC via email (the "Request"). Compl. Ex. F; Yanofsky Decl. ¶2 & Exs. 1–2.

**Defendant's Response:** Undisputed.

66. By the Request, Plaintiff requested access to and copies of the "'Air Arrivals I-94 Annual Datafile' from 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation," and the "'U.S. International Air Travel Statistics Report (APIS/I-92) Data Files' for 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation." Compl. Ex. F; Yanofsky Decl. Ex. 2.

**Defendant's Response:** Undisputed.

67. In the Request, Mr. Yanofsky specified that he would like the records to be produced "in electronic format." Compl. Ex. F; Yanofsky Decl. Ex. 2.

**Defendant's Response:** Undisputed.

68. On or about March 30, 2016, Plaintiff received a letter from Defendant denying the Request (the "Denial Letter"). Compl. ¶27 & Ex. G; Ans. ¶27; Second Hill Decl. ¶22.

**Defendant's Response:** Undisputed.

69. The Denial Letter stated that the requested records were being "withheld under 5 U.S.C. § 552(a)(4)(A)(vi)[.]" Compl. ¶28 & Ex. G; Ans. ¶28; Second Hill Decl. ¶22.

**Defendant's Response:** Undisputed.

70. The Denial Letter further stated that the requested records "are not available under the FOIA pursuant to the displacement provision[,]" and must instead be purchased through NTTO. Compl. ¶28 & Ex. G; Ans. ¶28.

**Defendant's Response:** Undisputed.

71. Plaintiff filed an administrative appeal with DOC on or about March 31, 2016 appealing the DOC's denial of the Request (the "Administrative Appeal"). Yanofsky Decl. ¶4; Compl. ¶29; Ans. ¶29.

**Defendant's Response:** Undisputed.

72. Plaintiff did not receive a determination from the DOC with respect to the Administrative Appeal within twenty business days. Yanofsky Decl. ¶5; Marshall Decl. Ex. 3 at ¶58; Marshall Decl. Ex. 4 at ¶ 58.

**Defendant's Response:** Undisputed.

73. Plaintiff initiated a lawsuit against DOC in this Court on May 19, 2016, over its denial of the Request. *See* Compl. for Declaratory and Injunctive Relief, ECF No. 1, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (D.D.C., filed May 19, 2016) ("*Yanofsky I*").

**Defendant's Response:** Undisputed.

### C. DOC's refusal to turn over the requested records following *Yanofsky I*

74. During a telephone call on or about May 24, 2018, Defendant confirmed to Plaintiff's counsel that the DOC would not charge any fee for the records responsive to Plaintiff's Request. Compl ¶33; Ans. ¶33; Marshall Decl. ¶2.

**Defendant's Response:** Undisputed.

75. On or about June 5, 2018, a FOIA officer from DOC sent an email to Plaintiff with links to two compressed "zip" files: "I-92.zip" (the "Produced I-92 Records") and "I-94.zip" (the "Produced I-94 Records") (collectively, the "Produced Records"). Compl. ¶34 & Ex. H; Ans. ¶34; Yanofsky Decl. ¶6; Second Hill Decl. ¶28.

**Defendant's Response:** Undisputed.

76. The Produced I-92 records consist of 35 Excel spreadsheets. Compl. ¶35; Ans. ¶34; Second Hill Decl. ¶28; Yanofsky Decl. ¶7.

**Defendant's Response:** Undisputed.

77. The Produced I-92 Records are the *U.S. International Air Travel Statistics Report*, (*i.e.*, a "Standardized Report"), for 2011–2015. Compl ¶41; Ans. ¶41; First Hill Decl. ¶23; Second Hill Decl. ¶29.

**Defendant's Response:** Disputed. The standardized report known as the *U.S. International Air Travel Statistics Report* contains the same data as the I-92 Data File. Jan. 2020 Hill Decl. ¶ 7. The only difference between the report and the data file is the format: the report is

9

in .pdf printable format, and the data file is in a .xlsx workbook format which allows the data to be manipulated by the user. *Id.* The Produced I-92 records were the excel spreadsheets, i.e. data files, and not reports, though the two contain identical data. *Id.* ¶¶ 7, 8.

