UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID YANOFSKY,                    )
                                   )
          Plaintiff,               )
                                   )        Civil Action No. 19-2290 (KBJ)
          v.                       )
                                   )
UNITED STATES                      )
DEPARTMENT OF COMMERCE,  )
                                   )
          Defendant.               )
_____  )

## DEFENDANT'S COMBINED REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant U.S. Department of Commerce ("DOC") respectfully files this combined reply in further support of its motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment. In support of this filing, Defendant submits the attached memorandum of law, the response to Plaintiff's statement of material facts, and a second agency declaration and the exhibits thereto.

Dated: February 19, 2020          Respectfully submitted,

                                   TIMOTHY J. SHEA, D.C. Bar. # 437437
                                   United States Attorney

                                   DANIEL F. VAN HORN, D.C. Bar # 924092
                                   Chief, Civil Division

                                   _/s/ William Chang_
                                   WILLIAM CHANG
                                   D.C. BAR #1030057
                                   Assistant United States Attorney
                                   555 4th Street, N.W.
                                   Washington, D.C. 20530
                                   (202) 252-2510
                                   William.chang2@usdoj.gov

  /s/   *Scott Leeson Sroka*
SCOTT LEESON SROKA, Member of New York Bar
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7113
Scott.Sroka@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID YANOFSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 19-2290 (KBJ) |
| v. | ) | |
| | ) | |
| UNITED STATES | ) | |
| DEPARTMENT OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

One of the core responsibilities of the National Travel and Tourism Office ("NTTO") of

the International Trade Administration ("ITA"), a bureau of the Department of Commerce

("DOC"), is to collect, analyze, and disseminate international travel and tourism statistics for the

U.S. Travel and Tourism Statistical System. Second Declaration of Isabel Hill ("Jan. 2020 Hill

Decl."[1]) ¶ 4. The data is used as a significant component to calculate trade balances between the

United States and other countries, which in turn factors significantly into the calculation of the

nation's Gross Domestic Product ("GDP"). Jan. 2020 Hill Decl., Ex. 1 at 1. Pursuant to the Privacy

Act, the Department of Homeland Security ("DHS") shares data with DOC only "upon advanced

adequate written assurances that the data will be used solely as a statistical research or reporting

---

[1] This is the second declaration from Isabel Hill in this lawsuit. Ms. Hill also submitted a declaration in the related lawsuit *Yanofsky v. Department of Commerce*, Civ. A. No. 16-0951 (D.D.C. 2016) ("*Yanofsky I*"). To avoid confusion with Plaintiff's terminology of referring to Ms. Hill's first declaration in this lawsuit as the "Second Hill Decl.", Defendant will adopt Plaintiff's shorthand of referring to Ms. Hill's first declaration in this lawsuit as the "Second Hill Decl." and will refer to Ms. Hill's second declaration in this lawsuit as the "Jan. 2020 Hill Decl.". Defendant will refer to Ms. Hill's declaration in *Yanofsky I* as the "*Yanofsky I* Hill Decl."

record," and that the data will be anonymized by DOC before being shared with any other party. *Id.* at 2.

NTTO faithfully executes its duty to calculate international travel and tourism statistics, simultaneously helping the government gain key statistical insight into economic indicators for the country while also making available to the public information that could be useful for business planning purposes. Pursuant to the Mutual Educational and Cultural Exchange Act of 1961 ("MECEA"), 22 U.S.C. § 2451, *et seq.*, and the Consolidated Appropriations Act of 2016 ("CAA 2016"), Pub L. No. 114-113, § 9(B), 129 Stat. 2242, 2287 (2015), NTTO is authorized to seek "payment for assessments for services provided" as part of th[is] activit[y]." § 9(B), 129 Stat. at 2287.

