UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cv-2290 (KBJ) |
| | ) |
| UNITED STATES DEPARTMENT OF COMMERCE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Yanofsky is a journalist who "rel[ies] on the analysis of datasets to identify newsworthy trends[.]" (Compl., ECF No. 1, ¶ 3.) On February 26, 2016, Yanofsky sent a request to the United States Department of Commerce ("DOC") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking data files for the I-92 United States International Air Travel Statistics Program and the I-94 Visitor Arrivals Program. (*See id.* ¶¶ 8–9, 23–24.) The DOC eventually responded by producing several data files containing standardized summary reports for these programs (*see id.* ¶¶ 34–36, 40), after which Yanofsky brought the instant legal action, asserting that the DOC had not satisfied its production obligations under the FOIA (*see id.* ¶ 2).[1]

---

[1] This is the second legal action that Yanofsky has brought against the DOC to obtain I-92 and I-94 data files under the FOIA. In the first iteration of this case ("*Yanofsky I*"), Yanofsky challenged the DOC's denial of his request for a fee waiver under the FOIA and alleged that the agency had unlawfully charged him $173,775 for copies of the requested records. *See Yanofsky v. U.S. Dep't of Com.*, 306 F. Supp. 3d 292, 294 (D.D.C. 2018); *see also id.* at 306 (granting summary judgment for Yanofsky and remanding the case to the DOC).

Before this Court at present are the parties' cross-motions for summary judgment concerning Yanofsky's FOIA claim. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 17; Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 18.) The DOC argues in its motion that it has discharged its duties under the FOIA, because it "has provided all responsive records to Plaintiff." (*See* Def.'s Mot. at 5.)[2] In addition, the agency contends that, to the extent Yanofsky seeks "raw data" concerning the I-92 and I-94 programs, the DOC does not own that data, and even if it did, that data does not currently exist in a "human-readable" form. (*See id.* at 3, 7–8.) For his part, Yanofsky insists that the data files that the DOC has produced are not the records he requested, and that the DOC *does* possess the data files he seeks. (*See* Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 19, at 4–5.)

For the reasons explained below, this Court finds that neither party is entitled to summary judgment at this point in the proceedings, because genuine issues of material fact remain regarding whether the DOC actually possesses the data files that Yanofsky has requested, and if so, whether the agency is justified in withholding those records. Accordingly, the parties' cross-motions for summary judgment will be **DENIED**.

I.

When an agency receives a request for information under the FOIA, it must "construe [the] request liberally[,]" and conduct a search "reasonably calculated to uncover all relevant documents." *Inst. for Just. v. IRS*, 941 F.3d 567, 569–70, 572 (D.C. Cir. 2019) (internal quotation marks and citations omitted). While an agency need not create any new records in response to a FOIA request, *see Yeager v. DEA*, 678

---

[2] Page number citations to the documents that the parties have filed refer to the numbers automatically assigned by the Court's electronic case filing system.

F.2d 315, 321 (D.C. Cir. 1982), it must release the responsive records it possesses, unless such records are specifically exempt from disclosure under any of the FOIA's statutory exceptions, *see* 5 U.S.C. § 552(a)(3)(A), (b)(1)–(9).  In the context of data files, this means that an agency must "disclose all non-exempt data points that it retains in electronic databases," but it is not required to use that data to create files or reports that it does not already have.  *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012); *see also People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006).

Where, as here, the parties have filed cross-motions for summary judgment in a FOIA case, the court must accept all factual assertions in the moving party's affidavits and declarations as true, "unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary."  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The moving party bears the burden of establishing that summary judgment is warranted, *see id.*, and a court may grant a motion for summary judgment if it determines that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," *see* Fed. R. Civ. P. 56(a).

II.

With respect to the DOC's motion for summary judgment, the Court finds that the agency has failed to demonstrate that the DOC is entitled to judgment as a matter of law.  To prevail on its motion for summary judgment, the DOC must "prove that each document . . . requested either has been produced, is unidentifiable or is wholly exempt from the [FOIA's] inspection requirements."  *Weisberg v. U.S. Dep't of Just.*, 627 F.2d

3

365, 368 (D.C. Cir. 1980) (internal quotation marks and citation omitted); *see also* 5 U.S.C. § 552(a)(4)(B).  Thus, the DOC's request for summary judgment with respect to Yanofsky's FOIA claim necessarily raises the following questions, the answers to which determine whether the agency has, in fact, fulfilled its statutory obligations: (1) what records did Yanofsky request, (2) did the DOC produce the records that Yanofsky has requested, and (3) if not, does the DOC have a valid basis for withholding the requested records?

