UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | |
| PLAINTIFF, | |
| v. | CIV. A. NO. 19-2290 (KBJ) |
| U.S. DEPARTMENT OF COMMERCE, | |
| DEFENDANT. | |

**DEFENDANT'S MEMEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

# CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ........................................................................................................................... 2

I.     Supporting Documents......................................................................................................... 2

II.    Content of Plaintiff's FOIA Request ................................................................................... 3

III.   Background Information Regarding the Data Requested ................................................... 3

       A.     The National Travel and Tourism Office ("NTTO") Statistical Program ............. 3

       B.     I-92 Data and the U.S. International Air Travel Statistics Program ...................... 4

       C.     I-94 Data and the Visitor Arrivals Program............................................................ 5

IV.   Defendant's Response to Plaintiff's FOIA Request ........................................................... 5

V.    Plaintiff's Belated "Clarification" of His FOIA Request ................................................... 6

LEGAL STANDARD.................................................................................................................... 7

I.     Rule 56 – Summary Judgment............................................................................................ 7

II.    Summary Judgment in FOIA Cases.................................................................................... 7

ARGUMENT ................................................................................................................................. 8

I.     Defendant Has Satisfied Its Obligations Under FOIA Because It Has Produced The Records Sought Based On The Plain Language of the FOIA Request............................... 8

II.    Even Under Plaintiff's Revised Interpretation of His FOIA Request, Defendant Has Satisfied Its Obligations Under FOIA............................................................................... 11

       A.     Records Requested Based on Plaintiff's Post-Production Clarification of the FOIA Request ....................................................................................................... 11

       B.     The Department Does Not Possess the I-92 Data Files that Plaintiff Requests.... 12

       C.     The Department Does Not Possess the I-94 Data Files that Plaintiff Requests.... 12

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Immigration Council v. U.S. Immigr. & Custom,*
  *Enf't*, 464 F. Supp. 3d 228 (D.D.C. 2020) .............................................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................................. 7

*Brayton v. Office of U.S. Trade,*
  *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ........................................................................................ 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................................. 7

*Cole v. Copan*, Civ. A.,
  No. 19-1182 (TSC), 2020 WL 7042814 (D.D.C. Nov. 30, 2020) ............................................ 8

*Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ............................................................................................ 7

*Dillon v. Dep't of Justice*,
  102 F. Supp. 3d 272 (D.D.C. 2015) .......................................................................................... 8

*Forsham v. Harris*,
  445 U.S. 169 (1980) ................................................................................................................ 13

*Kowalczyk v. Dep't of Justice*,
  73 F.3d 386 (D.C. Cir. 1996) .................................................................................................. 11

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) .................................................................................................. 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................................. 7

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ................................................................................................ 8

*Media Research Ctr. v. Dep't of Justice*,
  818 F. Supp. 2d 131 (D. D.C. 2011) ......................................................................................... 7

*Miller v. Casey,*
  730 F.2d 773 (D.C. Cir. 1984) .................................................................................................. 8

*Tao v. Freeh*,
  27 F.3d 635 (D.C. Cir. 1994) .................................................................................................... 7

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) .................................................................................................. 8

*Wallick v. Agric. Mktg. Serv.*,
  281 F. Supp. 3d 56 (D.D.C. 2017) ............................................................................................ 9

*Weisberg v. Dep't of Justice*,
  627 F.2d 365 (D.C. Cir. 1980) .................................................................................................. 8

*Wilson v. Dep't of Transp.*,
  730 F. Supp. 2d 140 (D.D.C. 2010) ........................................................................................ 11

*Yeager v. DEA*,
  678 F.2d 315 (D.C. Cir. 1982) ................................................................................................ 13

