# Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-02290 (KBJ) |
| ) | |
| U.S. DEPARTMENT OF COMMERCE, ) | |
| ) | |
| Defendant. ) | |

## THIRD DECLARATION OF ISABEL HILL[1]

I, Isabel Hill, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge and belief:

1. I am the Director of the National Travel and Tourism Office (NTTO), International Trade Administration (ITA), U.S. Department of Commerce (DOC, Commerce, or the Department). I have held this position since 2013.

2. My statement in this declaration is based on my personal knowledge, information provided to me by employees under my supervision, information obtained by me, and information contained in the records of NTTO. I am personally familiar with Plaintiff's FOIA request at issue in this civil action.

3. This Declaration is provided in support of Defendant's renewed motion for summary judgment in this matter. This is my third declaration in this matter.

---

[1] The First Hill Declaration was submitted with Defendant's Motion for Summary Judgment, *see* ECF No. 17-2, and the Second Hill Declaration was submitted with Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment *see* ECF No. 20-2.

4. Plaintiff's FOIA request sought the "'U.S. International Air Travel Statistics Report (APIS/I-92) Data Files' for 2015, 2014, 2013, 2012 and 2011".

5. In June 2018, ITA produced to Plaintiff 35 data files related to the U.S. International Air Traveler Statistics Program, comprising seven Excel spreadsheets for each of the five years of data requested by Plaintiff. Each Excel file is a Standardized Report, known as the U.S. International Air Travel Statistics Report.

6. I-92 Data furnished from U.S. Customs and Border Protection (CBP) does not contain personally identifiable information, but it does contain business proprietary information which can be anonymized through aggregation. No other data files were created from I-92 Data that contain anonymized data.

7. The only database containing I-92 Data in DOC or ITA's possession contains non-anonymized, non-aggregated information, and does not contain any data other than the raw I-92 Data supplied by CBP.

8. Plaintiff's FOIA request also sought the "'Air Arrivals I-94 Annual Datafile' from 2015, 2014, 2013, 2012 and 2011".

9. Also in June 2018, ITA produced to Plaintiff five data files, one for each of the five years of data requested by Plaintiff, corresponding to the Summary of International Travel to the United States standardized report for each of those years. Those data files contain the entirety of anonymized data that have been created from the databases maintained for NTTO for the Visitor Arrivals Program.

10. There are five databases, one for each of the five years of data requested by Plaintiff, corresponding to I-94 Data. These databases are maintained by CIC Research, Inc. (CIC), a contractor to ITA, and are in ITA's constructive possession but not actual possession.

These databases do not contain anonymized data. The records furnished by CBP are the bases of the records in these databases.

11. ITA has the contractual right to order custom reports to be made from the I-94 databases maintained by CIC, but there is a cost associated with doing so.

12. ITA interpreted Plaintiff's request for "Data Files" to correspond with the Excel format of the Standardized Reports listed on its website.

13. Plaintiff did not clarify its request as seeking databases until approximately September 16, 2019, well over one year after ITA had made its final determination regarding the FOIA request and had produced all data files in ITA's possession that contain anonymized information.

14. Plaintiff has now repeatedly asserted that he was not seeking raw data files that CBP furnished to ITA, but anonymized information created by ITA. Plaintiff has also asserted that he is not seeking a custom report to be created.

15. The databases that Plaintiff has now clarified he is seeking do not exist. There are no I-92 databases that contain anonymized information, nor any databases that contain information other than raw I-92 Data owned by CBP.  There are no I-94 databases that contain anonymized information, nor any I-94 databases in DOC or ITA's actual possession, and every record in CIC's I-94 databases contains raw CBP data.

16. Plaintiff has been informed repeatedly that all datafiles he is seeking have been produced. Plaintiff has pressed repeatedly for an explanation of why the website lists "Reports" (in both printfile and Excel formats) and "Data Files" separately, and has been informed that the listing of "Data Files" represents a custom report as a datafile formatted in any manner that the client specifies, be it Excel, SAS, or other format.  A "Report" datafile,

on the other hand, represents a Standardized Report in Excel format which has already been created from the relevant database.

17. Plaintiff's prior declarations and briefs misunderstand or misconstrue the declaration of Ronald Erdmann filed in *Yanofsky I*, and appear to allege that ITA admits it maintains I-92 Data and I-94 Data in anonymized, non-aggregated databases. This interpretation of Mr. Erdmann's Declaration is inconsistent with the facts.

18. The Erdmann Declaration, at ¶ 4, states:

> "ITA uses the statistics it collects under the I-92 Program to publish the *U.S. International Air Travel Statistics Report* on a monthly, quarterly, and annual basis. ITA sells monthly, quarterly, and/or annual subscriptions to the report(s), or data files for a fee. ITA also maintains and utilizes a data file related to the report ('I-92 Data File'), which consists of anonymized data[2] about air travelers between the United States and other countries."

In this context, the "data files" in the second sentence refer to the Standardized Reports that ITA sells. The "data file" in the third sentence also "maintain[ed] and utilize[d]" by ITA likely refers to the fact that ITA uses the annual data file (i.e. the report in Excel format) in its own day-to-day operations, as opposed to it being solely a data file publication for sale. The data file utilized internally by ITA is identical to the data file produced to Plaintiff. Regardless of what Mr. Erdmann meant, ITA did not create any data files related to the I-92 Program with additional data for the relevant time period other than those data files already produced[3] to plaintiff, custom data files commissioned by clients that contain the confidential business information of that client, and the

---

[2] As noted, raw I-92 Data does not contain PII. The declaration likely meant to have stated "aggregated data", not "anonymized data". Mr. Erdmann retired in 2017 and therefore cannot be asked directly what was intended.

[3] By agreement with Plaintiff, ITA produced only the annual data files (which contain cumulative information), and not the monthly or quarterly data files.

database that contains only raw data from CBP (including confidential business information).

19. The Erdmann Declaration, at ¶ 5, states:

> "The 'I-94 International Arrivals Program' or 'I-94 Program' provides data on monthly and annual overseas visitor arrivals to the United States along with select Mexican and Canadian visitor statistics. The information is presented in a report entitled the Summary of International Travel to the United States with 35 tables of information about non-U.S. resident visitor arrivals. ITA sells monthly, quarterly, and annual subscriptions to this report for a fee. ITA also sells quarterly and annual publications of a data file called 'Air Arrivals I-94 Database (Detail Arrival Records)' ('I-94 Data File'), which consists of anonymized data about foreign visitors to the United States."

Here, by "data file", Mr. Erdmann is likely referring to the custom reports that it offers to sell. Regardless of what was intended, NTTO created no data files related to the I-94 Program for the relevant time period beyond the data files already produced to Plaintiff[4], custom data files commissioned by clients, and the databases created and maintained by CIC which contain the raw data (including personally identifiable information) furnished by CBP and calculated information associated with individual CBP records useful for creating reports.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on this 7th day of December 2020.

                                                      Isabel Hill

---

[4] Again, by agreement, ITA produced only the annual data files (which contain cumulative information), and not the monthly or quarterly data files.