# Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 19- 2290 (KBJ) |
| | ) |
| U.S. DEPARTMENT OF COMMERCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF JEFFREY G. HALL

I, Jeffrey G. Hall, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge and belief:

1.    I am the Chief Data Officer for the ITA and the Director of Technology Transformation and Data Services with the office formerly known as the Office of the Chief Information Officer (OCIO), International Trade Administration (ITA), U.S. Department of Commerce (DOC, Commerce, or the Department). I have held this position since 2018 and have held various other directorships within this office as it reorganized since I joined the ITA in September 2015.  All my assignments have included oversight of the data function within the information technology office.

2.    My statements in this declaration are based on my personal knowledge, information provided to me by employees under my supervision, information obtained by me, and information contained in the records of ITA.  I am personally familiar with the U.S. International Air Travel Statistics Program of the National Travel and Tourism Office (NTTO) implicated in this matter, and I help support that program.

3.      This Declaration is provided in support of Defendant's renewed motion for summary judgment in this matter.

4.      The U.S. Customs and Border Protection (CBP) provides I-92 Data directly to ITA through a secure transmittal process, in accordance with CBP and ITA policies governing the protection of data, including federal security and privacy laws and regulations. With respect to the relevant time period of Plaintiff's FOIA request (2011-2015), I-92 Data was transmitted for use in conjunction with the U.S. International Air Travel Statistics Program in accordance with the 2002 Memorandum of Understanding between ITA and the Immigration and Naturalization Service (now CBP). The data also was transmitted in accordance with Interconnection Security Agreements (ISAs) dated November 2010 and January 2014.

5.      During this time period, I-92 Data were transmitted electronically from CBP utilizing the Secure File Transfer Protocol, and were received by the Office of the Chief Information Officer (OCIO). The I-92 Data were inserted into an OCIO database running on SQL Server.[1] The records for all years reside on the same database.

6.      The I-92 Data that CBP sends to ITA is owned by CBP, and includes business proprietary information. The I-92 Data sent from CBP to ITA is not all the I-92 air traffic data collected and stored by the Department of Homeland Security (DHS); it is a subset of the I-92 Data in CBP's possession and contains summary information related to flights.

7.      The I-92 Data supplied by CBP is stored in OCIO's database without any modification of the data provided. The I-92 Data stored in OCIO's database is identical to the original data supplied by CBP.

---

[1] SQL Server is a relational database management system developed and marketed by Microsoft.

8.      OCIO uses this database, which is a copy of the unmodified I-92 records provided by CBP, to create reports. The reports reflect only aggregated data, which do not reveal business proprietary information. The reports are created using commercially-available software known as SQL Server Reporting Services, installed on Microsoft's Business Intelligence Platform.

9.      Each report is a filtered view of data existing in OCIO's database. The reports are not databases, but the reports generated in Excel format are datafiles. New databases are not created, nor are database entries made or modified, by the generation of these reports. The creation of the U.S. International Air Travel Statistics Reports does not impact the database in any way, and it remains an exact copy of the I-92 Data furnished by CBP.

10.     No other database controlled by OCIO, NTTO, ITA, or DOC contains I-92 Data.

11.     Neither OCIO, NTTO, ITA, or DOC possess a database of I-92 Data which contains anonymized information, or which contains any information other than the raw I-92 Data owned and provided by CBP. No such database has ever been created under the U.S. International Air Traveler Statistics Program.

12.     NTTO has produced to plaintiff a complete set of the 35 cumulative report tables produced from this database for the relevant time period. More specifically, on June 5, 2018, ITA produced to Plaintiff 35 Excel files related to the U.S. International Air Traveler Statistics Program, comprising seven Excel spreadsheets for each of the five years of data requested by Plaintiff.  Each Excel file is a Standardized Report, known as the *U.S. International Air Travel Statistics Report*.  Each of the seven tables included for each year of I-92 Data reflects a view of the database using different parameters to filter the data. The files

produced contain cumulative information throughout each year, and no other Standardized

Reports were created which contain additional information obtained from the database.

13.    The only other reports generated from this database are three custom reports commissioned

by clients of NTTO, which contain business proprietary information specific to those

clients. No other datafiles have been generated from or are associated with the database.

14.    Although additional information could be extracted from the I-92 Data provided by CBP,

all information that actually has been extracted by NTTO, other than the three custom

reports, has been produced to plaintiff. To produce additional information would require

programming to create a new report view from the database and would entail the creation

of new agency records.

15.    While the database is technically capable of being produced by, for example, providing

Plaintiff with a CD containing the raw data, there is no way to produce the database

without also producing the business proprietary information within it. Moreover, as

previously stated, ITA does not own the data within the database; it is owned by CBP.

Producing the information would also violate the Memorandum of Understanding with

CBP for the sharing of I-92 Data, as well as the Interconnection Security Agreements.

16.    On December 14, 2018, in compliance with general FOIA practice and the Interconnection

Security Agreements, ITA referred I-92 Data from 2011-2015 to CBP, with directions to

provide a response directly to the requester. CBP received the referral for the I-92 Data and

assigned the referred FOIA request tracking number CBP-2016-069878. As of December

5, 2019, CBP informed ITA that the referred request CBP-2016-069878 was still open.

Also, through communication with a FOIA Officer for CBP in April and May of 2018,

NTTO learned that Plaintiff had another pending request with CBP covering I-92 Data for
2011-2015.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my
knowledge and belief. Executed on this Seventh day of December 2020.

Jeffrey G. Hall
Chief Data Officer
International Trade Administration
U.S. Department of Commerce