# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF COMMERCE, )<br>)<br>Defendant. )<br>) | Civil Action No. 19-cv-2290 (KBJ) |

**DECLARATION OF WARREN L. HULL**

I, Warren L. Hull, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1. I am a Director of CIC Research, Inc. (CIC) and the Senior Economist responsible for overseeing data analysis for the project with the National Travel and Tourism Office (NTTO), International Trade Administration (ITA), U.S. Department of Commerce (DOC, Commerce, or the Department). I have held this position since 1987.

2. My statement in this declaration is based on my personal knowledge, information provided to me by employees under my supervision, information obtained by me, and information contained in the records of CIC. I am personally familiar with the Visitor Arrivals Program of NTTO, and the contract between CIC and NTTO implicated in this matter.

3. This Declaration is provided in support of Defendant's renewed motion for summary judgment in this matter.

1

4. During the relevant time period of Plaintiff's FOIA request (2011-2015), CIC received visitor arrival records (raw I-94 Data) directly from the U.S. Customs Border Protection (CBP), in accordance with the 2002 CBP-ITA Memorandum of Understanding.

5. CIC input the raw I-94 Data received into a SAS database.[1] One database exists for each year of I-94 Data received.

6. At the time data are input into the database, each record added reflects an exact copy of the raw data sent by CBP, including personally identifiable information for passengers.

7. CIC performs some data integrity checks on the raw data supplied by CBP, which results in removing duplicate records from the database. Other than removing duplicates, the data provided by CBP are never deleted or modified. CIC does not anonymize the data within its database.

8. CIC performs validation checks on the data, and where possible calculates information missing from some visitor arrival records, e.g. country of residence information that is missing. The calculated information is added to the database as additional information associated with the records that came from CBP, and do not modify in the database any of the raw data supplied by CBP. CIC also calculates additional information useful for creating reports and associates it with the visitor arrival records, such as the geographic reporting area for the port of entry, whether the record constitutes a tourist record, the class of admission, and the number of nights stayed. This additional associated information does not modify in the database any of the raw data supplied by CBP.

---

[1] SAS (previously Statistical Analysis System) is a software suite that can mine, alter, manage, and retrieve data from a variety of sources and perform statistical analysis on it. The SAS software command language includes DATA steps which are used to read external data files and build a SAS data set for processing and summarization.

9. All of the visitor arrival records (raw I-94 Data) in the database are obtained solely from CBP. To be clear, although data pertaining to Canadian arrivals or arrivals from Mexico by land may be handled differently from other countries when generating output files, all the visitor arrival records come from CBP, and no other passenger travel data in the database is furnished or obtained from foreign governments or any other data sources, including Statistics Canada and the Instituto Nacional de Estradística y Geográfia.

10. CIC prepares output files (output files are summarized, anonymized information produced in pdf and Excel format) from this data for NTTO titled *Summary of International Travel to the United States*. The output files contain aggregated and anonymized information obtained from the database. CIC prepares no other output files for NTTO from these data except for custom output files commissioned by clients of NTTO.

11. The output files prepared by CIC are not databases. The aggregated and anonymized information calculated for output files are not stored separately in another database. Instead, the information is generated anew with each output file. The creation of an output file does not modify the database in any way, either by creation, deletion, or modification of any records.

12. Output files which are in Excel format are datafiles, but the corresponding output files in pdf format are not datafiles.

13. There is no other database maintained by CIC relevant to the I-94 Data and the Visitor Arrivals Program. CIC sends no other reports to NTTO other than the standardized reports and purchased custom reports.

14. CIC's databases are in SAS format. A copy of the databases could feasibly be produced, but they contain information supplied by CBP which contains personally identifiable information and do not contain any anonymized data. Production of such information would also violate the Memorandum of Understanding with CBP for their sharing I-94 Data with ITA.

15. Similarly, output files which are datafiles could be created which reflect all information in the databases or all information except for personally identifiable information, but that would involve creating new output files that otherwise would not be created, and would require added CIC labor costs for programming new output files.

16. For either option identified above, CIC would charge NTTO $11,620 to prepare datafiles with the requested information, as furnishing that information is not included in the existing contract.

17. At NTTO's direction, the raw data sent by CBP (via compact discs) were returned to CBP, in order to facilitate CBP's ability to respond to the referral made to it from ITA for the raw data provided by CBP to NTTO (and to an outstanding FOIA request for I-94 Data for 2011-2015 submitted to CBP directly).

18. Neither CIC, ITA, nor NTTO possess a database of anonymized, non-aggregated I-94 Data. No such database was ever created under the Visitor Arrivals Program.

19. The Excel output files produced in June 2018, containing revised data for each of the five years of data requested by Plaintiff and corresponding to the *Summary of International Travel to the United States* standardized report for each of those years, are a complete set of cumulative datafiles containing anonymized data that have been created from the databases maintained for NTTO for the Visitor Arrivals Program.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on this Seventh day of December 2020.

*Warren L. Hull*

Warren L. Hull

5