UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | |
| PLAINTIFF, | |
| v. | CIV. A. NO. 19-2290 (KBJ) |
| U.S. DEPARTMENT OF COMMERCE, | |
| DEFENDANT. | |

## DEFENDANT'S RESPONSIVE STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE AND DEFENDANT'S ADDITIONAL FACTS

Pursuant to Local Civil Rule 7(h), the Department of Commerce ("DOC" or "the Department" or "Defendant"), on behalf of its component the International Trade Administration ("ITA"), through undersigned counsel, respectfully submit this Responsive Statement of Material Facts Not in Genuine Dispute in support of its Opposition to Plaintiff's Renewed Cross-Motion for Summary Judgment.

Defendant's responses cite to the following declarations:

- Declaration of Isabel Hill, dated Dec. 6, 2019 – cited "1st Hill Decl."[1] – Def's Ex. A
- Second Declaration of Isabell Hill, dated Jan. 31, 2020 – cited "2d Hill Decl." – Def's Ex. J
- Third Declaration of Isabel Hill, dated Dec. 7, 2020 – cited "3d Hill Decl."[2] – Def's Ex. B
- Declaration of Jeffrey Hall, dated Dec. 7, 2020 – cited "J. Hall Decl." – Def's Ex. C
- Declaration of Warren L. Hull, dated Dec. 7, 2020 - cited "W. Hull Decl." – Def's Ex. D
- Declaration of David Huether, dated Feb. 11, 2021 – cited "Huether Decl." – Def's Ex. H
- Declaration of Victor Powers, dated Feb. 11, 2021 – cited "Powers Decl." – Def's Ex. I

---

[1] Plaintiff's Statement of Material Facts ("PSOMF") refers to this declaration as "Dec. 2019 Hill Decl.". *See* PSOMF ¶ 29.
[2] The PSOMF refers to this declaration as "Dec. 2020 Hill Decl.". *See* PSOMF ¶ 51.

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 28. The I-92 Program is administered by the International Trade Administration ("ITA"), a component of the National Travel and Tourism Office ("NTTO") within DOC. *Declaration of Adam A. Marshall, ECF No. 18-4 (hereinafter, "Marshall Decl."), Ex. 1 ¶3 (hereinafter, the "Erdmann. Decl.").* | Disputed.<br><br>As repeatedly attested by Defendant, "[t]he I-92 program is a joint effort between CBP [United States Custom and Border Protection] and NTTO". *1st Hill Decl. at ¶ 8.* Furthermore, NTTO is a component of ITA, and not vice versa. *See 1st Hill Decl. at ¶ 1; 2nd Hill Decl. at ¶ 1; Third Hill Decl. at ¶ 1; Huether Decl. at ¶ 1.* |
| 29. NTTO's governmental functions include the collection, production, and publication of comprehensive international travel and tourism statistics. Declaration of Isabel Hill (Dec. 6, 2019), *ECF No. 17-2 (hereinafter, the "Dec. 2019 Hill Decl."), ¶4.* | Undisputed, with the clarification that NTTO does not directly collect data from international travelers, the collection of statistics is performed by CBP, and CBP provides the data to NTTO. *1st Hill Decl. at ¶ 9.* |
| 30. Information about travelers collected as part of the I-92 Program is transmitted from CBP to DOC (the "Original I-92 Data"). *Dec. 2019 Hill Decl. ¶¶8–10.* | Undisputed. |
| 31. The Original I-92 Data does not contain personally identifiable information. *Marshall Decl., Ex. 2 (hereinafter, the "Nov. 2018 Hill Decl."), ¶13.* | Undisputed, with the clarification that Original I-92 Data contains business confidential information. *1st Hill Decl. ¶ 11.* |
| 32. Within ITA, the Original I-92 Data is received by the Office of the Chief Information Officer ("OCIO"). *Declaration of Jeffrey G. Hall (hereinafter, "Hall Decl."), ¶5.* | Undisputed. |