78.     The Produced I-92 Records are not the I-92 Data File for 2011–2015. Compl. ¶41; Ans. ¶41; First Hill Decl. ¶23; Second Hill Decl. ¶29; Marshall Decl. Exs. 5, 6; Erdmann Decl. ¶4; Second Hill Decl. ¶¶10–11; Yanofsky Decl. ¶¶11–13.

**Defendant's Response:** Disputed. The records produced are the I-92 data files for 2011 through 2015. Jan. 2020 Hill Decl. ¶ 8.

79.     The Produced I-92 Records are not the records sought by Mr. Yanofsky's Request. Compl. Ex. F; Yanofsky Decl. ¶11 & Ex. 2; Compl. ¶41; Ans. ¶41; First Hill Decl. ¶23; Second Hill Decl. ¶29; Marshall Decl. Ex. 6; Erdmann Decl. ¶4; Second Hill Decl. ¶¶10–11; Marshall Decl. Ex. 5.

**Defendant's Response:** Disputed. The Produced I-92 Records are precisely what Mr. Yanofsky's Request specified when he requested the I-92 Data Files for 2011-2015. Jan. 2020 Hill Decl. ¶ 8. ITA does not maintain or possess any other records that could reasonably be described as I-92 Data Files. *Id.*

80.     The Produced I-94 Records consist of five Excel spreadsheets. Compl. ¶36; Ans. ¶36; First Hill Decl. ¶23; Second Hill Decl. ¶28; Yanofsky Decl. ¶8.

**Defendant's Response:** Undisputed.

81.     The Produced I-94 Records are the *Summary of International Travel to the United States* (*i.e.*, a "Standardized Report") for 2011–2015. Compl. ¶42; Ans. ¶42; First Hill Decl. ¶23; Second Hill Decl. ¶30.

10

**Defendant's Response:** Disputed. The Produced I-94 Records are data files, not reports. However, the data in the data files are identical to the data in the standardized reports, the only difference being the format of the records. (The data files are in manipulatable excel format, whereas the reports are in printable pdf format.) Jan. 2020 Hill Decl. ¶ 17.

82.  The Produced I-94 Records are not the I-94 Data File for 2011–2015. Compl. ¶42; Ans. ¶42; First Hill Decl. ¶23; Second Hill Decl. ¶¶16–18, 30; Marshall Decl. Exs. 5, 8; Erdmann Decl. ¶5; Yanofsky Decl., ¶¶11–13.

**Defendant's Response:** Disputed. The Produced I-94 Records are the I-94 Data Files for 2011 through 2015. Jan. 2020 Hill Decl. ¶ 19.

83.  The Produced I-94 Records are not the records sought by Mr. Yanofsky's Request. Compl. Ex. F; Yanofsky Decl. ¶11 & Ex. 2; Compl. ¶42; Ans. ¶42; First Hill Decl. ¶23; Second Hill Decl. ¶¶16–18, 30; Marshall Decl. Exs. 5, 8; Erdmann Decl. ¶5.

**Defendant's Response:** Disputed. The Produced I-94 Records are precisely what Mr. Yanofsky's Request specified when he requested the I-94 Data Files for 2011 through 2015. ITA does not maintain or possess any other records that could reasonably be described as I-94 Data Files. Jan. 2020 Hill Decl. ¶ 19.

84.  During meet and confer discussions following the initiation of the above-captioned case, Plaintiff's counsel told Defendant's counsel that Mr. Yanofsky's Request sought the I-92 Data File and I-94 Data File for 2011–2015, Marshall Decl. ¶13 & Ex. 9.

**Defendant's Response:** Defendant does not recall the exact words Plaintiff used during the meet and confer, but notes that Defendant has confusingly used "data", "data file", and "database" interchangeably. Defendant does not dispute Plaintiff's latest representation that it seeks the I-92 and I-94 data files for 2011 through 2015.