When Plaintiff filed a Freedom of Information Act ("FOIA") request in 2016 seeking data files from 2011 through 2015 for two statistical programs that NTTO is specifically authorized to sell, DOC argued in good faith that MECEA and CAA 2016 acted as a FOIA fee-displacement mechanism. *See Yanofsky v. Dep't of Commerce*, Civ. A. No. 16-0951 (D.D.C. 2016), ECF No. 28, Mem. Op. ("*Yanofsky I* Opinion"). This Court disagreed. *Id.* In accordance with the Court's Opinion and Order, DOC produced all of the requested data files to Plaintiff. Jan. 2020 Hill Decl. ¶¶ 11, 19. DOC did not claim any exemptions and also exercised its discretion, waiving all fees permitted under FOIA. Second Hill Decl. ¶ 26. DOC did not withhold any information in the data files pursuant to any FOIA exemption. *Id.*

Plaintiff now strenuously argues that DOC is withholding data files responsive to its FOIA request. *See generally* Plaintiff's Opposition to Defendant's Motion for Summary Judgment. That contention is simply incorrect. NTTO fulfills a critical role in providing statistics for the government to use in economic planning and goes to significant lengths to provide information to

any entity that wishes to study it. NTTO provided all of its data files for the I-92 and I-94 Programs for the years 2011 through 2015 to Plaintiff in June 2018, nearly 14 months before this lawsuit was filed. Second Hill Decl. ¶ 27. Because no data files responsive to Plaintiff's FOIA request have been withheld, summary judgment should be granted in favor of Defendant.

## ARGUMENT

I.    **Contrary To Plaintiff's Assertions, DOC Has Released All Data Files Plaintiff Requested.**

Plaintiff's FOIA request sought copies of the "Air Arrivals I-94 Datafile" and the "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" for the years 2011 through 2015. Second Hill Decl. ¶ 21. That is what was provided to them. The "Air Arrivals I-94 Datafile" refers to data that is contained in the data file that corresponds to the *Summary of International Travel to the United States* report for that year. Second Hill Decl. ¶¶ 16, 17. The "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" refers to the seven data files per year that correspond to the tables in the *U.S. International Air Travel Statistics Report*. Second Hill Decl. ¶ 11. Those data files were provided at no charge to Plaintiff in response to his FOIA request in June 2018, after this Court determined that no fee-displacing statute existed that could support the imposition of fees outside of FOIA to supply these files. Second Hill Decl. ¶¶ 25-30.

It appears that Plaintiff has hypothesized, without support, the existence of additional data files containing anonymized, processed records. *See generally* Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Memo in Opp.) at 4-5. For example, Plaintiff alleges the existence of an I-92 data file that contains more data than what is printed on the corresponding standardized report. *Id.* at 4. However, an I-92 data file and an I-92 standardized report contain identical information. Jan. 2020 Hill Decl. ¶ 7. The only difference between the report and the

3

associated data file is its format: the report is in printable text format, whereas the data file is in manipulatable excel format. *Id.* Thus, Plaintiff's statements, such as, "the date of individual flights is aggregated in the standardized report … [b]ut that information exists in the DOC's I-92 Data File" are simply inaccurate, as Plaintiff can readily verify because he is in possession of the I-92 data files for the years requested. Second Hill Decl. ¶ 27. Similarly, Plaintiff's unsupported assertions that "[t]he I-94 standardized reports do not contain all the information that is contained in the I-94 Data File" are similarly incorrect. Plaintiff's Memo in Opp. at 5; *contra* Jan. 2020 Hill Decl. ¶ 17.

Thus, Plaintiff's argument "that Defendant is withholding the I-92 Data File and I-94 Data File requested by Plaintiff" rings false. Plaintiff's Memo in Opp. at 10. The data files have been produced, and summary judgment should be granted to DOC.