Beginning with the first question, Yanofsky's FOIA request sought "access to and copies of" two main records: the "'Air Arrivals I-94 Annual Datafile'" from 2011 to 2015, and the "'U.S. International Air Travel Statistics Report (APIS/I-92) Data Files'" from 2011 to 2015.  (*See* Ex. 2 to Decl. of David Yanofsky, ECF No. 18-3, at 9.) Yanofsky further clarified the exact records he was seeking in an email to the DOC's counsel.  (*See* Ex. 9 to Decl. of Adam A. Marshall, ECF No. 18-4, at 676.)  In this regard, Yanofsky stated that, based on his understanding of the DOC's operations, the agency regularly receives electronic data for the I-92 and I-94 programs from Customs and Border Protection ("CBP"), and that the DOC (or its contractor) puts that data, or a subset of it, into its own database, which the DOC (or its contractor) then uses to create standardized summary reports as well as customized reports that individuals can purchase from the agency.  (*See id.*)  Yanofsky explained that the information that he was requesting under the FOIA was the data for the I-92 and I-94 programs that the DOC stored in its database, *i.e.*, "the data *from which* both DOC's annual reports and customized reports are created."  (*See id.*)

4

The DOC's motion and attachments do not establish that the agency has produced the records that Yanofsky requested. The DOC maintains that it discharged its duties under the FOIA by releasing datasheets of its standardized summary reports. (*See* Def.'s Mot. at 6–7.) Based on this Court's review of the record, however, it appears that these summary reports do not contain all of the I-92 and I-94 data that Yanofsky seeks, and that the DOC may in fact possess a database that contains the non-aggregated data points that Yanofsky has requested.

For example, in a declaration that the DOC has submitted on behalf of Isabel Hill—the Director of the National Travel and Tourism Office ("NTTO") of the DOC's International Trade Administration ("ITA")—Hill explains that the ITA receives I-92 data from CBP and converts it into a useable format. (*See* Decl. of Isabel Hill ("Hill Decl."), ECF No. 17-2, ¶¶ 1, 9–10.) According to Hill, the ITA then anonymizes and aggregates that data to prepare a standardized report, and it also offers "customized data files" that can contain individualized (*i.e.*, non-aggregated) data in whatever format the customer desires. (*See id.* ¶ 11; *id.* ¶ 11 n.4.) Furthermore, in a declaration that the DOC submitted in *Yanofsky I* (which Yanofsky has attached as an exhibit to his motion in this case), the NTTO's Deputy Director for Research, Ronald Erdmann, explicitly distinguished between two types of data files for the I-92 program. (*See* Decl. of Ronald Erdmann, Ex. 1 to Decl. of Adam A. Marshall ("Erdmann Decl."), ECF No. 18-4, ¶¶ 1, 4.) Erdmann explained that, while the ITA publishes a summary report using I-92 data and sells "subscriptions to the report(s), or data files for a fee[,]" the ITA "*also* maintains and utilizes a data file related to the report ('I-92 Data File'), which consists of anonymized data about air travelers between the United States and other countries."

5

(*See id.* ¶ 4 (emphasis added).)  Taken together, these declarations suggest that the DOC possesses a dataset of anonymized I-92 data that it uses to create summary and customized reports—and that the I-92 summary report is distinct from the broader database of anonymized I-92 data.

The record evidence tells a similar story for the I-94 data.  In her declaration, Hill states that the ITA uses a contractor to anonymize and process the I-94 data from CBP, and that the contractor then uses that data—which the NTTO owns—to create summary tables of aggregated data and customized reports.  (*See* Hill Decl. ¶¶ 16–18.)  Although Hill maintains that "[t]he only files NTTO receives from its contractor with respect to the [I-94 program]" are "summary tables" for the I-94 standardized report (*see id.* ¶ 17), the NTTO's written agreement with the contractor plainly provides that the contractor must send the agency a "copy of all current data files and program files" each year (*see* Ex. 3 to Def.'s Combined Reply, ECF No. 20-3, at 9).  Additionally, Erdmann avers that, as with the I-92 data, the ITA presents and sells I-94 data in a summary report, and "*also* sells quarterly and annual publications of a data file called 'Air Arrivals I-94 Database (Detail Arrival Records)' ('I-94 Data File'), which consists of anonymized data about foreign visitors to the United States."  (*See* Erdmann Decl. ¶ 5 (emphasis added).)  Given these statements, which indicate that multiple datasets for the I-92 and I-94 programs exist and are in the DOC's possession, the Court cannot conclude that the DOC has satisfied its FOIA obligations based solely on its production of the summary reports.