**PRELIMINARY STATEMENT**

This case arises from a Freedom of Information Act ("FOIA") request submitted by Plaintiff David Yanofsky ("Plaintiff" or "Yanofsky") directed to the International Trade Administration ("ITA"), a component of the Department of Commerce ("" or "Department" or "Defendant"), seeking certain data files pertaining to ITA's National Travel and Tourism Office's ("NTTO") U.S. International Air Travel Statistics Program (known as I-92 Data) and Visitor Arrivals Program (known as I-94 Data).  On June 5, 2018, in response to Plaintiff's FOIA request ("FOIA Request"), Defendant produced to Plaintiff all the I-92 and I-94 Data files in its possession, except files consisting of raw, non-anonymized, non-aggregated data owned by and obtained from the U.S. Department of Homeland Security's U.S. Customs and Border Patrol ("CBP").[1] Dissatisfied with Defendant's production, on July 31, 2019, Plaintiff filed the instant lawsuit.

Both parties have previously moved for summary judgment in their favor on Plaintiff's claim that Defendant has not yet produced the records in its possession that are responsive to the FOIA Request.  *See* ECF No. 17 (Def's Motion for Summary Judgment ("Def's 1st MSJ"); ECF No. 18 (Pl's Cross-Motion for Summary Judgment ("Pl's 1st Cross-MSJ")).  In its ruling denying both parties' motions, the Court astutely framed the issues as follows:

> the [Department's] request for summary judgment with respect to Yanofsky's FOIA claim necessarily raises the following questions, the answers to which determine whether the agency has, in fact, fulfilled its statutory obligations: (1) what records did Yanofsky request, (2) did the DOC produce the records that Yanofsky has requested, and (3) if not, does the DOC have a valid basis for withholding the requested records?

Memo. Op. (ECF No. 24) at 4.  The Court went on to explain that, because the record did not provide sufficient information to answer the second and third questions, it could not grant summary

---

[1] Defendant referred the files owned by CBP back to CBP for its processing and a direct response to Plaintiff.

judgment for either party. *See, e.g.,* Memo. Op. at 8 ("Although the record suggests that the DOC may well maintain a database of anonymized, non-aggregated I-92 and I-94 Data, the current record is insufficient to establish conclusively that the DOC possesses such records."). Defendant now files this renewed motion seeking judgment in its favor on all claims brought by Plaintiff.

As explained below, Defendant is entitled to summary judgment in its favor because

(i) The records sought based on the plain language of the FOIA Request were produced to Plaintiff by Defendant in June 2018 and Plaintiff's belated clarification of the FOIA Request does not impose new FOIA obligations on Defendant;

(ii) to the extent that the FOIA Request seeks anonymized, non-aggregated I-92 Data from databases possessed by ITA (or its contractors), there are no responsive records because no such databases or data files exist; and

(iii) to the extent that the FOIA Request seeks anonymized, non-aggregated I-94 Data from databases possessed by ITA (or its contractors), there are no responsive records because no such database or records exist and, while Defendant's contractor could create a record containing this information—i.e. a customized data file—the FOIA does not require it to do so.

## BACKGROUND

### I. SUPPORTING DOCUMENTS

Defendant incorporates by reference Defendant's Statement of Material Facts Not in General Dispute and the following four declarations filed in support of this motion:

- Declaration of Isabel Hill, Director of the National Travel and Tourism Office ("1st Hill Decl."), attached as Exhibit A.

- Third Declaration of Isabel Hill, Director of the National Travel and Tourism Office ("3d Hill Decl."), attached as Exhibit B.

- Declaration of Jeffrey Hall, Chief Data Officer for the ITA and the Director of Technology Transformation and Data Services with the office formerly known as the Office of the Chief Information Officer (OCIO) within ITA ("J. Hall Decl."), attached as Exhibit C.

- Declaration of Warren L. Hull, Director of CIC Research, Inc. and the Senior Economist responsible for overseeing data analysis for the project with ITA's National Travel and Tourism Office ("W. Hull Decl."), attached as Exhibit D.

II.     **CONTENT OF PLAINTIFF'S FOIA REQUEST**

On or about February 28, 2016, Plaintiff sent a letter to the Department, which was interpreted as a FOIA request seeking records derived from I-92 and I-94 Data. Specifically, the FOIA Request sought:

> access to and copies of OTTI's[2] "Air Arrivals I-94 Annual Datafile" from 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation [and] . . . access to and copies of OTTI's "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" for 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation.

Def. Ex. E (FOIA Request). The FOIA Request did not include any other information regarding the files that were being sought. *See generally id.*

III.    **BACKGROUND INFORMATION REGARDING THE DATA REQUESTED**

   A.   **The National Travel and Tourism Office ("NTTO") Statistical Program**

The National Travel and Tourism Office is a division of the Department's International Trade Administration and it serves to: (i) collect, produce, and publish comprehensive international travel and tourism statistics and other marketing information; (ii) design, implement, collect, produce, and publish international travel and tourism forecasting models; and (iii) facilitate the reduction or elimination of barriers to international travel and tourism, as well as to comply with other departmental mandates undertaken by the Bureau of Economic Analysis to produce trade statistics. 1st Hill Decl. ¶ 4. Specifically, the National Travel and Tourism Office develops reports on non-immigrant travel to the United States, which is defined as those who travel to the U.S. and stay for one night or more for leisure, business, or educational purposes, consistent with the international definition of travel and tourism by the United Nations World Tourism Organization. 1st Hill Decl. ¶ 5.

---

[2]    By "OTTI," Plaintiff was apparently referring to the National Travel and Tourism Office of ITA, which was previously called the Office of Travel and Tourism Industries.

3

### B.     I-92 Data and the U.S. International Air Travel Statistics Program

The U.S. International Air Travel Statistics Program is a joint effort between CBP and the National Travel and Tourism Office to provide international air travel statistics data to the government and the travel industry. All carriers servicing the United States must transmit data from their automated flight manifests to CBP for each flight coming to or departing from the United States. The information collected, known as I-92 Data because in the past the information was provided via a paper form titled the I-92 Form, provides non-stop point-to-point air traffic totals between the United States and all other countries and between U.S. and foreign airports. 1st Hall Decl. ¶¶ 8-9. CBP provides raw I-92 Data directly to the ITA's Office of the Chief Information Officer ("OCIO") through a secure transmittal process, and OCIO converts the data into a format that can be used by ITA's National Travel and Tourism Office. 1st Hall Decl. ¶ 9; W. Hull Decl. ¶¶ 5-6.

After it receives the converted I-92 Data, ITA's National Travel and Tourism Office processes the raw CBP data, including by aggregating it to ensure that business proprietary information is not disclosed (I-92 Data does not contain PII). W. Hull Decl. ¶¶ 7-8; 1st Hall Dec. ¶ 11. As a part of its processing of the raw data, ITA's National Travel and Tourism Office prepares (i) monthly "standardized reports" known as the "U.S. International Air Travel Statistics Report" to clients, and (ii) customized data files for any client that has paid to have data prepared in a manner specified by that client. *See* 1st Hall Decl. ¶ 11; W. Hull Decl. ¶¶ 12-13. The standardized reports are sold in PDF format (also referred to as "printfile" on the National Travel and Tourism Office's website) and in Excel format. 1st Hall Decl. ¶ 11. The I-92 Data that CBP sends to ITA is owned by CBP. 1st Hall Decl. ¶ 10; W. Hull Decl. ¶¶ 6, 11, 15. Processed data is owned by the Department's National Travel and Tourism Office of ITA and can be purchased from the National Travel and Tourism Office. 1st Hall Decl. ¶ 11.

  **C.** **I-94 Data and the Visitor Arrivals Program**

The Visitor Arrivals Program is a joint effort between CBP and the National Travel and Tourism Office to provide travel statistics data for use by the government and the travel industry. 1st Hall Decl. ¶ 14. CBP securely transmits I-94 Data records directly to ITA's National Travel and Tourism Office's contractor, CIC Research, Inc ("CIC Research"). 1st Hall Decl. ¶ 15. CIC Research uploads the raw I-94 Data obtained from CBP into its database, and it supplements the raw I-94 Data in the database with information gathered from publicly available sources, but it does *not* alter or modify the non-anonymized, non-aggregated raw data within its database, except to remove duplicate entries. W. Hull Decl. ¶¶ 7-8.

When CIC Research processes the data housed in the database, it prepares "output files" in PDF and Excel format; these output files comprise "standardized reports" that are summary tables of monthly data and are known as the "Summary of International Travel to the United States" reports. W. Hull Decl. ¶ 10. CIC Research also prepares Customized Data Files for any client that has paid to have the National Travel and Tourism Office prepare data in a manner specified by that client. 1st Hill Decl. ¶ 18. The only files the National Travel and Tourism Office receives from CIC Research with respect to the Visitor Arrivals Program are Customized Data Files and standardized reports in the form of PDF and Excel summary tables that contain anonymized and aggregated data. 1st Hill Decl. ¶ 17; W. Hull Decl. ¶ 13. The I-94 Data is owned by CBP. 1st Hill Decl. ¶ 17. Processed data reflected in standardized reports and Custom Data Files is owned by the National Travel and Tourism Office and can be purchased by clients from the National Travel and Tourism Office. 1st Hill Decl. ¶ 17.

**IV.** **DEFENDANT'S RESPONSE TO PLAINTIFF'S FOIA REQUEST**

ITA reasonably interpreted the FOIA Request as seeking the standardized reports of I-92 and I-94 Data that it creates from raw data supplied by CBP and/or the raw data from which the

5

standardized reports are created. *See* 3d Hill Decl. ¶ 12. Consequently, in the Department's June 5, 2018, response to the FOIA Request, it produced the standardized reports in its possession. More specifically, with respect to the I-92-Data, DOC released 35 Excel spreadsheets – i.e., seven Excel spreadsheets for each of the five years of data requested by Plaintiff containing cumulative data for that year – that were the standardized reports of I-92 Data known as the "U.S. International Air Travel Statistics Report." 3d Hill Decl. ¶ 5. With respect to the I-94 Data, DOC released five Excel spreadsheets—i.e., one Excel spreadsheet for each of the five years of data requested by Plaintiff containing cumulative data for that year—that were the standardized reports of I-94 Data known as the "Summary of International Travel to the United States" report. 3d Hill Decl. ¶¶ 9-10. Additionally, because DOC does not own the raw data from which the standardized reports are created, it sent the data back to CBP with a referral that instructed CBP to process the data in accordance with the FOIA Request and produce a response directly to Plaintiff. 1st Hill Decl. ¶¶ 32-33, 35.

## V.  PLAINTIFF'S BELATED "CLARIFICATION" OF HIS FOIA REQUEST

On July 31, 2019, Plaintiff filed the instant Complaint alleging that Defendant had not properly responded to the FOIA request because it had not produced the records that he was seeking. Plaintiff's Complaint made references to the Declaration of Ronald Erdmann ("Erdmann Declaration") filed in *Yanofsky I*, *see, e.g.,* ECF No. 1 at ¶¶ 10, 16; however, Plaintiff's Complaint never clarified that it sought databases of data allegedly created by DOC from the raw data that was supplied by CBP. *See generally* ECF No. 1. It was not until after a meet-and-confer call in September 2019, i.e., approximately 15 months after the final determination was made on the FOIA Request, that Plaintiff provided a clarification of the records that he wanted and had intended to seek through his FOIA request. In an email exchange dated September 16, 2019, Plaintiff explained the he intended his FOIA request to seek "database[s]" of I-94 and I-92 Data and that

6

he sought "the [I-92 Data] data *from which* both DOC's annual reports and customized reports are created" as well as the "the underlying I-94 data stored in the DOC's contractor's database, *from which* the annual issues are generated." Def. Ex. F at 1 (emphasis in original).

## LEGAL STANDARD

### I.     RULE 56 – SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

### II.    SUMMARY JUDGMENT IN FOIA CASES

The "vast majority" of FOIA cases are decided on motions for summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D. D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Responsibility & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007).  An agency may be entitled

7

to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)..

## ARGUMENT

### I. DEFENDANT HAS SATISFIED ITS OBLIGATIONS UNDER FOIA BECAUSE IT HAS PRODUCED THE RECORDS SOUGHT BASED ON THE PLAIN LANGUAGE OF THE FOIA REQUEST

While Plaintiff now claims that the FOIA Request seeks copies of anonymized, non-aggregated data from which I-92 and I-94 standardized reports are allegedly created, these are not the records originally requested by the plain language of the FOIA Request. "Under FOIA, the 'burden of adequately identifying the record requested' lies with the requester." *Cole v. Copan*, Civ. A. No. 19-1182 (TSC), 2020 WL 7042814, at *3 (D.D.C. Nov. 30, 2020) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). "Agencies read and interpret FOIA requests as drafted, not as the requester 'might wish it was drafted.'" *Cole*, 2020 WL 7042814, at *3 (quoting *Miller v. Casey,* 730 F.2d 773, 777 (D.C. Cir. 1984)). Further, an agency may decide "to limit the scope of an ambiguous request as long as the narrowed scope is a reasonable interpretation of what the request seeks.'" *Id*. (internal citations omitted); *see also Larson*, 565 F.3d at 869 (upholding a district court's narrower interpretation of a FOIA request than that argued by the plaintiff, as the original FOIA request did not "reasonably suggest" the broad scope argued by the plaintiff); *Dillon v. Dep't of Justice*, 102 F. Supp. 3d 272, 286 (D.D.C. 2015) (granting summary judgment for agency where, although plaintiff intended the request to be broader than the scope of

8

the request as interpreted by the FBI, "the FBI imposed a limitation on the scope of its search based upon a reasonable interpretation of the plaintiff's request").

Here, Plaintiff's FOIA request sought the "'U.S. International Air Travel Statistics Report (APIS/I-92) Data Files' for 2015 [thru] 2011" and "'Air Arrivals I-94 Annual Datafile' from 2015 [thru] 2011." Def. Ex. E at 2 (FOIA Request). At the time that the Department conducted its search for responsive records and issued its response to the FOIA Request in June 2018, it reasonably interpreted Plaintiff's request for I-92 and I-94 "Data File[s]" to be seeking the Excel spreadsheets—i.e., the standardized reports of anonymized, aggregated I-92 and I-94 Data which are data files—that ITA sells. 3d Hill Decl. ¶ 12. Consistent with this reasonable interpretation of the FOIA request, ITA produced to Plaintiff all thirty-five Excel data files in its possession that were standardized reports of cumulative I-92 Data for the requested years (i.e., the U.S. International Air Travel Statistics Reports) and the five Excel data files in its possession that are standardized reports reflecting the requested years of cumulative I-94 Data (i.e., the Summary of International Travel to the United States reports). Defendant also referred the only other I-92 and I-94 Data it possesses—i.e., raw data owned by and obtained from CBP—to CBP for its processing of the data and release to Plaintiff.

"In determining how to interpret the contested phrases [within a FOIA request], this Court must look to whether the phrasing was specific enough so that 'a professional employee of the agency who was familiar with the subject area of the request' would be able to 'locate the record with a reasonable amount of effort.'" *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 67 (D.D.C. 2017). Here, given the lack of specificity in Plaintiff's request, Defendant's interpretation of the FOIA Request as seeking the standardized reports was reasonable. Other than generally referring to wanting I-92 "Data Files" and the I-94 "Datafile," the FOIA Request does not describe the data

9

sought. *See generally* Def's Ex. E at 2 (FOIA Request). For example, it does not state that Plaintiff was seeking anonymized, non-aggregated data nor did it specify that Plaintiff was requesting the data from which the standardized reports were created. To the contrary, Plaintiff's use of the title of the I-92 Standardized Report—i.e., the U.S. International Air Travel Statistics Reports—within the FOIA Request itself indicated these reports were precisely what Plaintiff sought. This interpretation of the request was also reasonable given that, other than databases that contain the raw data from CPB, which Plaintiff has reaffirmed it is not seeking, neither ITA nor its contractor (CIC Research) possess any other files containing I-92 and I-94 Data.

Notably, although Defendant issued its response to the FOIA Request in June 2018 and Plaintiff filed his Complaint in July 2019, it was not until September 2019 that Plaintiff began to clearly articulate his current iteration of what records were being requested.[3] In an email exchange dated September 16, 2019, Plaintiff explained it was seeking "database[s]" and further explained that it sought "the [I-92 Data] data *from which* both [the Department's] annual reports and customized reports are created" as well as the "the underlying I-94 data stored in the [the Department's] contractor's database, *from which* the annual issues are generated." Def. Ex. __ at 1 (emphasis in original). The timing of this disclosure is significant, as it occurred well after the search for responsive records and the production of a FOIA response had been completed. A "reasonable effort to satisfy [a FOIA] request does not entail an obligation to search anew based upon a subsequent clarification[ ] as [r]equiring an additional search each time the agency receives [information] that clarifies a prior request could extend indefinitely the delay in processing new

---

[3]    To be sure, in Plaintiff's Complaint, Plaintiff refers to "Data Files" referenced in the Erdmann Declaration filed in *Yanofsky I*, but these references are unhelpful because, as explained to Plaintiff on several occasions, the data files referenced in the Erdmann Declaration correspond to the Excel spreadsheets that have already been produced.

requests" *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388–89 (D.C. Cir. 1996); *see also Wilson v. Dep't of Transp.*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) ("[A]n agency need only conduct a search as to the original request, and not to subsequent additions or clarifications."), *aff'd*, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).  Accordingly, Defendant satisfied its FOIA obligation when it produced the standardized reports and referred the raw data to CBP for its processing and response to Plaintiff, and it is entitled to judgment in its favor.

## II. EVEN UNDER PLAINTIFF'S REVISED INTERPRETATION OF HIS FOIA REQUEST, DEFENDANT HAS SATISFIED ITS OBLIGATIONS UNDER FOIA

### A. Records Requested Based on Plaintiff's Post-Production Clarification of the FOIA Request

According to Plaintiff's First Cross-MSJ, the FOIA Request seeks the anonymized, non-aggregated I-92 and I-94 Data that Plaintiff *believes* the Department (or its contractor) possesses and uses to create the standardized reports of I-92 Data and I-94 Data that were produced to Plaintiff in June 2018.  *See* Pl's 1st Cross-MSJ at 14-16; *see also* Opin. at 7 ("Yanofsky does not appear to have requested 'raw' data, non-anonymized data, or aggregated data.  Instead, Yanofsky seeks the anonymized, non-aggregated data that is seemingly in the [the Department's] database.") (citing Pl.'s 1st Cross-MSJ. at 5; Pl.'s 1st Cross-MSJ Reply at 8).  Plaintiff has further characterized the records being sought by stating that, rather than seeking CBP-owned raw data, he "seeks the *DOC's* records, which are the product of the agency's *own* compilation and processing of data that it receives from other sources." Pl.'s 1st Cross-MSJ. at 16 (emphasis in original).  The Department does not dispute that these are the records that Plaintiff now asserts were requested by the FOIA Request; however, even if the FOIA Request did clearly identify these as the records being requested (which it did not) Defendant would still be entitled to judgment in its favor because the records Plaintiff requests do not exist.

11

### B. The Department Does Not Possess the I-92 Data Files that Plaintiff Requests

CBP provides non-anonymized, non-aggregated raw I-92 Data directly to ITA. ITA's OCIO uploads this raw data into a database running on a SQL Server.[4] ITA uses the raw data in the database to create standardized reports known as U.S. International Air Travel Statistics Reports. Each report is a filtered view of raw data and each report reflects anonymized, aggregated data. These reports are the 35 Excel files of I-92 Data that were produced to Plaintiff by the Department in June 2018.

Significantly, at no time prior to or after the creation of the reports did ITA revise or alter the raw data supplied by CBP that is housed in the database. Creation of the reports does *not* in any way modify the non-anonymized, non-aggregated raw I-92 data in the database nor is a new, separate database of DOC processed data created while creating reports. Other than the database containing the raw data from CBP, there is no other database of I-92 data in the possession of the Department. In light of the fact that Plaintiff has now repeatedly stated that he is not requesting the "raw" data supplied by CBP and the Department's only databases of I-92 Data are comprised of only raw data supplied by CBP, the Department has not withheld records requested by Plaintiff and the Court should grant summary judgment in Defendant's favor with respect to any claim based on the I-92 Data.

### C. The Department Does Not Possess the I-94 Data Files that Plaintiff Requests

CBP provides non-anonymized, non-aggregated raw I-94 Data directly to the Department's contractor, CIC Research. At the time CBP's raw data are uploaded into CIC Research's database, each record reflects an exact copy of the data sent by CBP, including personally identifiable

---

[4] A SQL Server is a database server that implements the Structured Query Language ("SQL"), which is a standardized computer programming language that is used to execute queries and perform various operations on the data in a database.

information for passengers. Other than performing a "data integrity check" that de-duplicates the raw data, CIC does not delete or otherwise modify the raw data received from CBP.

CIC Research extracts, aggregates, and anonymizes data relevant to travel and tourism to create output files in PDF and Excel format; these output files are standardized reports comprised of the summary of tables of monthly data that are found on the National Travel and Tourism Office's Summary of International Travel to the United States report. These standardized reports all contain anonymized and aggregated information from CIC's database of CBP raw data.

Significantly, the creation of an output file does not modify the database in any way, either by creation, deletion, or modification of any records. CIC Research also does not anonymize the data within its database. The aggregated and anonymized information calculated for an output file is not stored separately in another database nor is a new database created during the process of creating a new output file. The information in each Standardized Report is generated anew with each output file. Other than the database that contains the non-anonymized, non-aggregated raw data from CBP, there is no other database maintained by CIC Research that is relevant to the I-94 Data and the Visitor Arrivals Program. In short, neither the Department nor CIC Research have a database of anonymized, non-aggregated I-94 Data.[5]

---

[5] To be clear, CIC Research has the capability of *creating* a customized data file of anonymized, non-aggregated I-94 Data; however, the creation of such a datafile is beyond the scope of the agency's obligations under FOIA. "The law is clear that the [FOIA] does not require agencies to generate new records in response to FOIA requests." *Am. Immigration Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 240-41 (D.D.C. 2020) (citing *Forsham v. Harris*, 445 U.S. 169, 186 (1980)); *see also Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."). Further, were CIC Research instructed to create such a file, it would only be produced to ITA upon payment of the direct costs to the agency of obtaining this customized data file, which would cost approximately $11,620.

## CONCLUSION

For the foregoing reasons, the Court should conclude that Defendant complied with its FOIA obligations and grant summary judgment in DOC's favor.

Dated: December 8, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
D.C. Bar # 924092
Chief, Civil Division

By:  /s/ *April Denise Seabrook*
APRIL DENISE SEABROOK
D.C. Bar # 993730
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2525
April.Seabrook@usdoj.gov

*COUNSEL FOR DEFENDANT*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | |
| PLAINTIFFS, | |
| v. | CIV. A. NO. 19-2290 (KBJ) |
| U.S. DEPARTMENT OF COMMERCE, | |
| DEFENDANT. | |

# **[PROPOSED] ORDER**

UPON CONSIDERATION of the Defendant's Renewed Motion for Summary Judgment, the supporting memorandum, the exhibits and declarations thereto, as well as any opposition and reply, and the entire record, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that summary judgment is awarded to Defendant as to all claims asserted in the above-captioned action.

SO ORDERED.

_____            _____
Date                                                         United States District Judge