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 33. Within ITA, the Original I-92 Data is "inserted into an OCIO database running on SQL Server" (hereinafter, the "I-92 Database"). *Hall Decl. ¶5.* | Undisputed, with the clarification that the term "Original I-92 Data" (introduced by Plaintiff in alleged fact 30) and the term "I-92 Database" (introduced by Plaintiff in alleged fact 33) reflect different names for content that is identical, i.e., they refer to the same data. *J. Hall Decl. ¶ 7.* |
| 34. ITA takes the Original I-92 Data from CBP and "processes [it] using a program called SQL and converts the data into a format that can be used by NTTO." *Nov. 2018 Hill Decl. ¶12.* | Undisputed, with the clarification that the term "processes", as used in this excerpt from ¶ 12 of the Hill Declaration in <u>Yanofsky v. Dep't of Commerce</u>, No. 1:16-CV-951 (KBJ)(D.D.C.) ("<u>Yanofsky I</u>") refers to and includes only the simple act of loading up the data, unchanged, from the original format to a format that can be used by NTTO to create its standardized reports. This processing does not make any changes to the data itself. *J. Hall Decl. ¶ 7; see 1st Hill Decl. ¶¶ 10-11.* |
| 35. The DOC's I-92 Database contains data collected as part of the I-92 Program for 2011–2015. *Hall Decl. ¶¶4–5.* | Undisputed, with the clarification that this data is identical to the "Original I-92 Data" transmitted from CBP to DOC. *J. Hall Decl. ¶ 7.* |
| 36. DOC creates reports and publications using the I-92 Database. *Dec. 2019 Hill Decl. ¶11; Marshall Decl., Ex. 5; Hall Decl. ¶8.* | Undisputed. |
| 37. One of the publications DOC creates using the I-92 Database is the *U.S. International Air Travel Statistics Report*, which is also known as a "Standardized Report" (hereinafter, "I-92 Standardized Reports"). *Nov. 2018 Hill Decl. ¶13; Dec. 2019 Hill Decl. ¶11; Marshall Decl., Ex. 5.* | Undisputed. |
| 38. DOC also prepares "Customized Data Files" under the I-92 Program. *Dec. 2019 Hill Decl. ¶11; Nov. 2018 Hill Decl. ¶13.* | Undisputed, with the clarification that, pursuant to the data sharing agreements between DOC and CBP, DOC is precluded from including in the customized data files data provided by CBP except in anonymized, aggregated form, *Huether Decl. ¶¶ 8-9,* |

| Plaintiff's Statement | Defendant's Response |
|---|---|
|  | and that DOC prepares customized data files *only if purchased* by a client. The number of such files prepared from data for 2011-2015 is three, *1st Hill Decl. ¶ 42.* |
| 39. The I-92 Standardized Reports do not contain all the information that is contained in the DOC's I-92 Database. *Dec. 2019 Hill Decl. ¶11; Marshall Decl., Ex. 6; Yanofsky Decl. ¶¶11–13.* | *Undisputed.* |
| 40. The date of individual flights is aggregated in the I-92 Standardized Report. *Dec. 2019 Hill Decl. ¶11; Nov. 2018 Hill Decl. ¶13; Marshall Decl., Ex. 6.* | Defendant does not understand what Plaintiff means when it refers to aggregation of dates; therefore, Defendant disputes this alleged fact.  Defendant does not dispute that the I-92 Standardized Report includes data aggregated across multiple flights and does not report data on a per-date basis. |
| 41. The date of individual flights can be produced in "Customized Data Files." *Dec. 2019 Hill Decl. ¶11; Nov. 2018 Hill Decl. ¶13.* | Undisputed, with the clarification that DOC is precluded from including data provided by CBP except in anonymized, aggregated form, *Huether Decl. ¶¶ 8-9,* and that DOC prepares customized data files *only if purchased* by a client. Defendant does not dispute that the technological capability exists to create a customized data file that separates data out on a per-flight basis or on a per-date basis. |
| 42. The date of individual flights exists in the I-92 Database. *Dec. 2019 Hill Decl. ¶11; Nov. 2018 Hill Decl. ¶13.* | Undisputed that individual records in the I-92 Database include a flight date. |
| 43. The I-94 Program is part of the DOC's international trade activities conducted through ITA. *Erdmann Decl. ¶2.* | Disputed.<br><br>"The I-94 Program is a joint effort between CBP and NTTO". *1st Hill Decl. ¶ 14.* |

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 44. Data that is collected as part of the I-94 Program by CBP (the "Original I-94 Data") is transmitted from CBP to an ITA contractor, CIC Research, Inc. (the "ITA Contractor"). *Dec. 2019 Hill Decl. ¶¶14–15; Declaration of Warren L. Hull ("Hull Decl."), ¶4.* | Undisputed. |
| 45. The ITA Contractor maintains at least five separate SAS databases, one for each year between 2011–2015 (collectively, the "I-94 Databases"). *Hull Decl. ¶¶4–5.* | Undisputed, with the clarification that there are exactly five databases covering the years 2011 through 2015, and these databases reside on IT systems maintained by the Contractor. *W. Hull Decl. ¶¶ 5, 13; 3d Hill Decl. ¶ 15.* |
| 46. The ITA Contractor input Original I-94 Data for 2011–2015 received from CBP into its I-94 Databases. *Hull Decl. ¶5.* | Undisputed, with the clarification that a separate database exists for each year between 2011 and 2015 and only data for 2011 was input into the database for 2011, only data for 2012 was input into the 2012 database, etc. *W. Hull Decl. ¶ 5.* |
| 47. After the ITA Contractor input the Original I-94 Data for 2011–2015 into its I-94 Databases, it performed "data integrity checks," which had the effect of "removing duplicate records from" the I-94 Databases. *Hull Decl. ¶7.* | Undisputed. |
| 48. After the ITA Contractor input the Original I-94 Data for 2011–2015 into its corresponding I-94 Databases, it performed "validation checks." *Hull Decl. ¶8.* | Undisputed. |

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 49. The ITA Contractor adds additional information to its I-94 Databases by "calculat[ing] information missing from some visitor arrival records, e.g. country of residence information that is missing." *Hull Decl. ¶8.* | Undisputed. |
| 50. The ITA Contractor adds additional information to its I-94 Databases, such as "the geographic reporting area for the port of entry, whether the record constitutes a tourist record, the class of admission, and the number of nights stayed." *Hull Decl. ¶8.* | Undisputed. |
| 51. The I-94 Databases "are in ITA's constructive possession." *Third Declaration of Isabel Hill (hereinafter, "Dec. 2020 Hill Decl."), ¶10.* | Undisputed. |
| 52. The ITA Contractor can produce a copy of its I-94 Databases for 2011–2015. *Hull Decl. ¶14.* | Disputed.<br><br>The data sharing agreement between ITA and CBP does not permit disclosing data provided by CBP except in anonymized, aggregated form. *Huether Decl. ¶¶ 8-9.* Although technologically feasible, "[p]roduction of such information would … violate the Memorandum of Understanding with CBP for their sharing I-94 Data with ITA." *W. Hull Decl. ¶ 14.* |

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 53. The ITA Contractor can produce "datafiles" "which reflect all information in" its I-94 Databases for 2011–2015. *Hull Decl. ¶15.* | Disputed.<br><br>Defendant does not dispute that it is technologically feasible to produce such files, with the clarification that "datafiles" are custom reports in a requested format, such as Excel or SAS. *3d Hill Decl. ¶ 16.* However, this alleged fact is disputed because the data sharing agreement between ITA and CBP does not permit disclosing data provided by CBP except in anonymized, aggregated form. *Huether Decl. ¶¶ 8-9; ECF 17-3 at p. 3.* |
| 54. The ITA Contractor uses the I-94 Databases to create summary tables that appear in an NTTO report called *Summary of International Travel to the United States*, which is also known as a "Standardized Report" (hereinafter, the "I-94 Standardized Reports"). *Dec. 2019 Hill Decl. ¶¶16, 18; Marshall Decl., Ex. 5.* | Undisputed. |
| 55. NTTO also prepares "Customized Data Files" under the I-94 Program. *Dec. 2019 Hill Decl. ¶18.* | Undisputed, with the clarification that customized data files are prepared *only if purchased* by a customer, as the production of customized reports requires a level of effort from the ITA Contractor for which they must be compensated. *2d Hill Decl. ¶ 22.* The number of customized data files prepared by NTTO from data in the years in question (i.e., 2011-2015) is zero. *1st Hill Decl. ¶ 41.* |
| 56. "Customized Data Files" reflect parameters and file formats specified by a third party. *Dec. 2019 Hill Decl. ¶18.* | Undisputed, with the clarification that no customized data file that contains all I-94 data in non-aggregated form has been created for any third party. *Huether Decl. ¶ 9.* |

| Plaintiff's Statement | Defendant's Response |
|---|---|
| 57. Information not contained in the I-94 Standardized Reports can be set forth in a "customized" DOC publication. *Dec. 2019 Hill Decl. ¶18; Marshall Decl., Ex. 7.* | Disputed.<br><br>Defendant does not dispute that customized reports could be created that contain information not in the I-94 Standardized Reports. However, this alleged fact is disputed because the phrase "[i]nformation not contained" in the I-94 Standardized Reports" is too vague, without limitation even to I-94 Program Data. Furthermore, the data sharing agreement between ITA and CBP does not permit disclosing data provided by CBP except in anonymized, aggregated form and also limits the categories of data that can be shared. *Huether Decl. ¶¶ 8-9; ECF 17-3 at p. 3.* |
| 58. A "customized" DOC I-94 publication could identify "how many Japanese male travelers on a business visa between the ages of 25 and 50 arrived through Los Angeles International Airport (LAX) on a Friday with the first intended address (address while in the U.S.) being Nevada[.]" *Marshall Decl., Ex. 7.* | Undisputed. |
| 59. The I-94 Standardized Reports do not contain all the information that is contained in the I-94 Databases. *Marshall Decl., Exs. 7, 8; Dec. 2019 Hill Decl. ¶18; Yanofsky Decl. ¶¶11–13.* | Undisputed. |

A.   **Plaintiff's FOIA Request and *Yanofsky I***

| | |
|---|---|
| 60. On February 26, 2016, Plaintiff, through his then-counsel, sent a FOIA request to the DOC via email (the "Request"). *Compl., Ex. F; Yanofsky Decl. ¶2 & Exs. 1–2.* | Undisputed. |

| | |
|---|---|
| 61.  By the Request, Plaintiff requested access to and copies of the "'Air Arrivals I-94 Annual Datafile' from 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation," and the "'U.S. International Air Travel Statistics Report (APIS/I-92) Data Files' for 2015, 2014, 2013, 2012 and 2011 and its associated technical documentation." *Compl., Ex. F; Yanofsky Decl., Ex. 2.* | Undisputed that Plaintiff submitted a 4-page letter to DOC dated February 26, 2016 ("February 2016 Letter"), containing a FOIA request ("FOIA Request") on page 2 that includes the quoted language.  *Def's Ex. E at 2.* |
| 62.  In the Request, Plaintiff stated that the "requested records" would provide "evidence of the information that the federal government collects . . . about foreign visitors to the United States, the information the federal government collects about air traffic to and from the United States, and the government's efficacy in collecting this information[.]" *Yanofsky Decl., Ex. 2.* | Disputed.<br><br>To the extent that Plaintiff defines the entire February 2016 Letter as "the Request", this is undisputed; however, Defendant disputes the statement to the extent it implies that this language is contained in the section of the February 2016 Letter titled "FOIA Request," which is the only section of the letter that describes the records being requested by the FOIA Request. *See Def's Ex. E at 2 (Feb. 2016 Letter).*<br><br>The quoted language was only contained in the section of the February 2016 Letter titled "Request for a Fee Waiver," which does not describe the records sought but only describes why Plaintiff believed he was entitled to a fee waiver. *Id. at 4.*<br><br>Defendant further disputes this alleged fact to the extent that it is intended to imply that the quoted language from the "Request for a Fee Waiver" section of the letter provided clarification of the specific records that Plaintiff's sought through submission of the FOIA Request. |

| | |
|---|---|
| 63. In the Request, Plaintiff stated that the "requested records" would "allow the public to test and evaluate the accuracy of official DOC and other government statistics on travel that are calculated using this data[.]" *Yanofsky Decl., Ex. 2.* | Disputed in part.<br><br>To the extent that Plaintiff defines the entire February 2016 Letter as "the Request", this is undisputed; however, Defendant disputes the allegation to the extent it implies that this quoted language is contained in the section of the February 2016 Letter titled "FOIA Request," which is the only section of the letter that describes the records being requested. *See Def's Ex. E at 2 (Feb. 2016 Letter).*<br><br>The quoted language was contained in the section of the February 2016 Letter titled "Request for a Fee Waiver," which does not describe the records sought but only describes why Plaintiff believed he was entitled to a fee waiver. *Id. at 3.*<br><br>Defendant further denies this alleged fact to the extent that it is intended to imply that the quoted language from the "Request for a Fee Waiver" section of the letter provided clarification of the specific records that Plaintiff sought through submission of the FOIA Request. |
| 64. In an attachment to the Request, Plaintiff's counsel noted that the records Plaintiff sought for 2011–2014 "could be used to provide critical understanding of the 'operations and activities of the government'" because "[a]t present there is no way to confirm official government statistics on travel calculated from this data set are done so in a responsible or sound manner." *Yanofsky Decl., Ex. 2, Attachment E.* | Undisputed, but not a material fact.<br><br>The quoted language appears in "Attachment E" to the February 2016 Letter. Attachment E is a December 14, 2015, letter related to a March 2015 FOIA request made by Plaintiff. *See ECF 1-7 at 23.* The section of the February 2016 Letter containing the FOIA Request does *not* refer to or incorporate Attachment E; rather the February 2016 Letter's only reference to Attachment E is in the "Background" section of the letter. Accordingly, the content of Attachment E is not material to any issue related to the FOIA Request contained in February 2016 Letter, which is the only FOIA request that is the subject of this case. |

| | |
|---|---|
| 65. In the Request, Plaintiff specified that he would like the records to be produced "in electronic format." *Yanofsky Decl., Ex. 2.* | Undisputed. |
| 66. In the Request, Plaintiff cited to DOC's websites that list "prices" for various DOC publications under the I-92 Program and I-94 Program. *Yanofsky Decl., Ex. 2. & Attachment E.* | Disputed, and not a material fact.<br><br>The FOIA Request, which is stated on page 2 of the February 2016 Letter does not cite to any DOC website or refer to any prices.<br><br>The only place the word "price" appears in the February 2016 Letter is in footnote 1, which appears on page 4 in a section titled "Arguments Raised in December 14, 2015 Letter." *See* Def's Ex. E at 4 (Feb. 2016 Letter). |
| 67. In the Request, Plaintiff argued that the "fees listed on the OTTI website" for the "requested records," specifically the "2015 I-92 Data File," "historical I-92 Data," "2015 I-94 Data File," and "historical I-94 Data," could not be charged under FOIA. *Yanofsky Decl., Ex. 2.* | Disputed, and not a material fact.<br><br>None of the quoted language in this alleged fact appears in the "FOIA Request" section within the February 2016 Letter nor does this argument appear in any other portion of the February 2016 Letter. *See generally ECF No. 1-7.*<br><br>Information regarding "fees listed on the OTTI website" is immaterial because the issues in this case are limited to (i) what records did Plaintiff request; (ii) does Defendant possess such records; and (iii) if so, does Defendant have a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |
| 68. The "fees" listed on the DOC website for the 2015 I-92 Standardized Reports are not the same as for the 2015 "Data Files." *Compl., Ex. B; Compl. ¶¶12–15; Answer ¶¶12–15; Dec. 2019 Hill Decl., Ex. 3.* | Undisputed, but not a material fact.<br><br>The fees listed on the DOC website are immaterial because the issues in this case are limited to (i) what records were requested in the FOIA Request contained in the February 2016 Letter; (ii) does Defendant possess such records; and (iii) if so, has Defendant produced the records or asserted a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |

| | |
|---|---|
| 69. The "fees" listed on the DOC website for the 2015 I-94 Standardized Reports are not the same as for the 2015 "Annual datafile" or "Quarterly datafile." *Compl., Ex. D; Compl. ¶¶17–22; Answer ¶¶17–22.* | Undisputed, but not a material fact.<br><br>The fees listed on the DOC website are immaterial because the issues in this case are limited to (i) what records were requested in the FOIA Request contained in the February 2016 Letter; (ii) does Defendant possess such records; and (iii) if so, has Defendant produced the records or asserted a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |
| 70. On or about March 30, 2016, Plaintiff received a letter from Defendant denying the Request (the "Denial Letter"). *Compl. ¶27 & Ex. G; Answer ¶27; Dec. 2019 Hill Decl. ¶22.* | Undisputed, but not a material fact, as this alleged fact relates to issues resolved in *Yanofsky v. Department of Commerce*, Civ. A. No. 1:16-cv-951 (KBJ) (D.D.C. May 19, 2016), ECF No. 1 ("*Yanofsky I*"), not to the issues presently before this Court. |
| 71. The Denial Letter stated that the requested records were being "withheld under 5 U.S.C. § 552(a)(4)(A)(vi)[.]" *Compl. ¶28 & Ex. G; Answer ¶28; Dec. 2019 Hill Decl. ¶22.* | Undisputed but not a material fact, as this alleged fact relates to issues resolved in *Yanofsky I*, not the issues presently before this Court. |
| 72. The Denial Letter further stated that the requested records "are not available under the FOIA pursuant to the displacement provision[,]" and must instead be purchased through NTTO. *Compl. ¶28 & Ex. G; Answer ¶28.* | Undisputed but not a material fact, as this alleged fact relates to issues resolved in *Yanofsky I*, not the issues presently before this Court. |
| 73. Plaintiff filed an administrative appeal with DOC on or about March 31, 2016 appealing the DOC's denial of the Request (the "Administrative Appeal"). *Yanofsky Decl. ¶4; Compl. ¶29; Answer ¶29.* | Undisputed but not a material fact, as this alleged fact relates to issues resolved in *Yanofsky I*, not the issues presently before this Court. |

| | |
|---|---|
| 74.  Plaintiff did not receive a determination from the DOC with respect to the Administrative Appeal within 20 business days.  *Yanofsky Decl. ¶5; Marshall Decl., Ex. 3 ¶58; Marshall Decl., Ex. 4 ¶58.* | Undisputed but not a material fact. |
| 75.  Plaintiff initiated a lawsuit against DOC in this Court on May 19, 2016, over its denial of the Request.  *See* Compl. for Declaratory and Injunctive Relief, *Yanofsky v. Department of Commerce*, No. 1:16-cv-951 (KBJ) (D.D.C. May 19, 2016), ECF No. 1 ("*Yanofsky I*"). | Undisputed but not a material fact, as this alleged fact relates to issues resolved in *Yanofsky I*, not the issues presently before this Court. |

B.      **DOC's Refusal to Turn Over the Requested Records Following *Yanofsky I***

| | |
|---|---|
| 76.  During a telephone call on or about May 24, 2018, Defendant confirmed to Plaintiff's counsel that the DOC would not charge any fee for the records responsive to Plaintiff's Request. *Compl. ¶33; Answer ¶33; Marshall Decl. ¶2.* | Undisputed. |
| 77.  On or about June 5, 2018, a FOIA officer from DOC sent an email to Plaintiff with links to two compressed "zip" files: "I-92.zip" (the "Produced I-92 Records") and "I-94.zip" (the "Produced I-94 Records") (collectively, the "Produced Records").  *Compl. ¶34 & Ex. H; Answer ¶34; Yanofsky Decl. ¶6; Dec. 2019 Hill Decl. ¶28.* | Undisputed that on June 5, 2018, a FOIA officer from ITA, a component of DOC, sent the Produced I-92 Records and the Produced I-94 Records to Plaintiff. |

| | |
|---|---|
| 78. The Produced I-92 records consist of 35 Excel spreadsheets. *Compl. ¶35; Answer ¶35; Dec. 2019 Hill Decl. ¶28; Yanofsky Decl. ¶7.* | Undisputed. |
| 79. The Produced I-92 Records are the U.S. International Air Travel Statistics Report, (a "I-92 Standardized Report"), for 2011–2015.  *Compl. ¶41; Answer ¶41; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶29.* | Undisputed. |
| 80. The Produced I-92 Records are not the DOC's I-92 Database for 2011–2015.  *Compl. ¶41; Answer ¶41; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶¶10–11, 29; Marshall Decl., Exs. 5, 6; Erdmann Decl. ¶4; Yanofsky Decl. ¶¶11–13; Hall Decl. ¶¶5, 8.* | Undisputed, but not a material fact for resolving the current motions for summary judgment.

The plain language of the FOIA Request described the records sought as the I-92 "Data File"; the FOIA Request did not reference any "database" being sought by Plaintiff.  "Data File[s]" was reasonably and appropriately interpreted to refer to the Excel spreadsheets—i.e., the standardized reports of anonymized, aggregated I-92, which are the only data files of I-92 data possessed by DOC other than the three customized data files. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.* |
| 81. The Produced I-92 Records are not the records sought by Mr. Yanofsky's Request.  *Compl., Ex. F; Yanofsky Decl. ¶11 & Ex. 2; Compl. ¶41; Answer ¶41; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶¶10–11, 29; Marshall Decl., Ex. 6; Erdmann Decl. ¶4; Marshall Decl., Ex. 5; Hall Decl. ¶¶5, 8.* | Disputed.

The FOIA Request plainly states that Plaintiff sought the I-92 "Data File" for each year 2011-2015.  The request for "Data File[s]" was reasonably and appropriately interpreted to refer to the Excel spreadsheets—i.e., the standardized reports of anonymized, aggregated I-92, which are the only data files of I-92 data possessed by DOC. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.* |

| | |
|---|---|
| 82.  The Produced I-94 Records consist of five Excel spreadsheets.  *Compl. ¶36; Answer ¶36; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶28; Yanofsky Decl. ¶8.* | Undisputed. |
| 83.  The Produced I-94 Records are the Summary of International Travel to the United States (i.e., a "Standardized Report") for 2011–2015.  Compl. ¶42; Answer ¶42; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶30. | Undisputed. |
| 84.  The Produced I-94 Records are not the I-94 Databases for 2011– 2015.  Compl. ¶42; Answer ¶42; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶¶16–18, 30; Marshall Decl., Exs. 5, 8; Yanofsky Decl. ¶¶11–13; Hull Decl. ¶¶ 5, 10, 14, 15. | Disputed.<br><br>The plain language of the FOIA Request described the records sought as the I-94 "Annual Datafile" from the years 2011-2015; the FOIA Request did not reference any "database" being sought by Plaintiff.  "Datafile" was reasonably and appropriately interpreted to refer to the Excel spreadsheets – i.e., the standardized reports of anonymized, aggregated I-94 data, which are the only data files of I-94 data possessed by DOC. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.* |
| 85.  The Produced I-94 Records are not the records sought by Mr. Yanofsky's Request.  *Compl., Ex. F; Yanofsky Decl. ¶11 & Ex. 2; Compl. ¶42; Answer ¶42; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶¶16–18, 30; Marshall Decl., Exs. 5, 8; Hull Decl. ¶¶ 5, 10, 14, 15.* | Disputed.<br><br>The plain language of the FOIA Request described the records sought as the I-94 "Annual Datafile" from the years 2011-2015; the FOIA Request did not reference any "database" being sought by Plaintiff.  "Datafile" was reasonably and appropriately interpreted to refer to the Excel spreadsheets—i.e., the standardized reports of anonymized, aggregated I-94 data, which are the only data files of I-94 data possessed by DOC. Defendant produced these files to Plaintiff. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.* |

| | |
|---|---|
| 86. On September 16, 2019, Plaintiff's counsel sent an email to Defendant's counsel stating, *inter alia*, that "you and agency counsel asked for some additional information with respect to the request and records at issue in" this case. *Marshall Decl., Ex. 9* | Undisputed but not a material fact.<br><br>Undisputed that this language was included in a September 16, 2019, email from Plaintiff's counsel to Defendant's counsel.<br><br>This alleged fact is immaterial because Plaintiff's attempt to clarify or revise the FOIA Request more than one year after the records had been produced and nearly two months after filing suit is immaterial to the issues before the Court, which are limited to (i) what records were requested *in the FOIA Request contained in the February 2016 Letter*; (ii) does the Defendant possess such records; and (iii) if so, has Defendant produced the records or asserted a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |
| 87. Plaintiff's counsel's September 16, 2019 email further stated that Plaintiff's Request sought "the underlying I-92 data in DOC's database for 2011–2015. In other words, the data <u>from which</u> both DOC's annual reports and customized reports are created." *Marshall Decl., Ex. 9 (emphasis in original).* | Undisputed but not a material fact.<br><br>Undisputed that this language was included in a September 16, 2019, email from Plaintiff's counsel to Defendant's counsel.<br><br>This alleged fact is immaterial because Plaintiff's attempt to clarify or revise the FOIA Request more than one year after the records had been produced and nearly two months after filing suit is immaterial to the issues before the Court, which are limited to (i) what records were requested *in the FOIA Request contained in the February 2016 Letter*; (ii) does the Defendant possess such records; and (iii) if so, has Defendant produced the records or asserted a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |
| 88. Plaintiff's counsel's September 16, 2019 email to Defendant's counsel further stated, *inter alia*, that Plaintiff's Request sought "the underlying I-94 data stored in the DOC's contractor's database, <u>from which</u> the annual issues are generated." *Marshall Decl., Ex. 9 (emphasis in original).* | Undisputed but not a material fact.<br><br>Undisputed that this language was included in a September 16, 2019, email from Plaintiff's counsel to Defendant's counsel.<br><br>This alleged fact is immaterial because Plaintiff's attempt to clarify or revise the FOIA Request more than one year after the records had been produced and nearly two months after filing suit is immaterial to the issues before the Court, which are limited to (i) what |

| | |
|---|---|
| | records were requested *in the FOIA Request contained in the February 2016 Letter*; (ii) does the Defendant possess such records; and (iii) if so, has Defendant produced the records or asserted a valid basis for withholding the records. *See ECF No. 24 at 4, 8-9.* |
| 89. Plaintiff's counsel's September 16, 2019 email to Defendant's counsel also included a range of acceptable data formats for DOC to produce the records sought by the Request, including CSV, Excel, Microsoft Access Database, SAS, SPSS, STATA, SQL (and any derivative thereof), or any database type using open source software. *Marshall Decl., Ex. 9.* | Undisputed. |
| 90. By email dated September 19, 2019, DOC's counsel stated to Plaintiff's counsel that DOC understood Plaintiff's Request to seek a copy of the databases from which DOC creates reports under the I-92 Program and I-94 Program. *Marshall Decl., Ex. 5.* | Undisputed in part but not a material fact.<br><br>Undisputed that Defendant's counsel stated that it understood Plaintiff's September 2019 description of the records sought in the February 2016 FOIA Request.<br><br>Disputed to the extent that this alleged fact is asserted to imply that Defendant "understood Plaintiff's Request to seek a copy of the databases from which DOC creates reports under the I-92 Program and I-94 Program" when it issued records responsive to the FOIA Request in June 2018. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.*<br><br>This alleged fact is immaterial because the email to which it refers reflects Defendant's response to information made available to it more than one year after the records had been produced in response to the FOIA Request and nearly two months after Plaintiff filed suit. |

| 91. DOC's counsel's September 19, 2019 email stated, *inter alia*: "it is our understanding that [Plaintiff is] seeking an electronic copy of the databases used to create I-92 and I-94 reports, and DOC believes that its non-production of those databases is proper under FOIA." *Marshall Decl., Ex. 5.* | Undisputed in part but not a material fact.<br><br>Undisputed that Defendant's counsel stated that it understood Plaintiff's September 2019 description of the records sought in the February 2016 FOIA Request.<br><br>Disputed to the extent that this alleged fact is asserted to imply that Defendant "understood Plaintiff's Request to seek a copy of the databases from which DOC creates reports under the I-92 Program and I-94 Program" when it issued records responsive to the FOIA Request in June 2018. *3d Hill Decl. ¶ 12; Def's Ex. E at 2 (Feb. 2016 Letter); Powers Decl. ¶¶ 9-11.*<br><br>This alleged fact is immaterial because the email to which it refers reflects Defendant's response to information made available to it more than one year after the records had been produced in response to the FOIA Request and nearly two months after Plaintiff filed suit. |
|---|---|
| 92. DOC has not produced any additional records or data to Plaintiff since the disclosure of the Produced Records on June 5, 2018. *Marshall Decl. ¶3; Yanofsky Decl. ¶9.* | Undisputed, with the clarification that all agency records responsive to Plaintiff's request have been produced in full, and no agency records have been withheld or partially withheld. *3d Hill Decl. ¶¶ 5-7, 9-10, 15-16; Powers Decl. ¶ 11.* |
| 93. The only records Defendant has produced to Plaintiff in response to his Request are I-92 Standardized Reports and I-94 Standardized Reports for 2011–2015. *Compl. ¶¶41–42; Answer ¶¶41–42; Nov. 2018 Hill Decl. ¶23; Dec. 2019 Hill Decl. ¶¶29–30; Marshall Decl. ¶3; Yanofsky Decl. ¶¶9–10.* | Undisputed. |

| | |
|---|---|
| 94.  Defendant has not cited any FOIA exemption set forth at 5 U.S.C. § 552(b) to withhold records responsive to Mr. Yanofsky's Request. *Dec. 2019 Hill Decl.; Dec. 2020 Hill Decl.; Hall Decl.; Def.'s Mem. of Points and Authorities in Supp. of Its Renewed Mot. for Summ. J.* | Undisputed and not a material fact.<br><br>Defendant has not withheld any agency records responsive to the FOIA Request; thus, Defendant has no need to assert a FOIA exemption. *3d Hill Decl. ¶¶ 5-7, 9-10, 15-16; Powers Decl. ¶ 11.* |

## Defendant's Additional Statements of Material Facts

### CBP Retained Control of the Data it Furnished

| | |
|---|---|
| 95.  A Memorandum of Understanding (MOU) covered the data provided by CBP to NTTO for the years in question. *Huether Decl. at ¶6 and Huether Attach. 1.* | |
| 96.  Under the terms of the MOU, NTTO is prohibited from releasing any I-94 or I-92 data provided by CBP except "the number of arrivals into the United States; the total number of travelers using business, pleasure, and student visas; estimates on the number of individuals arriving by air, land, and sea; and age group data falling under selected categories, including the destination and port-of-entry at the time of arrival." *Huether Decl. at ¶7 and Huether Attach. 1, Section 1.D.* | |
| 97.  Under the terms of the MOU, NTTO is prohibited from releasing I-94 or I-92 data "in any form identifiable to any individuals". *Huether Decl. at ¶8 and Huether Attach. 1, Section 1.D.* | |

| | |
|---|---|
| 98. Under the terms of the MOU, NTTO can only release I-94 or I-92 data that is "statistical information" that has been "collect[ed] and process[ed]". *Huether Decl. at ¶8 and Huether Attach. 1, Section 1.D.* | |

**NTTO's Use and Integration of the Data Is Limited**

| | |
|---|---|
| 99. NTTO has not released any I-94 or I-92 data that is not aggregated data. *Huether Decl. at ¶9.* | |
| 100. NTTO personnel do not have access to the data provided by CBP except for the anonymized, aggregated reports of the data provided in the Standardized Reports. *Powers Decl. at ¶18.* | |
| 101. NTTO personnel have neither read nor relied upon the database entries provided by CBP and stored in the databases. *Powers Decl. at ¶18.* | |
| 102. ITA does not store the I-94 database entries in an operational data system on ITA servers. *Powers Decl. at ¶19.* | |

**The Database Entries Contain Confidential Information**

| | |
|---|---|
| 103. Each of the I-94 database entries contains personally identifiable information (PII). *Huether Decl. at ¶15.* | |
| 104. This PII is not reasonably inextricably intertwined with the remainder of the database entry. *Huether Decl. at ¶15; J. Hall Decl. at ¶ 15.* | |

| | |
|---|---|
| 105. Each of the I-92 database entries contains commercial business information. *Huether Decl. at ¶16.* | |
| 106. This commercial information is inextricably intertwined with the remainder of the database entry. *Huether Decl. at ¶16.* | |

Dated: February 19, 2021

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:  /s/ *April Denise Seabrook*
APRIL DENISE SEABROOK
D.C. Bar # 993730
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2525
April.Seabrook@usdoj.gov

*COUNSEL FOR DEFENDANT*