11

85. On September 16, 2019, Plaintiff's counsel sent an email to Defendant's counsel stating, *inter alia*, that Plaintiff's Request sought "the underlying I-92 data in DOC's database for 2011–2015. In other words, the data <u>from which</u> both DOC's annual reports and customized reports are created." Marshall Decl. Ex. 9 (emphasis in original).

**Defendant's Response:** Undisputed. Defendant notes that, per paragraph 84, Plaintiff has clarified its request and is now seeking the data files for I-92 data for 2011 through 2015.

86. Plaintiff's counsel's September 16, 2019 email to Defendant's counsel further stated, *inter alia*, that Plaintiff's Request sought "the underlying I-94 data stored in the DOC's contractor's database, <u>from which</u> the annual issues are generated." Marshall Decl. Ex. 9 (emphasis in original).

**Defendant's Response:** Undisputed. Defendant notes that, per paragraph 84, Plaintiff has clarified its request and is now seeking the data files for I-94 data for 2011 through 2015.

87. Plaintiff's counsel's September 16, 2019 email to Defendant's counsel also included a range of acceptable data formats for DOC to produce the I-92 Data File and I-94 Data File, including CSV, Excel, Microsoft Access Database, SAS, SPSS, STATA, SQL (and any derivative thereof), or any database type using open source software. Marshall Decl. Ex. 9.

**Defendant's Response:** Undisputed.

88. By email dated September 19, 2019, DOC's counsel stated to Plaintiff's counsel that DOC understood Plaintiff's Request to seek a copy of the databases from which DOC creates reports under the I-92 Program and I-94 Program. Marshall Ex. 5.

**Defendant's Response:** Undisputed.

89. DOC's counsel's September 19, 2019 email stated, *inter alia*: "it is our understanding that [Plaintiff is] seeking an electronic copy of the databases used to create I-92 and

12

I-94 reports, and DOC believes that its non-production of those databases is proper under FOIA." Marshall Decl. Ex. 5.

**Defendant's Response:** Undisputed.

90.     DOC has not produced any additional records or data to Plaintiff since the disclosure of the Produced Records on June 5, 2018.  Marshall Decl. ¶3; Yanofsky Decl. ¶9.

**Defendant's Response:** Undisputed.

91.     The only records Defendant has produced to Plaintiff in response to his Request are I-92 Standardized Reports and I-94 Standardized Reports for 2011–2015.  Compl. ¶41; Ans. ¶41; First Hill Decl. ¶23; Second Hill Decl. ¶29; Compl. ¶42; Ans. ¶42; First Hill Decl. ¶23; Second Hill Decl. ¶30; Marshall Decl. ¶3; Yanofsky Decl. ¶¶9–10.

**Defendant's Response:** Disputed. Jan. 2020 Hill Decl. ¶¶ 7, 8, 17, 19, 20.

92.     Defendant has not cited any FOIA exemption set forth at 5 U.S.C. § 552(b) to withhold records responsive to Mr. Yanofsky's Request.  Second Hill Decl.; Mem. In Support of Def.'s Mot. for Summ. J.

**Defendant's Response:** Undisputed, as Defendant has not withheld any responsive records. Jan. 2020 Hill Decl. ¶¶ 8, 19.

Dated: January 31, 2020               Respectfully submitted,

                                      JESSIE K. LIU, D.C. Bar No. 472845
                                      United States Attorney

                                      DANIEL F. VAN HORN, D.C. Bar No. 924092
                                      Chief, Civil Division

                      By:     /s/   *Scott Leeson Sroka*
                                      SCOTT LEESON SROKA, Member of New York Bar
                                      Assistant United States Attorney
                                      555 Fourth Street, N.W.
                                      Washington, D.C. 20530
                                      (202) 252-7113
                                      Scott.Sroka@usdoj.gov
                                      *Attorneys for Defendant*