To the extent that Plaintiff believes that the databases containing CBP records from which the I-92 and I-94 data files are created should be considered an "Air Arrivals I-94 Datafile" or a "U.S. International Air Travel Statistics Report (APIS/I-92) Data File," Plaintiff has been informed repeatedly that no other data file exists with anonymized, aggregated information. Instead, the only other record of apparent interest would be the database with raw data from CBP, which is why it was addressed in DOC's Motion for Summary Judgment. However, inconsistent with his demands for data, Plaintiff has repeatedly disclaimed interest in the raw data the database contains.[2] *See* Plaintiff's Memo in Opp. at 16-18. DOC takes the representations of Plaintiff, a professional journalist and editor experienced in editing large sets of data, Yanofsky Decl. ¶¶ 1, 12, at his word – he is not interested in the databases containing data that has not been anonymized or aggregated,

---

[2] DOC agrees with Plaintiff that since the "'raw' data the agency receives from CBP" are "different records not requested by Plaintiff," the issue of whether referral of records to the originating agency constitutes an improper withholding of those records is moot with respect to Plaintiff's claims at issue in this lawsuit, and thus need not be addressed by this Court. Plaintiff's Memo in Opp. at 18-19.

but only the data files corresponding to the "Air Arrivals" or "U.S. International Air Travel Statistics" reports, and that was what was provided. DOC attempted numerous times to meet and confer to confirm his interests, but Plaintiff never wavered from that assertion or acquiesced to discuss further details. Thus, nothing was withheld from Plaintiff, and summary judgment should be granted in favor of DOC.

## II.    DOC Has Made No Assertions Inconsistent With Representations Made In *Yanofsky I.*

Defendant's representations to this Court have been consistent in this matter and in *Yanofsky I.* Plaintiff has simply never been able to articulate with any clarity what records he seeks, and has apparently confused what data files are available with the data files it envisions or wishes to exist.[3] Admittedly DOC maintains and utilizes I-92 and I-94 data files, but those have all been produced to the Plaintiff. As stated in the Motion for Summary Judgment, to the extent that Plaintiff wishes for data files of anonymized, aggregated information as detailed as "how many Japanese male travelers on a business visa between the ages of 25 and 50 arrived through Los Angeles International Airport … on a Friday with the first intended address … being Nevada," Plaintiff's Memo in Opp. at 15, such data files have not been created. A custom report and associated data file *could* be created,[4] aggregating and anonymizing the raw data from CBP in the database to answer that very question and others, but one has not been created yet, and thus there are no agency records to produce along those lines. Furthermore, it does not matter whether

---

[3] This would not be an isolated misunderstanding by Plaintiff. For example, even after years of litigating the fee issue for international travel and tourism statistics available from NTTO's I-92 and I-94 programs, Plaintiff publicly announced that he was victorious in obtaining *immigration data*. *See* https://qz.com/1242512/we-won-our-lawsuit-against-the-us-government-over-paywalled-immigration-data/. Tourists and immigrants, however, are disjoint sets. Plaintiff then immediately complained after receiving the files that the data files were not the data files he sought.

[4] In order to create the data file, under the contract in place DOC would have to order its contractor to create the data file and reimburse it based on the level of effort involved in creating the report. Jan. 2020 Hill Decl. ¶¶ 21-24. At the time the FOIA request was filed, the cost to require the contractor to create a report with all data in the contractor's I-94 database (of raw data) for those years, not including fields that constitute personally identifiable information, was over $173,000. *See id.* ¶¶ 26-27. Due to NTTO's constant efforts to improve data availability to the public under its programs, the cost has dropped dramatically to only $11,285 for the labor hours involved. *Id.* ¶ 25.

Plaintiff would prefer the data file to be in "CSV, Excel, Microsoft Access Database, SAS, SPSS, STATA, [or] SQL" format, Yanofsky Decl. ¶ 12, such a data file has not been created as an extract from the non-anonymized, non-aggregated database of raw information from CBP.

Because Defendant's representations have been consistent, there are no assertions that should be estopped.

### III.    DOC Need Not Produce Responsive Records If Production Would Constitute An Undue Burden On The Agency.

As discussed in Section I *supra*, DOC has not withheld any agency records responsive to Plaintiff's request. Therefore, Plaintiff's argument that it is improper to withhold records "merely because those records provide the agency a source of revenue" is moot.

For the record, DOC has never asserted that it "is concerned that releasing the requested data files to Plaintiff under FOIA will deprive it of a significant revenue source." Plaintiff's Memo in Op. at 22. Such a claim would not make sense – with only three custom reports sold in the five-year period in question, and only a handful of commercial clients, the revenue from selling this data is negligible compared to the cost of producing it. DOC produces this data because it is a valuable service for the government and for American businesses and makes valuable information available, at whatever granularity of detail desired, to any who wish to access it. However, NTTO is not required under FOIA to shoulder the substantial costs of creating custom reports for any entity that wishes to "conduct [its] own examination and analysis" of international travel and tourism data. Yanofsky Decl. ¶ 13.

Here, because DOC has not withheld any responsive data files, the question of what expenses DOC must accept to respond to FOIA requests is moot. However, if Plaintiff was to seek a copy of the raw data from DOC, assuming *arguendo* that the raw data was obtainable from agency records  at a substantial cost to DOC amounting to tens or even hundreds of thousands of

dollars per request, *see* Jan. 2020 Hill Decl. ¶¶ 26-27, such a cost would constitute an unreasonable burden upon the agency that would permit DOC to withhold the responsive records. *See Schrecker v. Dept. of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003) ("[T]here are limits to the lengths to which an agency must go in responding to a FOIA request."). Given that DOC does not have possession or control of the I-94 database, the burden for DOC to obtain raw data at great financial expense is an even greater burden than the relatively mild costs that courts have absolved agencies from undertaking. *See Ancient Coin Collectors Guild v. Dept. of State*, 866 F. Supp. 2d 28, 33 (D.D.C. 2012) (absolving agency of "costly and inconvenient" search of archival and backup systems).

## IV.   DOC Is Prohibited From Disseminating Records From CBP That Contain Personally Identifiable Information.

The Memorandum of Understanding ("MOU") between DOC and CBP for I-92 and I-94 data articulates that "[t]he DOC and travel industry heavily depend" upon the I-92 and I-94 data CBP supplies, which "is critical to define the size and scope of international travel to and from the United States." Jan. 2020 Hill Declaration ¶¶ 31, 32. The MOU also reflects that "[t]he arrival data is used in determining the economic impact of international travel on state economies. The arrival data also comprises part of the Travel and Tourism Satellite Accounts Program. None of these programs could exist if DOC did not obtain the arrival data from [CBP]." *Id.* ¶ 33. However, the MOU explicitly prohibits releasing information "in any form identifiable to any individuals." *Id.* ¶ 34. The MOU also prohibits disclosure of any data beyond "the number of arrivals into the United States; the total number of travelers using business, pleasure, and student visas; estimates on the number of individuals arriving by air, land, and sea; and age group data falling under selected categories, including the destination and port-of-entry at the time of arrival." *Id.*

To the extent that Plaintiff is seeking a copy of the I-94 database maintained by ITA's contractor, or any other non-anonymized data, the production of such data without processing it to

anonymize it would constitute a violation of the MOU with CBP, jeopardizing the continuance of

the entire program. DOC is not required to produce files under FOIA that violate usage agreements

with other federal agencies regarding the use of their data.

## CONCLUSION

For the foregoing reasons, the Court should conclude that Defendant complied with its

FOIA obligations and grant summary judgment in DOC's favor.

Dated: February 19, 2020                    Respectfully submitted,

                                            TIMOTHY J. SHEA, D.C. Bar. # 437437
                                            United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar # 924092
                                            Chief, Civil Division

                                            */s/ William Chang*
                                            WILLIAM CHANG
                                            D.C. BAR #1030057
                                            Assistant United States Attorney
                                            555 4th Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2510
                                            William.chang2@usdoj.gov

                                            /s/   *Scott Leeson Sroka*
                                            SCOTT LEESON SROKA, Member of New York Bar
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-7113
                                            Scott.Sroka@usdoj.gov