Undaunted, the DOC insists that it has released all responsive records, and that the only difference between the summary reports for the I-92 and I-94 programs, on the

6

one hand, and the I-92 and I-94 data files, on the other, is that the former are text files and the latter are Excel files. (*See* Def.'s Combined Reply at 5–6.) But this contention is difficult to square with the agency's declarations, which, at the very least, give rise to a reasonable inference that the DOC possesses an expansive dataset for each program that it uses to create the aggregated summary reports.

The DOC further contends that it cannot provide Yanofsky with the additional data that he requests, because (1) the "raw data" for the programs belongs to CBP (*see id.* at 6); (2) "no other data file exists with anonymized, aggregated information (*see id.*); and (3) to the extent that Yanofsky seeks non-anonymized data, the DOC's disclosure of such data would violate its agreement with CBP and "jeopardiz[e] the continuance" of the I-92 and I-94 programs (*see id.* at 9–10). The DOC relatedly argues that requiring the agency to obtain the raw data from CBP or its contractor, and then pay a contractor to extract the data that Yanofsky seeks, would impose an undue burden on the agency. (*See id.* at 8–9.) The Court finds these arguments generally unpersuasive, for the simple reason that Yanofsky does not appear to have requested "raw" data, non-anonymized data, or aggregated data. Instead, Yanofsky seeks the anonymized, non-aggregated data that is seemingly in the DOC's database (*see* Pl.'s Mem. at 5; Pl.'s Combined Reply, ECF No. 22, at 8), which, based on the statements in the DOC's submitted declarations, may, in fact, exist (*see* Hill Decl. ¶ 6; Erdmann Decl. ¶¶ 4–5).

This all means that there remains a genuine issue of material fact regarding whether or not the DOC possesses records that are more responsive than the ones it has

produced.  Consequently, the DOC is not entitled to summary judgment in its favor.[3]

### III.

The Court reaches the same conclusion with respect to Yanofsky's motion for summary judgment.  Although the record suggests that the DOC may well maintain a database of anonymized, non-aggregated I-92 and I-94 data, the current record is insufficient to establish conclusively that the DOC possesses such records.  And because the DOC's briefs do not address the exact data files that Yanofsky has requested (*see, e.g.*, Def.'s Combined Reply at 6–10 (focusing on raw, non-anonymized, or aggregated data)), the Court is not in a position to evaluate whether the DOC has actually withheld responsive documents, and if so, whether the agency may properly do so under the FOIA.

In short, the Court cannot find, as a matter of law, that the DOC has failed to comply with the FOIA, and for that reason, Yanofsky is not entitled to summary judgment at this stage of the proceedings.[4]

### IV.

After a careful consideration of the parties' submissions, the Court concludes that there are genuine issues of material fact concerning whether or not the DOC has withheld responsive records (*i.e.*, anonymized, non-aggregated data concerning the I-92

---

[3] Nothing in this Court's ruling with respect to the pending motions should be taken as a decision regarding whether the DOC could properly withhold the requested records under the FOIA. (*See, e.g.*, Def.'s Mot. at 8 (arguing that the customized data files are "business proprietary information" and suggesting that such files may be withheld on that basis).)  The instant opinion speaks only to the question of whether the records that Yanofsky has requested exist and are in the DOC's possession.

[4] To the extent that Yanofsky seeks to conduct discovery on the DOC's potential destruction of the data files he has requested (*see* Pl.'s Combined Reply at 9), the Court finds that any such request for discovery is premature.  The current record does not demonstrate that the DOC actually possesses responsive records beyond the ones it has already produced, as discussed above, and *that* determination is a prerequisite to any investigation concerning the potential destruction of such records.

and I-94 programs), and if so, whether the DOC has a valid basis for doing so. As a result, neither party is entitled to summary judgment at this time. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 17) and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 18) are both **DENIED**. It is

**FURTHER ORDERED** that on or before October 20, 2020, the parties shall file a joint proposed briefing schedule for renewed cross-motions for summary judgment.

DATE:  October 6, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge