# Exhibit H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID YANOFSKY, | |
| PLAINTIFF, | |
| v. | CIV. A. NO. 19-2290 (KBJ) |
| U.S. DEPARTMENT OF COMMERCE, | |
| DEFENDANT. | |

## <u>DECLARATION OF DAVID HUETHER</u>

I, David Huether, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge and belief:

1.      I am the Deputy Director of Research for the National Travel and Tourism Office ("NTTO") of the International Trade Administration ("ITA"), a component of the U.S. Department of Commerce ("DOC", "Commerce", or "the Department"). I have held this position since March 16, 2020.

2.      In this capacity I serve as a senior official for NTTO's travel and tourism research programs. NTTO functions as the U.S. federal tourism office, and is responsible for collecting, analyzing, and disseminating international travel and tourism statistics for the U.S. Travel and Tourism Statistical System, as well as managing, improving, and expanding the system to fully account and report the impact of travel and tourism in the United States. The statistical programs of the U.S. Travel and Tourism Statistical System include the Visitor Arrivals Program ("I-94 Data") and the U.S. International Air Traveler Statistics ("I-92") Program.

3.     My statements in this declaration are based on my personal knowledge, information provided to me by employees under my supervision, information obtained by me, and information contained in the records of ITA.

4.     I am familiar with the February 2016 FOIA request made by David Yanofksy that is the subject of this civil action, as well as the interagency agreements controlling the provision of I-94 and I-92 data to the Department for the Visitor Arrival Program and the U.S. International Air Traveler Statistics Program.

5.     Mr. Yanofsky's FOIA request sought the following records:

> copies of [NTTO's] "Air Arrivals I-94 Annual Datafile" from 2015, 2014, 2013, 2012 and 2011 and . . . copies of [NTTO's] "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" for 2015, 2014, 2013, 2012 and 2011…

## DATA SHARING AGREEMENTS BETWEEN CBP AND NTTO

6.     A Memorandum of Understanding ("MOU") executed between DOC and the U.S. Department of Homeland Security's component-agency U.S. Customs and Border Protection ("CBP") – formally known as the U.S. Immigration and Naturalization Service – provides the parameters under which I-94 Data and I-92 Data was shared by CBP with the Department for the calendar years 2011 through 2015. The MOU became effective on September 9, 2002, and was renewed without modification until it was superseded by a Memorandum of Agreement ("MOA") between NTTO and CBP that became effective on December 3, 2020. A copy of the MOU that was in effect from September 9, 2002, through December 3, 2020, is attached as Exhibit 1 to this declaration.

7.     Section 1.D. of the MOU stipulates that DOC is prohibited from releasing any I-94 or I-92 data provided by CBP except "the number of arrivals into the United States; the total number of travelers using business, pleasure, and student visas; estimates on the number

of individuals arriving by air, land, and sea; and age group data falling under selected categories, including the destination and port-of-entry at the time of arrival." Exh. 1 at pp. 1-2.

8.    Section 1.D. of the MOU also requires that "[n]one of the [I-94 or I-92 data] . . . provide[d] to DOC is to be released in any form identifiable to any individuals" and that DOC can only release I-94 or I-92 data that consists of is "statistical information" that has been "collect[ed] and process[ed]". *Id.* at p. 1.

9.    The data sharing restriction in Section 1.D. of the MOU is properly interpreted as prohibiting disclosure by DOC of any I-92 or I-94 data other than data that has been processed by both anonymizing and aggregating the data records. This prohibition extends to customized reports and data files. No customized reports or data files have been created containing data that has not been anonymized and aggregated.

10.   If DOC were to disclose copies of the I-92 and I-94 database entries that Plaintiff now asserts that he seeks, then CBP would likely terminate the provision of I-94 and I-92 Data to the Department for violation of the data sharing agreements. This would stymy the agency's ability to fulfill its legislative mandate to report upon the impact of travel and tourism in the United States. NTTO is the primary source of international travel statistics in the United States, and the travel statistics that NTTO provides are used by the Bureau of Economic Analysis to calculate the balance of trade for the United States and factored into the calculation of the Gross Domestic Product. Disclosure of the I-92 and I-94 data in response to a FOIA request, if it resulted in a termination of information sharing between CBP and the Department, would harm the nation's economic policy coordination for travel and tourism issues, potentially damaging the nation's travel industry – a significant portion

of the United States economy – and impacting international trade. Thus, disclosure of the information sought by Plaintiff could threaten NTTO's statutory mission to create U.S. employment and economic growth by enhancing the international competitiveness of the U.S. travel and tourism industry and increasing the industry's exports.

11.  For comparison, the current data sharing agreement (effective since December 3, 2020) between CBP and NTTO is reflected in a Memorandum of Agreement (MOA) attached as Exhibit 2.

12.  The MOA shares the MOU's prohibition from disclosing data that has not been processed, but updates procedures and security requirements for transmission, access, and storage of data in light of technological change since 2002. The current MOA prohibits "shar[ing] data other than processed data reports", and further prohibits ITA from retaining CBP data for more than 36 months after it is provided. Exh. 2 at p. 4. CBP has the express right to monitor DOC's compliance with the data sharing and data retention provisions of the MOA. *Id.* at p. 7. CBP also may monitor compliance with security procedures safeguarding the transmission, storage, and access to the data. *Id.* Unauthorized use of the data by NTTO pursuant to the MOA is grounds for immediate and unilateral suspension of further data provision by CBP. *Id.* at p. 8.

13.  Further details regarding the security procedures safeguarding the transmission, storage, and access to the data, evidencing how carefully this sensitive data is protected, may be found in the Interconnection Security Agreements ("ISAs"). Exhibits 3 and 4 are copies of the ISAs covering I-92 Data during the relevant time period. I-94 data was provided on CDs during the relevant time period, and not through an electronic interconnection, and

thus no ISA for I-94 Data is available for that time period. Exhibits 5 and 6 are the most recent ISAs for I-94 and I-92 data.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on this 11th day of February 2021.

*David M. Huether*
_____

David Huether

# Attachment 1

**MEMORANDUM OF UNDERSTANDING BETWEEN
THE U.S. IMMIGRATION AND NATURALIZATION SERVICE
AND THE U.S. DEPARTMENT OF COMMERCE**

The U.S. Immigration and Naturalization Service ("INS") and the U.S. Department of Commerce ("DOC"), in order to advance the goals of the U.S. Government with respect to accounting for the arrival of non-immigrants in the United States, hereby enter into the following Memorandum of Understanding ("MOU").

This agreement addresses the sharing of Form I-94 data and the Form I-92 data each of which is collected by the INS and used by the DOC for the express purposes as set forth herein.

1.    **Background**

A.  The DOC has used the Form I-94 arrival data since 1960 and Form I-92 data since 1975 for the express purpose of calculating monthly, quarterly, and annual calendar year total, world region, and country specific international travel figures and to calculate the monthly and quarterly estimates of international travel and passenger fare exports used in the balance of trade for the United States and ultimately is factored into the calculation of the Gross Domestic Product (GDP). The data is also used to develop estimates for travel and passenger fare imports for the United States to allow for the balance of trade to be determined for travel and passenger fares for the United States and selected world regions and countries.   These data serve as the official U.S. government source of international travel estimates on travel to and from the United States.  They serve as the basis for reporting the number and impact of international non-resident arrivals visiting the United States and the number of U.S. citizens traveling abroad.  These two databases are the only U.S. government source for this information.  DOC currently receives the monthly data three months after the reported month to allow for late records to be processed so that DOC has a complete reporting of arrivals to the United States.

B.  The DOC and travel industry heavily depend upon the Form I-92 and Form I-94 data to define the size and scope of the international travel market to and from the United States. The data is critical to define the size and scope of international travel to and from the United States.

C.  The Form I-94 data is also used in DOC's In-Flight Survey program to weight the survey data to the total travel population.  It is also used to develop a forecast for arrivals to the United States.  The arrival data is used in determining the economic impact of international travel on state economies.  The arrival data also comprises part of the Travel and Tourism Satellite Accounts Program.  None of these programs could exist if DOC did not obtain the arrival data from the INS.

D.  None of the information INS provides to DOC is to be released in any form identifiable to any individuals.  Upon collection and processing of statistical information, the DOC releases the following types of information: the number of

arrivals into the United States; the total number of travelers using business, pleasure, and student visas; estimates on the number of individuals arriving by air, land, and sea; and age group data falling under selected categories, including the destination and port-of-entry at the time of arrival. No other data is ever released.

## 2. Authority

A. DOC is mandated to provide arrival and departure data to the United States government and private industry pursuant to the National Tourism Organization Act of 1996, Public Law 104-288 - October 11, 1996. In addition the Bureau of Economic Analysis (BEA) uses Form I-92 and I-94 data for its use in calculating the travel and passenger fare exports and imports for the country. BEA is authorized to collect this information pursuant to section 8 of the Bretton Woods Agreements Act of 1945 (Public Law 79-171 as implemented by Executive Order Number 10033).

B. Pursuant to 5 U.S.C. 552a(b)(5), the INS is authorized to disclose this data to DOC upon advanced adequate written assurances that the data will be used solely as a statistical research or reporting record, and that the record will be transferred in a form that is not individually identifiable.

## 3. Purpose

The purpose of this MOU is to provide such written notice and to provide a mechanism for the sharing of information contained in the INS systems of records known as Non-Immigrant Information Systems (NIIS) and Form I-92 data with DOC for the express and limited purposes identified herein.

## 4. Responsibilities

A. To advance the purposes of this MOU, INS shall:

1. Provide daily data files on a monthly basis collected in the NIIS system to the DOC upon the establishment of a technical process that ensures secure and appropriate data transfer. Both arrivals and departure records will be delivered in a similar manner. Data element to be transferred are as follows:
   - COUNTRY-OF-CITIZENSHIP
   - COUNTRY-OF-RESIDENCE
   - VISA-ISSUING-POST-CODE
   - PORT-OF-ENTRY-CODE
   - DATE-OF-ADMISSION
   - MODE-OF-TRAVEL
   - CLASS-OF-ADMISSION
   - OCCUPATION

- INTENDED-STATE-ADDRESS
- ENTRY-DEPARTURE-STATUS-A
- ENTRY-DEPARTURE-STATUS-D
- ENTRY-DEPARTURE-STATUS-U
- DATE-OF-DEPARTURE
- PORT-OF-DEPARTURE
- YEAR-OF-BIRTH
- DATE-ADMITTED-TO
- GENDER
- ARRIVAL-CARRIER
- ARRIVAL-ADMISSION-NUMBER
- ARRIVAL-FLIGHT-NUMBER

2. Transmit Form I-92 data DOC on a monthly basis;
3. Work with DOC to develop technical details to transfer the data securely;
4. Keep DOC informed, through the INS Office of Statistics, of any intended changes to the program, including table codes;
5. Work with DOC to enhance data quality;
6. Begin extracting and transferring data upon notification that we intend to continue this MOU each year.

B. To advance the purposes of this MOU, DOC shall:

1. Use this information solely as a statistical research or reporting tool, and accept transfer of this record in a form that is not individually identifiable to any particular persons;
2. Provide the monthly Official Airlines Guide data to INS' contractor for the Form I-92 to be used for the processing of the I-92;
3. Coordinate with INS on the data quality issues by reporting unknown airport and country codes, stateless records, duplicate records, or other inconsistencies found in either data base as we have been doing since 1996;
4. Implement this effort in strict accordance with INS requirements for audit, security, and accountability;
5. Serve on any inter-agency committee related to the two databases and provide input on how to improve the data and use of the information by government and private industry;
6. Support INS when it needs to obtain an OMB clearance with either form;

**5.     Policy Coordination**

The INS and DOC shall meet bi-annually to review the MOU and address any need to amend the MOU.  In addition, the meeting will be used to discuss any other issues related to the program.

**6.     Information, Reports, and Records**

A. Each party shall protect sensitive information received from the other to no less a degree than that afforded to its own sensitive information.  Sensitive information for this purpose, includes, but is not limited to, information that may reveal confidential source identity, investigative techniques or methods, or that might impede the conduct of an investigation if publicly revealed.  Nothing in this agreement shall be construed to require the disclosure of information, which, in either party's judgment, might compromise, classified or sensitive sources, methods, or techniques or that the party processing the information does not have permission or authority to share.  Information provided by one party to the other pursuant to this MOU may not be used in any legal proceedings without the prior authorization of the providing party

B. Records and reports made in furtherance of this MOU shall be prepared and classified in accordance with the record-keeping requirements and procedures of the originating party and the identity of the originating party shall be clearly indicated on each such record or report.

**7.     Costs**

Each party shall be responsible for costs they incur as a result of this MOU.

**8.     Points of Contact**

A. INS point of contact for questions concerning this MOU is the INS Assistant Commissioner for Inspections, phone 202-514-3019.

B. The DOC point of contact for questions concerning this MOU is Ron Erdmann in the DOC Office of Travel and Tourism Industries, phone 202-486-4554.

**9.     Non-Parties**

This MOU is strictly a matter between, and governs the conduct of, the parties.  It creates no rights, benefits, privileges, or causes of action for, or on behalf of, any individual or other entity.

**10. Modifications and Termination**

A. Changes to this MOU may be proposed at any time by either party and will become effective when agreed upon in writing by both parties.

B.  This MOU may be terminated by either party upon 30 days written notice.

## 11.  Effective Date

This MOU shall be effective upon signature by both parties and shall terminate, unless extended by virtue of written agreement, five years from the effective date.


_____          _____
Peter Michael Becraft                                    Linda M. Conlin
Deputy Commissioner                                   Assistant Secretary for Trade Development
Immigration and Naturalization Service       Department of Commerce


_____              _____
Date                                                              Date

# Attachment 2

## MEMORANDUM OF AGREEMENT

### Between

### U.S. Department of Homeland Security,
### U.S. Customs and Border Protection

### and

### U.S. Department of Commerce,
### International Trade Administration,
### National Travel and Tourism Office

### Regarding Sharing of Alien Arrival and Departure Data

## I.    PARTICIPANTS

The U.S. Department of Homeland Security (DHS), through U.S. Customs and Border Protection (CBP), and the U.S. Department of Commerce (DOC), through the International Trade Administration (ITA) National Travel and Tourism Office (NTTO), are collectively the "Participants."

## II.   PURPOSE

The Participants intend to enter into a data exchange whereby CBP will share with the NTTO certain alien arrival and departure data derived from its Arrival and Departure Information System (ADIS), which contains information from the Advance Passenger Information System (APIS) previously captured from Form I-92, Aircraft/Vessel Report information.

## III.  BACKGROUND

The NTTO serves as the national tourism office for the United States.  It provides the primary source of international travel statistics in the United States and provides policy coordination on travel and tourism issues and industry relations with the travel industry. The NTTO has used I-94 arrival data since 1960 to calculate monthly, quarterly, and annual calendar year total, world region, and country-specific international arrivals.  This information is also used to calculate the monthly and quarterly estimates of international travel and passenger fare exports used in the balance of trade for the United States and are ultimately factored into the calculation of the Gross Domestic Product.  This data, which serves as the official U.S. Government source of estimates on international travel to the United States, has become the basis for reporting the number and impact of international non-resident arrivals visiting the United States.

The DOC and travel industry heavily depend upon the travel data obtained from CBP to define the size and scope of the international travel market to and from the United States. Arrival and departure data are also used in DOC's Survey of International Air Travelers (SIAT) (formerly known as the In-Flight Survey program) to weight the survey data to the total travel population. Arrival data is also used to develop a forecast for arrivals to the United States. The arrival data is used in determining the economic impact of international travel on state economies.

Although the DOC and CBP have historically exchanged I-94 data (a sharing arrangement originated with the former Immigration and Naturalization Service, part of which was reorganized under DHS/CBP in 2003 in accordance with the Homeland Security Act), the authorities and technologies that supported such sharing have changed. As such, CBP, rather than sharing I-94 data from the TECS database, will share data from ADIS, a person-centric data aggregator that will electronically provide DOC with accurate and up-to-date information regarding international travel to and from the United States. I-94 data shared by CBP via ADIS will contain limited PII for non-U.S. citizen travelers in the form of the I-94 number and the Person ID.

CBP and DOC also intend to share Advance Passenger Information System (APIS) data from ADIS, previously captured from CBP Form I-92, Aircraft/Vessel Report, as part of the U.S. International Air Travel Statistics Program. This program is a joint effort between CBP and the NTTO to provide international air traffic statistics data to the government and the travel industry. NTTO requires the use of data derived from the I-92, Aircraft/Vessel Report as an expeditious and cost-effective means of collecting information and statistics regarding travel and tourism. The APIS/I-92 is a source of data regarding international flights to and from the U.S., including flights with less than 10 passengers. The data is generated by commercial airlines and private planes discharging passengers in the United States. The APIS/I-92 information provides total passenger counts broken down by U.S. citizen, Canadian, and other alien totals and does not contain any Personally Identifiable information (PII).

## IV.   GOVERNANCE/AUTHORITY

Pursuant to 22 U.S.C. §§ 2122, 2123a(a)(3), the NTTO is authorized to collect and publish comprehensive international travel and tourism statistics and to expand and continue its research and development activities including developing estimates of international travel exports (expenditures) on a State-by-State basis.

Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a(b)(3)) and Department of Homeland Security/U.S. Customs and Border Protection-021 Arrival and Departure Information System, 80 Fed. Reg. 72081 (Nov. 18, 2015),[1] CBP is authorized to disclose this data to DOC, including under routine use L, which permits disclosure to federal, state, and local government agencies for any legally mandated purpose in accordance with an authorizing

---

[1] *See:* DHS/CBP-021 Arrival and Departure Information System (ADIS), 80 FR 72081, (November 18, 2015), *available at* https://www.govinfo.gov/content/pkg/FR-2015-11-18/html/2015-29445.htm.

statute and when an approved Memorandum of Agreement (MOA) or Computer Matching Agreement is in place between DHS and the agency.

## V.   DEFINITIONS

A.   <u>Information Originating from Foreign Partners</u>:  Information obtained by the U.S. Government through sharing arrangements with foreign governments.

B.   <u>Personally Identifiable Information (PII)</u>:  Any information that permits the identity of an individual to be directly or indirectly inferred, including any information which is linked or linkable to that individual.

C.   <u>Information Protected by 8 C.F.R. § 208</u>:  Any information contained in or pertaining to any asylum or refugee application, records pertaining to any credible fear determination conducted pursuant to 8 C.F.R. § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to 8 C.F.R. § 208.31.  This includes information that indicate that a specific alien has applied for asylum or refugee status, received a credible fear or reasonable fear interview, or received a credible fear or reasonable fear interview, such as Class of Admission and Document Type.

D.   <u>Information Protected by 8 C.F.R. § 244.16</u>: Any information contained in an application for Temporary Protected Status under 8 U.S.C. § 1254, which includes supporting documents.  This includes any information that indicates that a specific alien has applied for or is a beneficiary of Temporary Protected Status, such as Class of Admission and Document Type.  However, this does not include information independently obtained by CBP not from the TPS application, provided it does not identify that the alien has applied for or is a beneficiary of Temporary Protected Status.

E.   <u>Section 1367 Information</u>:  Any information relating to individuals protected from disclosure under 8 U.S.C. § 1367, which includes information related to aliens who are seeking or have been approved for immigrant status as battered spouses, children and parents under provisions of the Violence Against Women Act (VAWA), as victims of a severe form of human trafficking who generally are cooperating with law enforcement authorities, or as aliens who have suffered substantial physical or mental abuse and are cooperating with law enforcement authorities. This definition includes records or other information that do not specifically identify the individual as an applicant or beneficiary of the T Visa, U Visa, or VAWA protections. Unlike information protected by 8 C.F.R. §§ 208.3, 244.16, as defined above, this includes any information pertaining to the alien.

## VI.   RESPONSIBILITIES

A.   CBP's RESPONSIBILITIES

1.    CBP will electronically send specified ADIS data (APIS and I-94, see paragraph B below) to the NTTO through an ADIS-R data sharing application in order to create daily data feeds (with the ability to aggregate the data to a monthly file) with any incremental changes since the previous dataset. The data files will contain tables of ADIS travel, adjustment of status, and informational events. The incremental changes are derived from the records processed from ADIS to load ADIS-R daily and are based on the Created and Last Updated Dates in the individual records. Each load captures data from the end of the previous load to the hour before the start of the current load.

2.    CBP will compress and encrypt specified ADIS data (APIS and I-94) from ADIS-R via a secure digital database within a CBP server.

3.    CBP will send an email to the NTTO and to ITA/Technology, Services, and Innovation (TSI) when the monthly file is ready for pickup.

B.    NTTO's RESPONSIBILITIES

1.    ITA/TSI will retrieve the monthly file from the CBP server on behalf of NTTO and decrypt the file with a password provided by CBP and then decompress the file for its use. A file containing the previous month's travel records will be generated monthly for retrieval by the NTTO.

2.    ITA/TSI and NTTO will retain CBP data provided by CBP under this MOA no longer than 36 months beyond the date of transfer. NTTO will store CBP data as a file on its network, but the data is not contained in an operational data system.

NTTO shares the monthly data with a contractor for data processing). The contractor stores the original variables and the created variables on the contractor's private computer with access by only authorized contractor personnel.

NTTO will not share data other than processed data reports according to NTTO business rules.

PII is to be destroyed in the most secure manner possible to make it irretrievable, not simply erased from databases, consistent with the Participants' respective policies and laws. NTTO will provide CBP with an attestation of destruction within 10 calendar days of the deletion of the data.

## VII.   DATA ELEMENTS

Refer to the Interface Control Document (ICD) between ADIS-R and NTTO (dated 20 Jul 2020) for the specific data elements and information that will be transferred to NTTO via the feeds referenced above.

A.     EXCLUSIONS

CBP will not share Information Protected by 8 C.F.R. § 208, Information Protected by 8 C.F.R. § 244.16, or any Section 1367 Information, each of which is defined in this MOA.

CBP will also not share any information about United States citizens.

CBP will not share information that originates from foreign partners or third parties, where governing data sharing agreements or arrangements do not authorize sharing of such information for such purposes.

## VIII.  SECURITY PROCEDURES AND PRIVACY

NTTO will comply with the requirements of the Federal Information Security Management Act of 2002 (FISMA), as amended, 44 U.S.C. §§ 3551-3559; related Office of Management and Budget (OMB) circulars and memoranda, such as Circular A-130, Management of Federal Information Resources (Nov. 28, 2000, as revised), and Memorandum M-06-16, Protection of Sensitive Agency Information (June 23, 2006); National Institute of Standards and Technology (NIST) directives; the Federal Acquisition Regulations; and any applicable amendments to any of these requirements published after the effective date of this MOA.  These laws, directives, and regulations include requirements for safeguarding federal information systems and PII used in federal agency business processes, as well as related reporting requirements.

FISMA requirements apply to all federal contractors, organizations, or entities that possess or use Federal information, or that operate, use, or have access to federal information systems on behalf of an agency.  Both agencies are responsible for oversight and compliance of their respective contractors and agents.

A.     INCIDENT REPORTING

If NTTO experiences an incident involving the loss or breach of data (electronic or paper) provided by CBP under the terms of this MOA, that NTTO will follow the incident reporting guidelines issued by OMB. In the event of a reportable incident under OMB guidance involving PII, NTTO is responsible for following its established procedures, including notification to the proper organizations (e.g., United States Computer Emergency Readiness Team, the CBP Privacy Office, and the CBP Information System Security point of contact).

B.   BREACH NOTIFICATION

To provide further safeguards for the privacy, security, confidentiality, integrity, and availability of the information systems and the information they store, process, and transmit, NTTO is expected to provide notice to CBP as follows:

By notifying CBP within one hour by telephone and email, or as soon as practicable, in the event of any situation that disrupts the intended transfer of information between them; and

By following breach notification policies and related procedures issued by OMB, NIST, and the Participant's respective department and component. If through coordination, the Participants determines that the risk of harm requires notification to affected individuals or other remedies, that Participant where the breach occurred will carry out these remedies without cost to the other agency.

C.   ADMINISTRATIVE SAFEGUARDS

The Participants will restrict access to and use of the data exchanged to authorized employees and officials of NTTO who need it to perform their official duties in connection with the uses of the data authorized in this MOA. Further, the NTTO will advise all personnel who have access to the data of the confidential nature of the data, the safeguards required to protect the data, and the civil and criminal sanctions for noncompliance contained in the applicable federal laws.

D.    PHYSICAL SAFEGUARDS

The Participants will take all necessary precautions to protect the data during transmission, to include encryption with the password transmitted separately.  The Participants will store the data in an area that is physically and technologically secure from access by unauthorized persons at all times.  NTTO shares monthly data with a contractor for data processing [the contractor stores the original variables and the created variables on the contractor's private computer with access by only authorized contractor personnel].  The Participants will establish appropriate safeguards for such data, as determined by a risk-based assessment of the circumstances involved.

E.    TECHNICAL SAFEGUARDS

The Participants will process data under the immediate supervision and control of authorized personnel in a manner that will protect the confidentiality of the data, so that unauthorized persons cannot retrieve any data by computer, remote terminal, or other means.  Systems personnel must enter personal identification numbers when accessing data on the agencies' systems.  The Participants will strictly limit authorization to those electronic data areas necessary for the authorized analyst to perform his or her official duties.

F.    APPLICATION OF POLICY AND PROCEDURES

Each Participant will adopt policies and procedures to ensure that it uses the information contained in its respective records or obtained from each other solely as provided in this MOA.  The Participants will comply with these guidelines and any subsequent revisions.

G.    ONSITE INSPECTION

CBP has the right to monitor DOC's compliance with legal requirements and the terms of this MOA.  CBP has the right to make onsite inspections of DOC for auditing compliance under this MOA, if necessary, for the duration of this MOA.  Such onsite inspections should be coordinated by both Participants in advance.

## IX.    COSTS

Each Participant will pay its own costs for all activities conducted under this MOA.  This MOA does not obligate funds or create a financial obligation between the Participants.  All activities contemplated by this MOA are subject to the availability of funds and other necessary resources.

## X.     EFFECTIVE DATE

This MOA will take effect upon signature by both Participants.

## XI.    DURATION

The terms of this MOA will remain in effect for five (5) years from the date of last signature.  The Parties shall jointly review the MOA periodically to evaluate its effectiveness and determine if cooperation under the MOA should be continued, or if written amendments or modifications may be appropriate.

## XII.   MODIFICATION

The Participants may modify this MOA at any time by a written modification agreed upon by both Participants and approved by the designated official of each Participant.

## XIII.  TERMINATION

Each Participants may terminate this MOA by written, mutual consent of the parties.  In the event of a termination, data received by a Participant under this MOA shall continue to be treated in a manner consistent with its terms.

Either Participant may immediately and unilaterally terminate this MOA if it has determined that there has been: 1) an unauthorized use of the information by the other Participant, or 2) a violation of, or failure to follow, the terms of this MOA.  Either Participant may immediately and unilaterally suspend activities under this MOA if that Participant suspects that the other Participant breached the terms for security of data until such time as the suspending Participant makes a definitive determination regarding a breach.  If either Participant unilaterally and immediately terminates or suspends this MOA, it will notify the other Participant in writing within three business days, including the basis for that action.

## XIV.  SEVERABILITY

Nothing in this MOA is intended to conflict with current law or regulation.  If a term of this MOA is inconsistent with such authority, then that term shall be invalid to the extent of the inconsistency, but the remaining terms and conditions of the MOA shall remain in full force and effect.

## XV.   NO PRIVATE RIGHT OR CAUSE OF ACTION

This MOA sets forth the intentions of the undersigned Participants. It is not intended to create or confer any right or benefit of any kind, either substantive or procedural that may be enforceable by any third-party against the Participants or the officers, employees, agents, or associated personnel thereof.    Nothing in this MOA is intended to restrict the authority of any Participant to act as provided by law, statutes, or regulation, or to restrict

any Participant from administering or enforcing any laws within its authority or jurisdiction.

## XVI.  DISCLAIMER

This MOA does not obligate funds or create a financial obligation between the Participants. All activities contemplated by this MOA are subject to the availability of appropriated funds and other necessary resources to the Participants. This MOA pertains to sharing of information only, and does not authorize sharing of personnel.

All information furnished under this MOA will be subject to the limitations and qualifications, if any, transmitted with such information.

## XVII.  ENTIRE AGREEMENT

This MOA constitutes the entire agreement of the Participants with respect to this subject matter.  There have been no representations, warranties, or promises made outside of this MOA.  This MOA will take precedence over any other document that may be in conflict with it.

## XVIII. SIGNATURES

The signatories below warrant and represent that they have the competent authority on behalf of their respective agencies to enter into the obligations set forth in this MOA.

For the U.S. Department of Commerce, National Travel and Tourism Office

For the U.S. Department of Homeland Security, U.S. Customs and Border Protection

Philip Lovas
Deputy Assistant Secretary for Travel and Tourism
Industry & Analysis
International Trade Administration

Adele Fasano
Executive Director - Planning, Program Analysis, and Evaluation
Office of Field Operations
Customs and Border Protection

12/3/20
Date

9/21/20
Date

# Attachment 3

FOR OFFICIAL USE ONLY



# Interconnection Security Agreement
### between the
## Department of Homeland Security (DHS)
## U.S. Customs and Border Protection (CBP)

### and the

## US. Department of Commerce
## International Trade Administration (ITA)

## TECS and TECS Modernization
## and
## I-92 System

Version 1.0

## CBP # M-ISA-2010-08-0031

## November 17, 2010

**WARNING:** This document is FOR OFFICIAL USE ONLY (FOUO).  It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552).  It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of the CBP and the ITA Disclosure Offices.

B-1

FOR OFFICIAL USE ONLY

DOCUMENT CHANGE HISTORY

| Version | Date | Description |
|---------|------|-------------|
| 0.1 | 04/23/2010 | 4/16/2010 downloaded DHS 4300A, attachment N, ISA template and initiated a partial ISA draft containing much of CBP's data – D. Rowe |
| 0.2 | 07/19/2010 | Added ITA / I-92 System technical information, policies and Contact information - DOC / ITA |
| 0.3 | 08/14/2010 | Edits and minor changes throughout, added new diagram, checked circuit description with Networks, added verbage on security layers – D. Rowe |
| 0.4 | 08/20/2010 | Incorporated comments, edits, and formating enhancements from CBP/PSPO, especially those from Zach Paradise, TECS & TECS Mod AISSO, who took the time to enhance the technical details and formated the document – D Rowe |
| 0.45 | 09/29/2010 | Received STP CA Peer Review comments – D Rowe |
| 0.5 | 10/14/2010 | Made changes to document and responded to CA comments, Resubmitted to STP CA – D Rowe |
| 0.6 | 10/21/2010 | Disclosure statement regarding use of CBP 1400-05D added and comments eliminated – D Rowe |
| 0.7 | 10/26/2010 | ISA sent to DOC/ITA for signature – D Rowe |
| 0.8 | 11/04/2010 | DOC/ITA Authorizing Official signed ISA – D Rowe |
| 1.0 | 11/17/2010 | CBP / ITA ISA signed and distributed |
| | | |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## CONTENTS

| 1.0 | **PURPOSE** | ......................................................................................... | **2** |
| | 1.1 | Security Network Connectivity Policy ...................................... | 2 |
| | 1.2 | ISA Requirements for Types of System Interconnections .................. | 3 |
| | 1.3 | Scope .............................................................................. | 4 |
| | 1.4 | Point of Contact (POC) ....................................................... | 4 |
| | 1.5 | References ........................................................................ | 5 |
| **2.0** | **INTERCONNECTION JUSTIFICATION** | ........................................ | **6** |
| **3.0** | **SECURITY CONSIDERATIONS** | .................................................. | **6** |
| | 3.1 | General Information/Data Description ...................................... | 7 |
| | 3.2 | ISA Requirements Within and Across Organizational Boundaries ........ | 7 |
| | 3.3 | Physical Security and Environmental Controls ........................... | 7 |
| | 3.4 | Data Sensitivity ................................................................ | 8 |
| | 3.5 | Services Offered ................................................................ | 8 |
| | 3.6 | Period of Operation ........................................................... | 8 |
| | 3.7 | User Community ................................................................ | 8 |
| | 3.8 | Information Exchange Security .............................................. | 9 |
| | 3.9 | Trusted Behavior / Rules of Behavior ..................................... | 10 |
| | 3.10 | Formal Security Policy ....................................................... | 11 |
| | 3.11 | Incident Reporting ............................................................ | 11 |
| | 3.12 | System Monitoring ............................................................ | 12 |
| | 3.13 | Security Audit Trail Responsibility ....................................... | 13 |
| | 3.14 | Specific Equipment/Service Restrictions .................................. | 13 |
| | 3.15 | Dial-Up/Remote Connectivity ............................................. | 14 |
| | 3.16 | Training and Awareness ...................................................... | 14 |
| | 3.17 | Security Documentation ...................................................... | 14 |
| | 3.18 | Change Control ................................................................ | 15 |
| **4.0** | **TOPOLOGICAL DRAWING** | ..................................................... | **15** |
| **5.0** | **SIGNATORY AUTHORITY** | ....................................................... | **16** |
| **6.0** | **ATTACHMENTS** | ..................................................................... | **1** |
| | 6.1 | Attachment A: CBP and ITA Ports, Protocols and Services ............. | 1 |
| | 6.2 | Attachment B: Topological Diagram of CBP and ITA Interconnections .... | 2 |

1

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 1.0    PURPOSE

This Interconnection Security Agreement (ISA) is required by Federal and Department of Homeland Security (DHS) policy and establishes individual and organizational security responsibilities for the protection and handling of unclassified summary and statistical information between the **U.S. Customs and Border Protection (CBP)** and the **International Trade Administration (ITA),** regarding airline passengers arriving and departing the United States.  Any specific requirements of both signatory organizations are also included.

## 1.1    Security Network Connectivity Policy

The DHS Sensitive Systems Policy Directive 4300A establishes DHS policy for network connectivity.  The DHS Sensitive Systems Handbook 4300A establishes information security procedures for the DHS components.  The CBP Information Systems Security Policies and Procedures Handbook HB 1400-05D, Version 1.1, adheres to the DHS policies and establishes CBP specific information security policies.

The section on network connectivity (Section 5.4.3) states that CBP shall:

a.   Components shall ensure that appropriate identification and authentication controls, audit logging, and access controls are implemented on every network element.

b.   Interconnections between DHS and non-DHS systems shall be established only through controlled interfaces and via approved service providers. The controlled interfaces shall be accredited at the highest security level of information on the network. Connections with other Federal agencies shall be documented based on interagency agreements, memoranda of understanding, service level agreements or interconnection security agreements.

c.   Components shall document all interconnections to the DHS OneNet with an Interconnection Security Agreement (ISA), signed by the OneNet AO and by each applicable AO. Additional information regarding ISAs is published in Attachment N, Preparation of Interconnection Security Agreements, to the DHS 4300A Sensitive Systems Handbook.

d.   ISAs shall be reissued every three (3) years or whenever any significant changes have been made to any of the interconnected systems.

e.   ISAs shall be reviewed and updated as needed as a part of the annual FISMA self-assessment.

f.   Components may complete a master ISA, (which includes all transitioning systems) as part of their initial OneNet transition. After transition, each additional system or GSS shall be required to have a separate ISA. Interconnections between DHS Components (not including DHS OneNet) shall require an ISA whenever there is a difference in the security categorizations for confidentiality, integrity, and availability between the systems or when the systems do not share the same security policies. (In this context,

2

FOR OFFICIAL USE ONLY

'security policies' refers to the set of rules that controls a system's working environment and not to DHS information security policy.) ISAs shall be signed by each applicable AO.

g.  Components shall document interconnections between their own and external (Non-DHS) networks with an ISA for each connection.

h.  The DHS CIO shall approve all interconnections between DHS enterprise-level information systems and non-DHS information systems. The DHS CIO shall ensure that connections with other Federal Government Agencies are properly documented. A single ISA may be used for multiple connections provided that the security accreditation is the same for all connections covered by that ISA.

i.  The Department and Components shall implement Trust Zones through Policy Enforcement Points (PEP), as defined in the DHS Security Architecture (Note: PEP is not fully deployed at CBP).

j.  DHS OneNet shall provide secure Name/Address resolution service. DNSSEC has been designated as the DHS service solution (Note: PEP is not fully deployed at CBP).

k.  All DHS systems connected to OneNet and operating at moderate or high level shall utilize secure Name/Address resolution service provided by DHS OneNet.

l.  The appropriate CCB shall ensure that documentation associated with an approved change to an information system is updated to reflect the appropriate baseline. DHS systems that interface with OneNet shall also be subject to the OneNet CCB.

m.  Interconnections between two accredited DHS systems do not require an ISA if the interface characteristics, security requirements, nature of information communicated and monitoring procedures for verifying enforcement of security requirements are accounted for in the SSPs or are described in another formal document, such as an SLA or contract, and the risks have been assessed and accepted by all involved AOs.

n.  Granting the ability to log into one DHS system through another DHS system (such as through a OneNet trust) does not require an ISA, when the requirements from Section 5.4.3.m are met.

## 1.2   ISA Requirements for Types of System Interconnections

System interconnections may be characterized as either direct or networked. Direct connections are single purpose point-to-point connections that support only the two connected systems. Directly connected systems do not rely on another network for their connectivity or security and are physically and electronically isolated from other networks and systems. Networked systems connect via an intervening network that exists as a general support system, not a single-purpose connection. Systems that are connected via an encrypted tunnel, whether on HSDN or any other network, are considered networked systems.

For networked U.S. Government systems, the ISA must include the AO of the network as well as the AOs of the applicable systems. The CBP/ITA connection is characterized as a networked system.

FOR OFFICIAL USE ONLY

## 1.3    Scope

This interconnection security agreement addresses the interconnection of the **CBP's TECS** and **TECS Modernization (TECS Mod)** systems and the **ITA's I-92** system.  Additionally, the ISA covers application, administrative, maintenance, testing, and/or control data traversing the networks.

## 1.4    Point of Contact (POC)

For all issues associated with this agreement, the established points of contact are as follows:

| CBP | ITA |
|---|---|
| Authorizing Official (AO):  Ken Ritchhart | AO:  Renee Macklin |
| System Owner: TECS: Valerie Isbell  System Owner: TECS Mod: Ackie Jones | System Owner:  Richard Champley |
| Information Systems Security Officer (ISSO): Ingrid Murray  Alternate ISSO:  Greg Crumpton | ISSO:  Tameka Wray |
| CISO: John M. Buckley | CISO: Paul Murray |
| Program Manager: Michelle Nelson | Program Manager: Tomeka Wray |

## Contact Information for CBP POCs:

| Name | Title | Phone | Email |
|---|---|---|---|
| Ken Ritchhart | Assistant Commissioner, AO | ███████ | ████████@cbp.dhs.gov |
| Valerie Isbell | Executive Director, PSPO | ███████ | ████████@dhs.gov |
| Ackie Jones | System Owner, TECS Mod | ███████ | ████████@cbp.dhs.gov |
| Michelle Nelson | Program Manger (I-92) | ███████ | ████████@cbp.dhs.gov |
| John M. Buckley | Chief Information Security Officer (CISO) | ███████ | ████████@cbp.dhs.gov |
| Ingrid Murray | ISSO | ███████ | ████████@cbp.dhs.gov |

4

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| Name | Title | Phone | Email |
|------|-------|-------|-------|
| Greg Crumpton | AISSO | ███████ | ████████@cbp.dhs.gov |
| Zach Paradise | AISSO | ███████ | ████████@associates.dhs.gov |

## Contact Information for ITA POCs:

| Name | Title | Phone | Email |
|------|-------|-------|-------|
| Renee Macklin | Chief Information Officer, AO | (202) 482-3801 | Renee.Macklin@trade.gov |
| Tomeka Wray | Program Manger (I-92) | (202) 482-1961 | Tomeka.Wray@trade.gov |
| Paul Murray | CISO | (202) 482-1961 | Paul.Murray@trade.gov |
| Tomeka Wray | ISSO | (202) 482-3181 | Tomeka.Wray@trade.gov |

## 1.5    References

NIST Special Publication (SP) 800-47, Security Guide for Interconnecting Information Technology Systems, provides guidance in preparing and establishing connectivity between networks. SP 800-47 specifies guidance for establishing network ISAs. The key points are discussed in this ISA. Consult the full document for additional information and examples of ISAs and MOUs.

NIST SP 800-53, Rev. 3, Recommended Security Controls for Federal Information Systems, provides guidelines for selecting and specifying security controls for information systems supporting the executive agencies of the federal government. The guidelines apply to all components of an information system that process, store, or transmit federal information.

- DHS Sensitive Systems Policy Directive 4300A
- DHS 4300A Sensitive Systems Handbook
- DHS, Type Accreditation, Attachment D to the DHS 4300A Sensitive Systems Handbook
- DHS, Incident Response and Reporting, Attachment F to the DHS 4300A Sensitive Systems Handbook
- DHS, Vulnerability Assessment Program, Attachment O to the DHS 4300A Sensitive Systems Handbook
- NIST SP 800-47, Security Guide for Interconnecting Information Technology Systems, August 2002

5

**FOR OFFICIAL USE ONLY**

- NIST ITL Bulletin,, Secure Interconnections for Information Technology Systems, February 2003

- NIST SP 800-53, Rev. 3, Recommended Security Controls for Federal Information Systems, ("Errata as of May 1, 2010")

- U.S. Customs and Border Protection (CBP) HB 1400-05D *Information Systems Security Policies and Procedures Handbook*, version 1.1

- United States Department of Commerce, *IT Security Program Policy and Minimum Implementation Standards* dated June 30, 2005

- International Trade Administration,  IT Security Program Policies, Version 1.1, dated February 14, 2008

## 2.0    INTERCONNECTION JUSTIFICATION

This Interconnection Security Agreement (ISA) involves the following organizations and applications or systems:

| AGENCY | SYSTEM |
|--------|--------|
| CBP | TECS (Official Name, Not an Acronym) |
| CBP | TECS Modernization (TECS Mod) |
| ITA | I-92 |

The requirements for interconnection between the two systems is for the express purpose of exchanging electronic data between the **CBP systems TECS and TECS Mod** owned and operated by **U.S. Customs and Border Protection (CBP)** and **U.S. Department of Commerce, International Trade Administration**.  ITA requires the use of **CBP's systems – TECS and TECS Mod** data as an expeditious and cost effective means of collecting information and statistics regarding travel and tourism (no Personally Identifiable Information [PII] is exchanged).  The data are generated by commercial airlines and private planes discharging passengers in the United States.  Aircraft crew must complete an I-92 Form declaring the number of passengers on board the aircraft to include crew–presently hardcopy, which must be typed or converted into electronic media.  In the near future the I-92 form will be converted to a machine readable zone (MRZ) card.  Presently the converted data is sent to CBP's Mainframe and stored in the TECS database, and is then transferred to TECS Mod for dissemination to ITA I-92**.**

## 3.0    SECURITY CONSIDERATIONS

This section describes the security mechanisms in place to secure the connections between both systems.  It outlines what the security considerations are and which organization is responsible for each.  In some cases both organizations will share security responsibility.

FOR OFFICIAL USE ONLY

## 3.1    General Information/Data Description

The purpose of the interconnection between the **CBP's systems – TECS and TECS Mod** and the **ITA's I-92 system** is to exchange data collected by commercial airlines and private planes discharging passengers in the United States from the I-92 Form.  CBP converts information on the I-92 Form to electronic media, which is sent to **CBP's TECS** database, where algorithms are run to produce the data and statistics needed by **ITA.**  The derived data is then transferred to **CBP's TECS Mod** to be sent to **ITA I-92.**  The data traversing the networks will include both **CBP** and **ITA's I-92** unclassified, non-sensitive (no financial or privacy data is transmitted over this circuit) statistical and summary information to be combined with other similar data and published on Department of Commerce (DOC's) internet web site containing information on visitors and tourist to the United States.  Examples of the data included, but not all inclusive, are: passengers arriving, or departing code, US Port/foreign port, date, airline code, flight number, total number of passenger (passengers are then grouped into 3 categories (U.S. Citizens, Canadian Citizens, and Other ), and Transport code (commercial or private aircraft).  In addition to the application data, this circuit will also carry operational, administrative, test, and/or control data traversing the networks.

## 3.2    ISA Requirements Within and Across Organizational Boundaries

IT equipment within the boundary of the **CBP systems – TECS and TECS Mod** is owned, operated and maintained by **CBP** contracted services or government employees.  All **CBP** IT equipment interconnected with the **ITA I-92** system will be hardened, at a minimum, per DHS 4300A Sensitive Systems Handbook hardening guidelines or specific waivers to hardening guidelines requested, documented, and approved by appropriate ISSM or CISO.

IT equipment within the boundary of the ITA I-92 is owned, operated and maintained by ITA contracted services or government employees.  All ITA I-92 IT equipment interconnected with the **CBP's systems – TECS and TECS Mod** will be hardened, at a minimum, per DHS 4300A hardening guidelines or per specific waivers to hardening guidelines requested, documented, and approved by appropriate ISSM.

**CBP** and the **ITA** shall protect the data in order to maintain confidentiality, integrity, and availability of the data and information systems. The data and information systems will be protected in accordance with DHS Sensitive Systems Policy Directive 4300A, the NIST SP 800-53 assigned minimum security controls, and FIPS 199 Security Categorization of both systems to ensure that the connection will be protected to the requirements of higher categorized system.

## 3.3    Physical Security and Environmental Controls

Physical Security, at a minimum, will be governed by DHS 4300A Sensitive Systems Policy Section 4.2 "Physical Security," and NIST SP 800-53 controls.  Both organizations' shall provide physical security and system environmental safeguards adequate to provide protection of the system components.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 3.4     Data Sensitivity

The highest level of data that traverses the **CBP's systems – TECS and TECS Mod** is Sensitive but Unclassified (SBU).  This may include, but is not limited to, Sensitive Personally Identifiable Information, For Official Use Only, financial, and/or Law Enforcement Sensitive data.

The highest level of data that traverses the **ITA-I-92** is Sensitive but Unclassified (SBU).  This may include, but is not limited to, Sensitive Personally Identifiable Information, For Official Use Only, financial, and/or Law Enforcement Sensitive data.

The data being transferred between **CBP's systems – TECS and TECS Mod** and **ITA's I-92 system** is statistical, non-sensitive data releasable to the public.

## 3.5     Services Offered

The interconnection between **CBP's systems – TECS and TECS Mod** and the **ITA I-92 system** is supported by Secure Shell (SSH) / Secure File Transfer Protocol (SFTP) and TN3270 (terminal emulation to access mainframe-based applications), using the Advanced Encryption Standard (AES) 256-bit algorithm for encryption.  The **CBP's systems – TECS and TECS Mod** - provide Virtual Private Network (VPN) connectivity services.  The VPN is established between a CBP VPN Internet Protocol Security (IPSEC) Cisco Router and ITA approved firewall.  No email capabilities are provide, but TECS data query services will be available.  The connection is available 24 hours a day, 7 days a week.  The interface must be available daily between the hours of midnight and 3 AM EST for batch transfers, as a minimum, and its availability is contingent upon the availability of the constituent systems (**CBP's systems – TECS and TECS Mod** and **ITA's system I-92**).

Batch data transfers occur via Secure File Transfer Protocol (SFTP) which automatically passes ITA data between the DOC SFTP Server and the CBP NDC mainframe.  Authorized ITA users are allowed to create ad hoc queries into the TECS and TECS Mod databases via a TN3270 connection.  Other mission, administrative, tests, troubleshooting, and network control data are also passed over the connection.

Services and ports that are needed to access the Department systems are listed in Appendix A (Ports, Protocols and Services).

## 3.6     Period of Operation

Both systems are operational 24 hours a day, 7 days a week.  Scheduled downloads from **CBP's systems – TECS and TECS Mod** - are scheduled daily between midnight and 3 AM EST.

## 3.7     User Community

The user community is comprised of **CBP** and **ITA** contract and employees.  Additionally, other users may include employees or contract employees of other DHS Components and other Federal agencies.  All users of both systems will have appropriately adjudicated suitability background investigations and will be US citizens.  If non-US citizen have access to either system, appropriate exceptions will be documented in accordance with DHS Policy.

Under normal conditions, only U.S. Citizens are allowed access to DHS systems and networks, however, at times there is a need to grant access to foreign nationals.  Access for foreign

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

nationals is normally a long-term commitment, and exceptions to appropriate policies are treated separately from standard exceptions and waivers. The approval chain for an exception to the U.S. Citizenship requirement flows through the Component Head, the Office of Security, and the Chief Information Officer. Attachment J to the DHS 4300A Sensitive Systems Handbook provides an electronic form for requesting exceptions to the U.S. Citizenship requirement.

## 3.8   Information Exchange Security

The security of the information being passed on this connection is protected at the mainframe, network and application level. Security services running at CBP NDC and the ITA include border routers and firewalls to restrict network access; antivirus and network software.

Information exchange will be encrypted using AES-256 as the minimum standard encryption algorithm. The interconnection between **CBP's systems – TECS and TECS Mod** and the **ITA I-92 system** provides connectivity services by a Virtual Private Network (VPN) supported by Secure Shell (SSH) / Secure File Transfer Protocol (SFTP) and TN3270 (terminal emulation to access mainframe-based applications), using AES 256-bit encryption.

At CBP, security for ITA data is provided through the CBP mainframe infrastructure, which is protected by CA TopSecret. TopSecret is the Identification & Authentication (I&A) mechanism for all users of the mainframe, not only for those users accessing ITA data. Entry into the CBP systems requires the user to enter their Hash-id, in conjunction with a password. For each user, a User Profile Record (UPR) is established to control the user's access into the system. The UPR determines what functions each user can perform. Once verified, TopSecret grants access only to those resources permitted by a user's profile. Additionally, TopSecret regulates the use of various transactions and system commands for each user. Finally, TopSecret passes the verified user's Hash-id to subsystems so that the system can process the Hash-id as the user's I&A mechanism. Once authenticated, users are granted access to the mainframe Terminal Processor Executive (TPX) Menu. Users that are utilizing TN3270 terminals are authenticated by only the TopSecret security. Users that are utilizing IBM Compatible PC's running the DynaComm Terminal Emulation package must authenticate to their respective Local Area Network (LAN) Domain Servers first. Through the use of TopSecret, security for ITA data can be applied at any desired level. Security granularity can be set to limit access for users and for specific roles that enforce the concepts of least privilege and separation of duties. The comprehensive security features of the TopSecret security mechanism ensure that CBP systems, data, and users are protected from intentional and accidental threats.

**CBP** maintains the following IDS/IPS and firewalls on the **CBP systems – TECS and TECS Mod** :

- IDS/IPD: Checkpoint, Sourcefire (Snort)
- Data Firewalls: CISCO Firewall Service Module

ITA maintains the following IDS/IPS and firewalls on the ITA I-92:

- IDS/IPD: Fidelis Security System

---

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- Data Firewalls: CISCO Firewall Service Module

Both organizations will ensure that virus and spyware detection and eradication capabilities are used where appropriate (e.g., workstations, laptops, servers, etc.) and that adequate system access controls are in place and maintained on all components connected to the systems.

Specific protocols and ports that are needed to support this interconnection are provided in attachment A: Ports and protocols not specifically defined in Attachment A will be approved by DHS firewall change control procedures.

### 3.9    Trusted Behavior / Rules of Behavior

Both **CBP** and **ITA** maintain a 24 hour physically secure facility at each end where access to the buildings are controlled by restricted access and escorted visits only. Each entity is expected to protect the information belonging to the other through the implementation of security controls, as detailed in the following, to further enhance the security posture.

a.  Anti-Virus – The **TECS and TECS Mod** applications resides within the CBP network boundary. CBP users access the **TECS and TECS Mod** applications with workstations and laptops that utilize anti-virus software. ITA will ensure their equipment for the connection with CBP utilizes anti-virus software.

b.  Clearance – All CBP employees and contractors must have favorably adjudicated background investigations on file prior to being given full access to CBP systems and sensitive information. All **ITA** employees and contractors must have security clearances in accordance with ITA policy. All **ITA** users are required to protect the confidentiality of **ITA** data.

c.  Notification – Accounts will be disabled after 45 days of inactivity. **TECS and TECS Mod** applications' government managers would have to be notified in order to re-establish the disabled account.

d.  Passwords – In accordance with DHS guidance users must utilize the policy below for passwords. CBP is responsible for the issuance and control of User IDs and passwords on the **TECS and TECS Mod** applications. Additional guidance is contained in the CBP Information Systems Security Policies and Procedures Handbook HB 1400-05D, Version 1.1. The policy requires that passwords:

  ➢ Be at least eight characters in length;

  ➢ Contain a combination of alphabetic, numeric and special characters;

  ➢ Contain no more than two identical consecutive characters in any position from previous password

  ➢ Under no circumstances, will passwords be shared among users (including CBP and non-CBP personnel); and

  ➢ Will be case sensitive.

The CBP users with access to the I-92 travel data in the **TECS and TECS Mod** applications are expected to protect data in accordance with the policies, standards, and regulations specified for

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

CBP systems. This includes the Privacy Act (5 U.S.C. 552a), Trade Secrets Act (18 U.S. Code 1905), Unauthorized Access Act (18 U.S. Code 2701 & 2710) and the DHS and CBP references contained in Section 1.5 of this document.

The following documents specify specific rules of behavior for each organization:

- **CBP**: The CBP Rules of Behavior are contained in Appendix G of the *CBP Information Systems Security Policies and Procedures Handbook HB 1400-05D*, Version 1.1. In 2010, the Rules of Behavior are presented for electronic signature to users during the mandatory Annual Security Awareness Training.

- **ITA**: The ITA Rules of behavior are contained in Appendix H of the International Trade Administrations IT Security Program Policies; Version 1.1 dated February 14, 2008. In 2010, the Rules of Behavior are presented for electronic signature to users during the mandatory Annual Security Awareness Training.

Access to all shared data by both CBP and ITA will be on a need to know basis and will be enforced by restricting network access and data access via logon protocols and system user roles.

### 3.10   Formal Security Policy

All personnel will comply with existing Federal security and privacy laws and regulations in order to protect CBP and ITA systems and data. Additionally, CBP personnel, in the protection of CBP systems and data, will adhere to DHS and CBP security policies as documented.

DHS and CBP policy documents that govern the protection of the data between the two organizations' systems are:

a. DHS Sensitive Systems Policy Directive 4300A, Version 7.2.1, dated August 9, 2010;

b. *U.S. Customs and Border Protection (CBP) HB 1400-05D Information Systems Security Policies and Procedures Handbook,* version 1.1

c. United States Department of Commerce, *IT Security Program Policy and Minimum Implementation Standards* dated June 30, 2005

d. ITA  IT Security Program Policies, Version 1.1, dated February 14, 2008

### 3.11   Incident Reporting

The organization discovering a security incident will report it in accordance with the organization's incident reporting procedures and ensure that the other connecting organization is notified. Once notification of an incident is reported, a written report must be filed in accordance with DHS 4300A Sensitive Systems Handbook, Appendix F and DOC Incident Reporting Policy. **CBP** shall report security incidents to the DHS Security Operations Center (SOC). DHS SOC contact information is:

| Contact Group | Phone/Email | Email Address | Hours |
|---|---|---|---|
| CSIRC / NOC | (703) 921-6507 | CBP.CSIRC@dhs.gov | Continuous |
| CBP Help Desk | 1-(800)-927-8729 | | Continuous |

11

FOR OFFICIAL USE ONLY

**FOR OFFICIAL USE ONLY**

| Contact Group | Phone/Email | Email Address | Hours |
|---|---|---|---|
| DHS SOC/CSIRC | (703) 921-6505 | dhs.soc@dhs.gov | Continuous |
| DHS 1NET Support | 1-(877)-347-1638 | | Continuous |

**CBP systems – TECS and TECS Mod** personnel will be notified of any security incident that may have an operational or security impact on the **TECS and TECS Mod** resources. Likewise, the **ITA** SOC shall be notified of any security incident that may have an operational or security impact on **I-92** connected to the **CBP systems – TECS and TECS Mod.**

| Contact Group | Phone/Email | Email Address | Hours |
|---|---|---|---|
| DOC CIRT | 202-482-6401 | doc-cirt@doc.gov | Continuous |
| ITA Help Desk | 202-482-1955 | csc@trade.gov | Continuous |

### 3.12    System Monitoring

The **CBP systems – TECS and TECS Mod** performance and operations are monitored and managed using the following products and tools:

- WebSphere MQ Monitoring tools and logs
- IBM Tivoli Suite

**CBP systems – TECS and TECS Mod** are deploying and/or using the following products and capabilities to monitor security vulnerabilities and compliance:

- Tenable Nessus
- AppDetective
- Web Inspect
- Core Impact
- Symantec Enterprise Security Management (ESM)
- Intrusion Detection System/Intrusion Prevention System

Additional information may be available from CSIRC (703)921-6507, Email: CBP.CSIRC@dhs.gov.

**ITA I-92** performance and operations are monitored and managed using the following products and tools:

- SQL Diagnostic Manager

**ITA I-92** is deploying and/or using the following products and capabilities to monitor security vulnerabilities and compliance:

- Tenable Nessus

**FOR OFFICIAL USE ONLY**

FOR OFFICIAL USE ONLY

- AppDetective
- Symantec Enterprise Security Management (ESM)
- Fidelis Intrusion Protection Security System
- Solarwinds

## 3.13   Security Audit Trail Responsibility

**CBP** and **ITA** personnel will analyze their respective audit logs weekly to detect and track unusual or suspicious activities across the interconnection that might indicate intrusions or internal misuse. Given the voluminous nature of audit logs, the logs should be kept at a manageable size by setting logging levels appropriately. Automated tools will be used for scanning for anomalies, unusual patterns, and known attack signatures, and will be configured to alert a system administrator if a threat is detected. In addition, an experienced system administrator or security manager will periodically review the logs to detect patterns of suspicious activity that scanning tools might not recognize. Audit trail requirements are in accordance with the Public Law 107-347, E-Government Act of 2002, including Title III, Federal Information Security Management Act (FISMA) and the Computer Security Enhancement Act of 1986.

**CBP** and **ITA** audit records shall be sufficient in detail to facilitate the reconstruction of events if compromise or malfunction occurs or is suspected. The audit record shall contain at least the following information:

- event type
- date and time of event (especially of access and the logoff)
- Identity of each user and device accessing or attempting to access an IT system
- workstation/server identification
- success or failure of access attempts
- Activities that might modify, bypass, or negate IT security safeguards
- Security actions taken by system administrators or ISSOs.

**CBP** will maintain access to system components in application server log files. CBP agrees to make audit log files available to **ITA** when the audit concerns the actions of an **ITA** employee accessing the CBP network.

Audit logs will be retained for 90 days on-line and available for at least one (1) year (as long as the entries do not contain PII).

## 3.14   Specific Equipment/Service Restrictions

No network equipment is to be moved or significantly altered at either end without the consent of both **CBP** and **ITA**.

The use of specific prohibited or restricted services, protocols, and ports listed in the DHS 4300A System Security Handbook (SSH) require an approved waiver or exception agreement between the system AOs. Any additional interconnections to either system shall be documented

13

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

in the appropriate security documentation and each party shall be notified of the new interconnections.

### 3.15    Dial-Up/Remote Connectivity

There is no dialup or wireless broadband support for this connection.

### 3.16    Training and Awareness

Both parties will ensure that all individuals using the systems (i.e., **CBP systems – TECS and TECS Mod -** and **ITA I-92 system)** have attended initial basic and annual refresher Computer Security Awareness and Training.  Each organization must give newly hired employees initial security awareness training prior to being given access to DHS systems.  Additionally, both parties will ensure that persons with significant security responsibilities for the systems receive annual role based training covering their specific areas of responsibility.  This training should ensure that staff members have been trained to recognize and protect Personally Identifiable Information (PII) and know how to report suspicious or prohibited activities.

### 3.17    Security Documentation

The **CBP systems – TECS and TECS Mod** and **ITA I-92** Certification and Accreditation (C&A) documentation (e.g., System Security Plan, Contingency Plan, Risk Assessments and Security Assessments, Interconnection Security Agreements, etc.) and all other security related documents will be made available to each party for review and acceptance.  C&A documentation will be updated to reflect the establishment of this interconnection and whenever a significant system change occurs or at least annually.  This ISA shall be updated should any of the information contained within change.  The following information, at a minimum will be maintained accurate within this ISA:

- Names of interconnected systems
- Organizations owning the other systems
- Type of interconnection
- Name and title of authorizing management officials (e.g. Chief Information Officer or Designated Authorizing Authority)
- Interaction among the systems
- Rules of Behavior

The above information plus the Authorization To Operate (ATO) documentation for the **CBP systems – TECS and TECS Mod** will be provided, or made available for review, by the **TECS and TECS Mod** ISSO, AISSO, or CISO listed above in Section 1.4 within the Contact Information for CBP POCs table.  A copy of CBP 1400-05D Information Systems Security Policies and Procedures Handbook was sent to all CBP and DOC POCs contributing to the writing of this ISA on 08/21/2010.

The above information plus the Authorization To Operate (ATO) documentation for the **ITA I-92** will be provided, or made available for review, by the **ITA** ISSO or CISO listed above in paragraph 1.4 in the Contact Information for **ITA** POCs table.  A Copy of *U.S. Customs and*

FOR OFFICIAL USE ONLY

*Border Protection (CBP) HB 1400-05D Information Systems Security Policies and Procedures Handbook*, version 1.1, was received by **ITA**.

All future changes relating to the security architecture of either system will be updated within the corresponding security documents. The assigned Information System Security Officer(s) for each system shall provide the security documentation to the other organization upon request.

### 3.18   Change Control

Significant changes to the system architecture, documentation, or configurations will be reviewed, approved and documented in accordance with each organization's configuration/change control process. Each organization shall notify the other if a system change significantly changes the approved security posture of the system or introduces new significant residual risk to either system. Whenever significant changes are made at one or both organizations, e.g., through additional staff, service, etc., this should be recorded as an addendum to the original ISA.

## 4.0   TOPOLOGICAL DRAWING

An architecture diagram showing the CBP systems TECS and TECS Mod interconnection with ITA I-92 system is contained in Attachment B. The diagrams shall illustrate all communication paths, circuits, and other components used for the interconnection.

FOR OFFICIAL USE ONLY

## 5.0   SIGNATORY AUTHORITY

This ISA is valid for three (3) years after the latest date on either signature listed below, if the technology documented herein does not change or if there are no other intervening requirements for updates.  At that time it must be reviewed, updated, and reauthorized.  The security controls for this interconnection will be reviewed at least annually or whenever a significant change occurs.  Either party may terminate this agreement with thirty days advanced notice. Noncompliance on the part of either organization or its users or contractors with regards to security policies, standards, and procedures explained herein may result in the immediate termination of this agreement.

Note:  Department of Commerce (DOC's) connection endpoints under this ISA will conform and comply with (or exceed) the policies in the DHS Sensitive Systems Policy and CBP Information Systems Security Policies and Procedures Handbook HB 1400-05D, Version 1.1.

| CBP systems – TECS and TECS Mod<br><br>Authorizing Official Name and Title | Ken Ritchhart<br>Deputy Assistant Commissioner<br>Office of Information and Technology<br><br>Authorizing Official |
|---|---|
| Signature & Date→ | *[signature]* 11/19/2 |
|  |  |
| ITA I-92 Authorizing Official Name and Title | Renee Macklin<br>Chief Information Officer.<br>Office of the Chief Information Officer<br><br>Authorizing Official |
| Signature & Date→ | *[signature]* 11-4-10 |

16

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 6.0    ATTACHMENTS

### 6.1    Attachment A: CBP and ITA Ports, Protocols and Services

The following ports, protocols, and services are allowed between **CBP** and **ITA** Security Domains by default.

| Ports, Protocols, and Services Chart | | |
|---|---|---|
| | *CBP* | *ITA* |
| Port Number (Server / Destination | 22 | 22 |
| IP Protocol (TCP/UDP) | TCP/IP | TCP |
| Software Application | Batch COBOL | .Net |
| Data Type / Purpose | Statistics on Tourism and Travel / Administrative | Statistics on Tourism and Travel / Administrative |
| PII Data? | No | No |
| Financial Data? | No | No |
| Encryption used | SSL/SFTP  AES256 | SSL/SFTP  AES256 |

FOR OFFICIAL USE ONLY

## 6.2    Attachment B: Topological Diagram of CBP and ITA Interconnections



## FOR OFFICIAL USE ONLY

# U.S. Customs and Border Protection

☐ Congressional  ☐ DHS  ☒ Routine  ☐ FYI

## Document Routing Form

Date: 11/16/2010

| FROM | Writer's Name<br>Lee Fisher | Office<br>OIT/STP | Office Of Executive Secretariat Staff Tracking No. |
|---|---|---|---|
| | Telephone No. ▉▉▉ | Room No. ▉▉▉ | Subject: ISA between TECS/TECS-Mod (I-92) and Department of Commerce International Trade Administration |

| Destination | Initials | Date | Comments - Commissioner's Staff Only |
|---|---|---|---|
| Commissioner | | | |
| Deputy Commissioner | | | |
| Chief of Staff | | | |
| OES Director | | | |
| OES Correspondence Manager | | | |

| To | Destination | Initials/Date | To | Destination | Initials/Date | To | Destination | Initials/Date |
|---|---|---|---|---|---|---|---|---|
| **Air and Marine** | | | **Human Resources Management** | | | **Policy and Planning** | | |
| | Asst. Commissioner | | | Asst. Commissioner | | | Director | |
| | | | | | | | | |
| | | | | | | **Public Affairs** | | |
| | | | | | | | Asst. Commissioner | |
| | | | **Information and Technology** | | | | | |
| | | | | Asst. Commissioner | | | | |
| **Border Patrol** | | | 5 | DAC | ✗⌒Q | | | |
| | Chief | | | | | **Secure Border Initiative** | | |
| | | | **Intelligence and Operations Coordination** | | | | | |
| | | | | | | | | |
| **Chief Counsel** | | | | | | **State and Local** | | |
| | | | **Internal Affairs** | | | | | |
| | | | | Asst. Commissioner | | | | |
| **Congressional Affairs** | | | | | | **Training and Development** | | |
| | Asst. Commissioner | | **International Affairs** | | | | Asst. Commissioner | |
| | | | | Asst. Commissioner | | | | |
| | | | | | | **Trade Relations** | | |
| **Equal Employment Opportunity** | | | | | | | | |
| **Field Operations** | | | **International Trade** | | | | | |
| | Asst. Commissioner | | | Asst. Commissioner | | | | |

### Office Comments

After EDME processing , please hold for pick up by STP representative.

Please contact Lee Fisher @ ▉▉▉▉ if there are any content issues that need addressing.

Thanks

| To | Destination | Initials/Date |
|---|---|---|
| **Administration** | | |
| | Asst. Commissioner | |
| **Information and Technology (cont.)** | | |
| 4 | EDME Exec Dir | ▉ BC u/t/10 |
| 3 | EDME Deputy Dir | ▉ u/t/10 |
| 2 | CBO CISO | MB |
| 1 | ST) C&A Team Lead | CV ⌖BC u/10 |

*EDME 10-384*

*P Carroll*
*11-17-10*

HQ 123 (01/10)

# Attachment 4

## EXECUTIVE SUMMARY

**Subject:** ISA-FY13-09-412: Interconnection Security Agreement (ISA) Addendum between the Department of Homeland Security's (DHS) Redundant Trusted Internet Connection (RTIC), DHS Component United States (U.S.) Customs and Border Protection (CBP) Passenger System Program Directorate (PSPD) TECS and the Department of Commerce (DOC) International Trade Administration (ITA) I-92 System.

**Issue:**

The requirement for the connection from ITA processing center to DHS is for the express purpose of exchanging electronic data between CBP and ITA. The ITA requires the use of TECS data as an expeditious and cost effective means of collecting information and statistics regarding travel and tourism.

**Background:**

ITA I-92 program (U.S. International Air Travel Statistics) is a joint effort between CBP and the Office of Travel and Tourism Industries (OTTI) to provide international air traffic statistics data to the government and the travel industry. The system is a source of all international flights to and from the U.S., including flights with less than 10 passengers.

The data is generated by commercial airlines and private planes discharging passengers in the United States. Aircraft crew must complete an I-92 form declaring the number of passengers on board the aircraft to include crew. The data is sent to CBP's mainframe and stored in the legacy TECS database, and is then transferred to TECS Mod for dissemination to ITA I-92. Batch data transfers occur via Secure File Transfer Protocol (SFTP), which automatically passes ITA data between the Department of Commerce (DOC) SFTP server and the CBP mainframe. Authorized ITA users are allowed to create ad hoc queries in the TECS database using a TN3270 emulator, which supports TLS encryption and will utilize the selected emulation to create an encrypted application session using x.509 certificates.

**Recommendation:**

Based on the justification above, the Chief Information Security Officer recommends approval of this ISA.

| | |
|---|---|
| **Submitted by:** | John M. Buckley |
| **Date:** | January 23, 2014 |
| **Point of Contact:** | Kathy McCarten |
| **Telephone:** | ███████████ |

FOR OFFICIAL USE ONLY



**Interconnection Security Agreement**

between the

**Department of Homeland Security (DHS)**
**Redundant Trusted Internet Connection**
**(RTIC)**
**U.S. Customs and Border Protection (CBP)**
and the

**U.S. Department of Commerce**

**International Trade Administration (ITA)**


**TECS**

**and**

**I-92 System**

January 22, 2014

CBP# ISA-FY13-09-412


*Securing Information that Protects the Homeland*

**WARNING:** This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of the CBP and the ITA Disclosure Offices.

# Document Change History

| Version | Date | Description |
|---------|------|-------------|
| 1.0 | 2/20/2013 | Initial template population  (K. McCarten) |
| 1.1 | 4/11/2013 | Transferred to current DHS ISA template  (K. McCarten) |
| 1.2 | 6/18/2013 | Updated with ITA input (K. McCarten) |
| 1.3 | 8/29/2013 | Updated port information (K. McCarten) |
| 1.4 | 10/28/2013 | Addressed STP comments (K. McCarten) |
| 1.5 | 1/17/2014 | Updated with DHS input  (K. McCarten) |

**FOR OFFICIAL USE ONLY**

ISA Between DHS CBP and ITA for TECS and I-92

# Contents

1.0   **Purpose** ............................................................................................................................... 1

   1.1   *Security Network Connectivity Policy* .................................................................... 1

   1.2   *ISA Requirements for Types of System Interconnections*................................. 2

   1.3   *Scope* ....................................................................................................................... 2

   1.4   *Point of Contact (POC)* ......................................................................................... 2

   1.5   *References* ............................................................................................................... 4

2.0   **Interconnection Justification** ................................................................................... 5

3.0   **Security Considerations** ............................................................................................ 5

   3.1   *General Information/Data Description*................................................................... 5

   3.2   *ISA Requirements Within and Across Organizational Boundaries* ................... 6

   3.3   *Physical Security and Environmental Controls* .................................................... 6

   3.4   *Data Sensitivity* ...................................................................................................... 7

   3.5   *Services Offered* ..................................................................................................... 7

   3.6   *Period of Operation* ............................................................................................... 8

   3.7   *User Community* ..................................................................................................... 8

   3.8   *Information Exchange Security*............................................................................. 8

   3.9   *Trusted Behavior / Rules of Behavior* ................................................................. 10

   3.10   *Formal Security Policy* ........................................................................................ 11

   3.11   *Incident Reporting* .............................................................................................. 11

   3.12   *System Monitoring*............................................................................................. 12

   3.13   *Security Audit Trail Responsibility* ................................................................... 13

   3.14   *Specific Equipment/Service Restrictions* ........................................................ 14

   3.15   *Dial-Up/Remote Connectivity* .......................................................................... 14

   3.16   *Training and Awareness* ..................................................................................... 14

   3.17   *Security Documentation* .................................................................................... 14

   3.18   *Change Control* ................................................................................................... 15

4.0   **Topological Drawing** ................................................................................................ 16

5.0   **Signatory Authority** .................................................................................................. 17

6.0   **CBP and ITA Allowed Ports, Protocols & Services** ............................................. 18

**FOR OFFICIAL USE ONLY**

FOR OFFICIAL USE ONLY

## 1.0   PURPOSE

This Interconnection Security Agreement (ISA) is required by Federal and Department of Homeland Security (DHS) policy and establishes individual and organizational security responsibilities for the protection and handling of unclassified information between the DHS Customs and Border Protection (CBP) and the U.S. Department of Commerce (DOC), International Trade Administration (ITA).  Any specific requirements of both signatory organizations are also included.

ITA requires the use of TECS data as an expeditious and cost effective means of collecting information and statistics regarding travel and tourism.  The data is generated by commercial airlines and private planes discharging passengers in the United States.  Aircraft crew must complete an I-92 Form declaring the number of passengers on board the aircraft to include crew (presently hardcopy), which must be typed or converted into electronic media.  In the near future, the I-92 Form will be converted to a machine readable zone (MRZ) card.  Currently, the converted data is sent to CBP's mainframe and stored in TECS, and is then transferred to TECS Mod for dissemination to ITA I-92.

<u>TECS</u>

TECS was designed to provide multi-agency access to a common database of enforcement data supplied by the participating agencies.

<u>ITA I-92</u>

ITA I-92 program (U.S. International Air Travel Statistics) is a joint effort between CBP and the Office of Travel and Tourism Industries (OTTI) to provide international air traffic statistics data to the government and the travel industry.  The system is a source of all international flights to and from the U.S., including flights with less than 10 passengers.

## 1.1   Security Network Connectivity Policy

*DHS Sensitive Systems Policy Directive 4300A* establishes DHS policy for network connectivity. The section on network connectivity (Section 5.4.3) states:

   a.  Components shall ensure that appropriate identification and authentication controls, audit logging, and access controls are implemented on every network element.

   b.  Interconnections between DHS and non-DHS systems shall be established only through the Trusted Internet Connection (TIC) and by approved service providers. The controlled interfaces shall be authorized at the highest security level of information on the network. Connections with other Federal agencies shall be documented based on interagency agreements, memorandums of understanding, service level agreements or interconnection security agreements.

   c.  ISAs shall be reissued every three (3) years or whenever any significant changes have been made to any of the interconnected systems.

FOR OFFICIAL USE ONLY

d. ISAs shall be reviewed and updated as needed as a part of the annual Federal Information Security Management Act (FISMA) self-assessment.

e. Components shall document interconnections between their own and external (non-DHS) networks with an ISA for each connection.

f. The DHS Chief Information Officer (CIO) shall approve all interconnections between DHS enterprise-level information systems and non-DHS information systems. The DHS CIO shall ensure that connections with other Federal Government agencies are properly documented. A single ISA may be used for multiple connections provided that the security authorization is the same for all connections covered by that ISA.

g. The appropriate CCB shall ensure that documentation associated with an approved change to an information system is updated to reflect the appropriate baseline. DHS systems that interface with OneNet shall also be subject to the OneNet CCB.

## 1.2 ISA Requirements for Types of System Interconnections

System interconnections may be characterized as either direct or networked. Direct connections are single purpose point-to-point connections that support only the two connected systems. Directly connected systems do not rely on another network for their connectivity or security and are physically and electronically isolated from other networks and systems. Networked systems connect via an intervening network that exists as a general support system, not a single-purpose connection. Systems that are connected via an encrypted tunnel, whether on HSDN or any other network, are considered networked systems.

For networked U.S. Government systems, the ISA must include the owner and AO of the network as well as the owners of the applicable systems.

## 1.3 Scope

This interconnection security agreement addresses the interconnection of CBP's TECS and the ITA's I-92 system. Additionally, the ISA covers application and/or control data traversing the networks.

## 1.4 Point of Contact (POC)

For all issues associated with this agreement, the established points of contact are as follows:

2

FOR OFFICIAL USE ONLY

| Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) | Department of Commerce International Trade Administration (ITA) | DHS Redundant Trusted Internet Connection (RTIC) |
|---|---|---|
| **Authorizing Official (AO):** Name: Kenneth M. Ritchhart Title: Deputy Assistant Commissioner Phone: ▮▮▮ Email: ▮▮▮@dhs.gov | **Authorizing Official (AO):** Name: Renee Macklin Title: Chief Information Officer (CIO) Phone: (202) 482-3801 Email: renee.macklin@trade.gov | **Authorizing Official (AO):** Name: Michael C. Brown Title: Executive Director Information Services Phone: ▮▮▮ Email: ▮▮▮@dhs.gov |
| **System Owner:** Name: Valerie Isbell Title: Executive Director, PSPD Phone: ▮▮▮ Email: ▮▮▮@dhs.gov | **System Owner:** Name: Ken Berman Title: Deputy Chief Information Officer Phone: (202) 482 3801 Email: ken.berman@trade.gov | **System Owner:** Name: Keith Evans Title: Director Enterprise Services Division Phone: ▮▮▮ Email: ▮▮▮@hq.dhs.gov |
| **ISSO(s):** Name: Ingrid Murray Title: Information System Security Officer, TECS Phone: ▮▮▮ Email: ▮▮▮@cbp.dhs.gov | **ISSO(s):** Name: Felicia Heard Title: Information System Security Officer Phone: (202) 482-1347 Email: felicia.heard@trade.gov | **ISSO(s):** Name: Manuel Malo Title: Information System Security Officer Phone: ▮▮▮ Email: ▮▮▮@cbp.dhs.gov |
| **CISO/ISSM:** Name: John M. Buckley Title: Chief Information Security Officer (CISO) Phone: ▮▮▮ Email: ▮▮▮@cbp.dhs.gov | **CISO/ISSM:** Name: Jeffery Jackson Title: Director of IT Security/Chief Information Security Officer (CISO) Phone: (202) 482-5236 Email: jeffery.jackson@trade.gov | **CISO/ISSM:** Name: Jorge Reig Title: Information Systems Security Manager (ISSM) Phone: ▮▮▮ Email: ▮▮▮@hq.dhs.gov |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) | Department of Commerce International Trade Administration (ITA) | DHS Redundant Trusted Internet Connection (RTIC) |
|---|---|---|
| **Program Manager:**<br><br>**Name:** Valerie Isbell<br>**Title:** Executive Director, PSPD<br>**Phone:** ██████<br>**Email:** ██████@dhs.gov | **Program Manager:**<br><br>**Name:** Valentine A. Thompson<br>**Title:** Director of Application Development<br>**Phone:** (202) 482-0581<br>**Email:** valentine.thompson@trade.gov | **Program Manager:**<br><br>**Name:** Brian Ogle<br>**Title:** Director, OneNet<br>**Phone:** ██████<br>**Email:** ██████@hq.dhs.gov |

## 1.5    References

NIST Special Publication (SP) 800-47, *Security Guide for Interconnecting Information Technology Systems,* provides guidance in preparing and establishing connectivity between networks. NIST SP 800-47 specifies guidance for establishing network ISAs. The key points are discussed in this ISA. Consult the full document for additional information and examples of ISAs and MOUs.

NIST Special Publication (SP) 800-53, *Recommended Security Controls for Federal Information Systems*, provides guidelines for selecting and specifying security controls for information systems supporting the executive agencies of the federal government. The guidelines apply to all components of an information system that process, store, or transmit federal information.

- DHS Sensitive Systems Policy Directive 4300A
- DHS 4300A Sensitive Systems Handbook
- DHS, Type Accreditation, Attachment D to the DHS 4300A Sensitive Systems Handbook
- DHS, Incident Response and Reporting, Attachment F to the DHS 4300A Sensitive Systems Handbook
- DHS, Vulnerability Assessment Program, Attachment O to the DHS 4300A Sensitive Systems Handbook
- NIST SP 800-47, Security Guide for Interconnecting Information Technology Systems,
- NIST ITL Bulletin,, Secure Interconnections for Information Technology Systems
- NIST SP 800-53, Rev. 3, Recommended Security Controls for Federal Information
- CBP HB 1400-05D, Information Systems Security Policies and Procedures Handbook, version 4.0, May 10, 2013

4

FOR OFFICIAL USE ONLY

## 2.0   INTERCONNECTION JUSTIFICATION

The requirement for the connection from ITA processing center to DHS is for the express purpose of exchanging electronic data between CBP and ITA. ITA requires the use of TECS data as an expeditious and cost effective means of collecting information and statistics regarding travel and tourism (no Personally Identifiable Information, PII, is exchanged). The data are generated by commercial airlines and private planes discharging passengers in the United States. Aircraft crew must complete an I-92 form declaring the number of passengers on board the aircraft to include crew, presently hardcopy, which must be typed or converted into electronic media. In the near future, the I-92 form will be converted to a machine readable zone (MRZ) card. Presently, the converted data is sent to CBP's mainframe and stored in the legacy TECS database, and is then transferred to TECS Mod for dissemination to ITA I-92.

The interconnection between CBP TECS and ITA I-92 is characterized as a networked connection.

Information exchange will be encrypted using FIPS 140-2, AES-256 encryption algorithm over the DHS Extranet configured with IPSEC encrypted tunnels between the two endpoints. Data will be unencrypted once it reaches the CBP enclave for packet inspection and logging. Packet filtering rules will be implemented on firewalls to limit traffic based on port/protocol and source/destination.

Batch data transfers occur via Secure File Transfer Protocol (SFTP), which automatically passes ITA data between the DOC SFTP server and the CBP mainframe. Other mission, administrative, tests, troubleshooting, and network control data are also passed over the connection.

## 3.0   SECURITY CONSIDERATIONS

This section describes the security mechanisms in place to secure the connections between both systems. It outlines what the security considerations are and which organization is responsible for each. In some cases both organizations will share security responsibility.

### 3.1   General Information/Data Description

The purpose of the interconnection between CBP TECS and ITA's I-92 system is to exchange data collected by commercial airlines and private planes discharging passengers in the United States from the I-92 form. CBP converts information on the I-92 form to electronic media, which is sent to TECS, where algorithms are run to produce the data and statistics needed by ITA. The derived data is then transferred to TECS Mod to be sent to ITA I-92.

The data traversing the networks will include both CBP TECS and ITA's I-92 unclassified, non-sensitive statistical and summary information to be combined with other similar data and published on the Department of Commerce's internet web site containing information on visitors and tourists to the United States; no financial or privacy data is transmitted over this circuit.

Examples of the data include, passenger arrival or departure code, U. S. Port/foreign port, date, airline code, flight number, total number of passengers, and transport code (commercial or

5

private aircraft). In addition to the application data, this circuit also carries operational, administrative, test, and/or control data traversing the networks.

## 3.2    ISA Requirements Within and Across Organizational Boundaries

DHS:

IT equipment within the boundary of the DHS RTIC is owned, operated and maintained by DHS government employees or contracted services. All DHS IT equipment will be hardened, at a minimum, per DHS 4300A hardening guidelines or specific waivers to hardening guidelines requested, documented, and approved by the appropriate ISSM/CISO.

DHS CBP:

Information Technology (IT) equipment used to operate CBP systems is owned, operated and maintained by DHS CBP contracted services or government employees. All CBP IT equipment interconnected with the DHS RTIC will be hardened, at a minimum, per DHS 4300A hardening guidelines or specific waivers to hardening guidelines requested, documented, and approved by the appropriate Information System Security Manager(s) (ISSM).

ITA:

Information Technology (IT) equipment within the boundary of the ITA I-92 system is owned, operated, and maintained by ITA contracted services and government employees, located in a government facility. All ITA I-92 equipment interconnected with the CBP TECS will be hardened, at minimum, per DHS 4300A hardening guidelines or per specific waivers to hardening guidelines requested, documented, and approved by the appropriate ISSM.

DHS CBP and DOC ITA shall protect the data in order to maintain confidentiality, integrity, and availability of the data and information systems. The data and information systems will be protected in accordance with DHS Sensitive Systems Policy Directive 4300A, the NIST SP 800-53 assigned minimum security controls, and FIPS 199 Security Categorization of both systems to ensure that the connection will be protected to the requirements of higher categorized system.

FIPS 199 Security Categorization:

| System | Confidentiality | Integrity | Availability | Overall |
|---|---|---|---|---|
| CBP TECS | HIGH | HIGH | HIGH | HIGH |
| DOC ITA | Moderate | Moderate | Moderate | Moderate |
| DHS RTIC | HIGH | HIGH | HIGH | HIGH |

## 3.3    Physical Security and Environmental Controls

Physical Security, at a minimum, will be governed by DHS 4300A Sensitive Systems Policy Section 4.2 "IT Physical Security," and NIST SP 800-53 controls. Both organizations shall provide physical security and system environmental safeguards adequate to provide protection of the system components.

CBP

FOR OFFICIAL USE ONLY

Physical Security at CBP will be governed by DHS 4300A Sensitive Systems Policy Section 4.2 "IT Physical Security," and NIST SP 800-53 controls. CBP maintains a 24 hour physically secure facility at each end where access to the building is controlled by restricted access and escorted visits only. Security controls include an eight-foot perimeter fence with outriggers that contain barbed wire, armed guards 24 hours by seven days a week (24x7), proximity badge readers, and video surveillance.

The TECS servers are located at the National Data Center (NDC) in Springfield, VA. TECS is certified and accredited to ensure adequate physical and environmental controls have been implemented for the system. Physical Security, at a minimum, will be governed by DHS Sensitive Systems Policy Handbook 4300A Section 4.2 "IT Physical Security," and NIST SP 800-53 controls.

The NDC complex is a 24x7x365 guarded facility with a physical security intrusion detection system that monitors doors, ceilings and windows. NDC is under 24-hour video surveillance and surrounded by a chain linked fence with barbwire and motion sensors. NDC Systems are protected from power failures by backup power generators. NDC has fire detection and suppression system installed throughout the building including the server rooms. CBP maintains a physically secure facility where access to the building is controlled by restricted access, and visitors are required to be escorted at all times.

ITA

ITA is collocated with The Census Bureau at the Bowie Computer Center (BCC), at 17101 Melford Blvd, Bowie Maryland; the BCC is a 24X7X365 guarded facility with a physical security intrusion detection system that monitors doors, ceilings and windows. BCC is under 24 hour on site video surveillance and surrounded by a fence. BCC systems are protected from power failures by dual power grids, and two backup generators for each grid. The BCC has a fire detection and suppression system installed throughout the building including the server rooms. BCC maintains a physically secure facility where access to the building is controlled by restricted access and visitors are required to be escorted at all times. ITA servers are located in Mod1 (Modular 1) in the BCC, which has its own caged area, and is controlled 24x7x365 by card access.

## 3.4    Data Sensitivity

The data being transferred between CBP TECS and ITA's I-92 systems is statistical, non-sensitive data releasable to the public.

## 3.5    Services Offered

The interconnection between the DHS RTIC, CBP and ITA is connected via the DHS RTIC infrastructure by an IPSec Virtual Private Network (VPN) connection over a 256 AES encrypted Generic Route Encapsulation (GRE) tunnel.

The interconnection between the DOC ITA (and its related network systems) that traverse the DHS RTIC WAN are supported by Internet VPN IPSec encrypted tunnels using AES 256 encryption technology. DHS OneNet transport services utilize Multiprotocol Label Switching (MPLS and Dynamic Multipoint Virtual Private Network (DMVPN).

7

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

The VPN is established between a CBP VPN IPSec Cisco router and ITA approved firewall. The connection is available 24 hours a day, 7 days a week. The interface must be available daily between the hours of midnight and 3 a.m. EST for batch transfers, at a minimum, and its availability is contingent upon the availability of the constituent systems (TECS and I-92).

Batch data transfers occur via Secure File Transfer Protocol (SFTP), which automatically passes ITA data between the Department of Commerce (DOC) SFTP server and the CBP NDC mainframe. Other mission, administrative, tests, troubleshooting, and network control data are also passed over the connection.

Services and ports needed to access CBP and ITA system are listed in Attachment A (Ports, Protocols, and Services).

## 3.6   Period of Operation

Both systems are operational 24 hours a day, 7 days a week and 365 days a year with the exception of maintenance outages.

## 3.7   User Community

The ITA user community is comprised of ITA employees and contractors.

All ITA personnel are U.S. citizens and have appropriately adjudicated suitability background investigations.

All DHS CBP users are U.S. citizens with valid and current CBP Full Field Background Investigation (FFBI). CBP users are governed by policies and procedures set forth in DHS CBP HB 1400-05D. If non-US citizen have access to either system, appropriate exceptions will be documented in accordance with DHS Sensitive Systems Policy Directive 4300A, Section 1.5.4.

The user community as a whole is expected to interact with each system and the interconnection in a manner consistent with security policies of the systems. All CBP employees, both Government and contractors, are required to adhere to the Rules of Behavior that are published in DHS 4300A Sensitive Systems Handbook.

Under normal conditions, only U.S. Citizens are allowed access to DHS systems and networks, however, at times there is a need to grant access to foreign nationals. Access for foreign nationals is normally a long-term commitment, and exceptions to appropriate policies are treated separately from standard exceptions and waivers. The approval chain for an exception to the U.S. Citizenship requirement flows through the Component Head, the Office of Security, and the Chief Information Officer. Attachment J to the DHS 4300A Sensitive Systems Handbook provides an electronic form for requesting exceptions to the U.S. Citizenship requirement.

## 3.8   Information Exchange Security

The security of the information being passed on this connection is protected at the mainframe, network, and application level. Security services running at CBP NDC and the ITA include border routers and firewalls to restrict network access, antivirus and network software.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

Information exchange on this interconnection is protected using a FIPS 140-2, AES256 encrypted VPN tunnel supported by SSH/SFTP. The connections at each end are located within controlled access facilities, guarded 24 hours a day.

At CBP, security for ITA data is provided through the CBP mainframe, which is protected by CA Top Secret. Top Secret is the Identification & Authorization (I&A) mechanism for all users of the mainframe, not only for those users accessing ITA data. All access is controlled by authentication methods to validate the approved users.

CBP maintains the following IDS/IPS and firewalls for CBP PSPO Systems:

- IDS/IPD: The CBP/CSIRC receives security alerts daily via Host Intrusion Detection Systems (HIDS) and Network Intrusion Detection Systems (NIDS) deployed at the DHS network. They also receive security alerts and advisories from users via telephone, emails, or intranet. Also, USCERT provides daily updates of current security threats. CSIRC runs a Host Intrusion Detection System to provide continuous monitoring to prevent intrusion. The Network Support Team configures the firewalls correctly based on security requirements and updates directed by CSIRC. Please contact the following organization for specific information regarding the CBP IDS/IPS:

  CSIRC
  csirc@cbp.dhs.gov
  M: 703-921-6507
  F: 703-921-6570

- Data Firewalls: CBP firewalls are under the control of the CBP Security Operations Center (SOC), which is responsible for providing direction and guidance for firewall settings and rule sets. Only CBP SOC authorized personnel has the appropriate credentials and access for administration of the firewalls. The SOC personnel that are responsible for administration of the firewalls have to successfully satisfy the two-factor authentication process (something you know e.g., a password, something you have, e.g., a smartcard, token, USB key or, something you are, e.g., a biometric such as a fingerprint, iris scan). Strong authentication means the system must satisfy at least two of the three factors. These individuals are firewall management privileged users with the proper credentials for administration of the CBP firewalls. Further processes and procedures are documented in the DHS SOC Standard Operating Procedures (SOP). The SOP also includes the DHS SOC responsibilities for external connections protection. Please contact the following organization for specific information regarding the CBP firewalls:

  CSIRC
  csirc@cbp.dhs.gov
  M: (703) 921-6507
  F: (703) 921-6570

**ITA** maintains the following IDS/IPS and firewalls on ITA I-92:

FOR OFFICIAL USE ONLY

**FOR OFFICIAL USE ONLY**

- IDS/IPD: SourceFire

- Data Firewalls: CISCO Firewall Service Module

Both organizations will ensure that virus and spyware detection and eradication capabilities are used where appropriate (e.g., workstations, laptops, servers, etc.) and that adequate system access controls are in place and maintained on all components connected to the systems.

Specific protocols and ports that are needed to support this interconnection are provided in *Attachment A, Ports, Protocols and Services*.

## 3.9    Trusted Behavior / Rules of Behavior

The CBP TECS users and ITA I-92 users, to include system and network administrators, are expected to protect data in accordance with the policies, standards, and regulations specified for each system.  This includes CBP and ITA policy and the documented Rules of Behavior (RoB) for each system. The following documents specify specific RoB for each system:

CBP TECS:

- The CBP systems and users are expected to protect all data in accordance with the Privacy Act (5 U.S.C. 552a) and Trade Secrets Act (18 U.S. Code 1905), Unauthorized Access Act (18 U.S. Code 2701 & 2710), DHS Sensitive Systems Security Policy Directive 4300A, and the U.S. Customs and Border Protection (CBP), Information Systems Security Policies and Procedures Handbook, CIS HB 1400-05D.

- Additionally, CBP employees must review and sign the CBP Rules of Behavior presented during the yearly Security Awareness Training Course.

- CBP employees are expected to adhere to DHS Management Directive (MD) and Sensitive Systems Handbook 4300A and the CBP CIS HB 1400-05D.

ITA I-92:

The ITA Rules of Behavior are contained in Appendix H of the International Trade Administration's IT Security Program Policies, Version 2.0, dated September 23, 2013.  The Rules of Behavior are presented for electronic signature to users during the mandatory Annual Security Awareness Training.

Access to all shared data by both CBP and ITA is on a need to know basis and is enforced by restricting network access and data access via logon protocols and system user roles.

**FOR OFFICIAL USE ONLY**

### 3.10   Formal Security Policy

Policy documents that govern the protection of the data between the two organizations systems are:

CBP:

- CIS HB 1400-05D Information Systems Security Policies and Procedures Handbook
- DHS Sensitive Systems Security Policy Directive 4300A

ITA:

- ITA IT Security Program Policies, Version 2.0, dated September 23, 2013

### 3.11   Incident Reporting

The organization discovering a security incident will report it in accordance with the organization's incident reporting procedures and ensure that the other connecting organization is notified.

CBP personnel will be notified of any security incident that may have an operational or security impact on the DHS OneNet and TECS resources. Likewise, the ITA shall be notified of any security incident that may have an operational or security impact on the ITA I-92 connected to the CBP TECS application.

CBP personnel will notify the Computer Security Incident Response Center (CSIRC) Team at 703-921-6507 and by e-mail at CBP.CSIRC@dhs.gov. The CBP CSIRC Team will immediately notify its DOC ITA counterpart by either a telephone call to the DOC CIRT at 202-482-6401or email at sdoc-cirt@doc.gov.

DHS SOC contact information is:

DHS OneNET Support:  1-877-DHS1NET or 1-877-347-1638
Option 1 = NOC
Option 2 = SOC

DHS SOC Direct Line:  (703) 921-6505

CBP personnel will notify the Computer Security Incident Response Center (CSIRC) Team of any CBP DHS security incident that may have an operational or security impact connected to the DHS OneNet, at (703) 921-6507 and by e-mail at CBP.CSIRC@dhs.gov. The CBP CSIRC will receive formal notification in writing after the incident was detected. Please reference CIS HB 1400-05D to determine formal notification procedures.

DHS CBP Contact information:

SOC Direct line:  (703) 921-6505;  email: dhs.soc@dhs.gov

CSIRC Direct line:  (703) 921-6507:  email: dhs.soc@dhs.gov and cbp.csirc@dhs.gov

FOR OFFICIAL USE ONLY

DHS 1NET Support: 1-877-DHS1NET or 1-877-347-1638 (Option 1 = NOC, Option 2 = SOC)

The CBP CSIRC will create the incident response, escalate to DHS SOC, who will notify ITA. This is standard practice for any incident that affects DHS Components.

Point of Contact is the CBP CSIRC/ (703) 921-6507 or CBP.CSIRC@dhs.gov

ITA's contact information:

All necessary parties will be notified of any security incident that may have an operational or security impact on the ITA's resources. Likewise, the CBP shall be notified of any security incident that may have an operational or security impact on the ITA I-92 components.

ITA personnel will notify the Department of Commerce - Computer Incident Response Team (DOC- CIRT) Team at 202-482-4000 and by e-mail at DOC-CIRT@doc.gov. The DOC CIRT will immediately notify the Computer Security Incident Response Center (CSIRC) Team at 703-921-6507 and by e-mail at CBP.CSIRC@dhs.gov.

DOC CIRT contact information is:

- DOC CIRT Direct Line: 202-482-4000;  E-Mail: DOC-CIRT@doc.gov
  - Option 1 = OpSec  202-482-1548;  E-Mail: OpSec@trade.gov
  - Option 2 = 202-482-4000;  E-Mail: DOC-CIRT@doc.gov

The DOC CIRT will create the incident response; escalate to DHS SOC and CSIRC (respectively), who will notify CBP. This is standard practice for any incident that affects ITA's Components.

Point of Contact is the DOC CIRT: 202-482-4000;  E-Mail: DOC-CIRT@doc.gov

## 3.12   System Monitoring

**CBP:**

The systems/networks included in this interconnection are monitored by the owning agencies. The CBP performance and operations are monitored and managed using a variety of products and tools. Contact the DHS/CBP Network Operations Center for further information.

DHS SOC
*Phone:*  1-877-347-1638  or  SOC Direct line: (703) 921-6505
*Email:*  dhs.soc@dhs.gov

CBP is deploying and using a variety of products and capabilities to monitor security vulnerabilities and compliance. Contact the DHS/CBP Security Operations Center for further information.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

DHS SOC
*Phone:*  1-877-347-1638  or  SOC Direct line: (703) 921-6505
*Email:*  dhs.soc@dhs.gov

## ITA:

ITA performance and operations are monitored and managed using a variety of products and tools.  Contact ITA for further information.

The systems/networks included in this interconnection are monitored by ITA.
The ITA performance and operations are monitored and managed using a variety of products and tools.  Contact the ITA IT Security Program (Operations Security (OpSec)) for further information.

ITA's OpSec
*Phone:*  202-482-1548 – Program Manager – Gregory Waters
*Email:*  OpSec@trade.gov

ITA IT Security Program (Operations Security-OpSec) is deploying and using a variety of products and capabilities to monitor security vulnerabilities and compliance. Contact the OpSec for further information.

ITA's OpSec
*Phone:*  202-482-1548 – Program Manager – Gregory Waters
*Email:*  OpSec@trade.gov

## 3.13   Security Audit Trail Responsibility

Both parties are responsible for auditing system security events and user activities involving the interconnection.  Audit records shall be sufficient in detail to facilitate the reconstruction of events if compromise or malfunction occurs or is suspected.  Activities that will be recorded include:

- Event type
- Date and time of event
- User identification
- Workstation/server identification
- Success or failure of access attempts
- Security actions taken by system administrators or ISSOs.

Audit logs will be retained for 90 days on-line and available for at least one (7) years (as long as the entries do not contain PII).

FOR OFFICIAL USE ONLY

Audit records for systems hosting or processing PII shall be reviewed by the system administrator monthly. Unusual activity or unexplained access attempts shall be reported to the System Owner and Component CISO/ISSM.

CBP and ITA shall ensure that their audit records and audit logs are protected from unauthorized modification, access, or destruction.

### 3.14    Specific Equipment/Service Restrictions

The use of specific prohibited or restricted services, protocols, and ports listed in the DHS 4300A System Security Handbook (SSH) require an approved waiver or exception agreement between the system AOs. Any additional interconnections to either system shall be documented in the appropriate security documentation and each party shall be notified of the new interconnections. The CBP and ITA connection does not include any unauthorized protocols.

Both DHS and ITA administrators shall coordinate all relevant configuration changes that impact the overall operation of the connection between these entities.

### 3.15    Dial-Up/Remote Connectivity

Remote/dial-up connectivity is not used.

### 3.16    Training and Awareness

Both parties will ensure that all individuals using the systems (CBP TECS and ITA) have attended initial basic and annual refresher Computer Security Awareness and Training. Additionally, both parties will ensure that persons with significant security responsibilities for the systems receive annual role based training covering their specific areas of responsibility. This training should ensure that staff members know how to report suspicious or prohibited activities.

CBP and ITA will each be responsible for their own security awareness and training.

**For CBP:**

It is mandatory that all CBP employees and contractors take the CBP IT Security Awareness Training. Initial training is part of the new hire process and refresher training is required annually. Each supervisor and manager is required to ensure that their personnel complete the training and that the training record is maintained.

**For ITA:**

It is required that all ITA employees and contractors take the ITA Security Awareness Training. New hires must take the training as part of their on-boarding process and all users must take refresher training annually. Each supervisor and manager is required to ensure that their personnel complete training and that a training record is maintained.

### 3.17    Security Documentation

The DHS CBP TECS Security Authorization documentation (e.g., Security Plan, Contingency Plan, Security Assessments, Interconnection Security Agreements, etc.) and all other security related documents will be updated to reflect the establishment of this interconnection and

whenever a significant system change occurs or at least annually. This ISA shall be updated should any of the information contained within change. The following information, at a minimum, will be maintained accurate within this ISA:

- Names of interconnected systems
- Organizations owning the other systems
- Type of interconnection
- Name and title of authorizing management officials (e.g. Chief Information Officer or Designated Authorizing Authority)
- Interaction among the systems
- Rules of Behavior

All future changes relating to the security architecture of either system will be updated within the corresponding security documents.

## 3.18   Change Control

Significant changes to the system architecture, documentation, or configurations will be reviewed, approved and documented in accordance with each organization's configuration/change control process. Each organization shall notify the other if a system change significantly changes the approved security posture of the system or introduces new significant residual risk to either system. Whenever significant changes are made at one or both organizations, e.g., through additional staff, service, etc., this should be recorded as an addendum to the original ISA.

FOR OFFICIAL USE ONLY

## 4.0   TOPOLOGICAL DRAWING

Refer to the architecture diagram below showing the network interconnection between DHS RTIC and DOC ITA. The diagram illustrates all communication paths, circuits, and other components used for the interconnection.



| International Trade Administration (ITA) Logical Connection to CBP via DHS Data Center RTIC Internet VPN Endpoints | Author: DHS/CBP Network Engineering<br>Date:   September 1, 2011<br>Revision: 1 |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 5.0    SIGNATORY AUTHORITY

This ISA is valid for three (3) years after the latest date on either signature listed below, if the technology documented herein does not change or if there are no other intervening requirements for updates. At that time it must be reviewed, updated, and reauthorized. The security controls for this interconnection will be reviewed at least annually or whenever a significant change occurs. Either party may terminate this agreement with thirty days advanced notice. Noncompliance on the part of either organization or its users or contractors with regards to security policies, standards, and procedures explained herein may result in the immediate termination of this agreement.

| | |
|---|---|
| **U.S. Customs and Border Protection** <br><br> Acting Deputy Assistant Commissioner <br> Office of Information & Technology | |
| Signature & Date | 1/31/14 |
| | |
| **Renee Macklin** <br> Chief Information Officer (CIO) <br> U.S. Department of Commerce <br> International Trade Administration | |
| Signature & Date | 2/12/14 |
| | |
| **Michael C. Brown** <br> Executive Director <br> Information Technology Services Office <br> Office of the Chief Information Officer <br> Department of Homeland Security | |
| Signature & Date | |

17

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 6.0   CBP AND ITA ALLOWED PORTS, PROTOCOLS & SERVICES

The following ports, protocols, and services are allowed between CBP and ITA:

| Ports, Protocols, and Services Chart | | |
|---|---|---|
| | **CBP** | **ITA** |
| Port Number (Server / Destination | 22 | 22 |
| IP Protocol (TCP/UDP) | TCP/IP | TCP |
| Software Application | Batch COBOL | .NET |
| Data Type / Purpose | SBU/LES/SSI | SBU/LES/SSI Statistics on Tourism and Travel |
| PII Data  (Y/N) | Yes | No |
| Financial Data  (Y/N) | No | No |
| Encryption used | SSL/SFTP  AES 256 | SSL/SFTP  AES 256 |

FOR OFFICIAL USE ONLY

**U.S. Customs and Border Protection**

☐ Congressional ☐ DHS ☒ Routine

# Document Routing Form

☐ Tasking ☐ FYI ☐ INTC

### Date: 1/23/2014

| FROM | | | | |
|---|---|---|---|---|
| **Writer's Name** <br> Andrea Gleicher | **Office** <br> OIT/EDMED/STP | | **Office of the Executive Secretariat Staff Tracking No.** | |
| **Telephone No.** | **Room No.** | | **Subject:** ISA-FY13-09-412: CBP TECS and DOC International Trade Administration (ITA) I-92 System | |

| Destination | Initials | Date | Comments - Commissioner's Staff Only |
|---|---|---|---|
| **Commissioner** | | | |
| **Deputy Commissioner** | | | |
| **Chief of Staff** | | | |
| **Deputy Chief of Staff** | | | |
| **Counselor** | | | |
| **OES Director** | | | |
| **OES Manager/Writer-Editor** | | | |

| To | Destination | Initials/Date | To | Destination | Initials/Date | To | Destination | Initials/Date |
|---|---|---|---|---|---|---|---|---|
| **Office of Air and Marine** | | | **Office of Information and Technology** | | | **Office of Public Affairs** | | |
| | Asst. Commissioner | | | Asst. Commissioner | | | Asst. Commissioner | |
| | | | 5 | DAC | | | | |
| | | | 4 | EDMED Director | fr pa 1/29/14 | | | |
| | | | 3 | EDMED Dep. Dir. | 1-29-14 | | | |
| | | | 2 | CBP CISO | ay3 | **Office of State, Local, and Tribal Liaison** | | |
| **Office of Administration** | | | 1 | STP SA Lead | sc | | | |
| | Asst. Commissioner | | **Office of Intelligence and Investigative Liaison** | | | | Director | |
| | CFO | | | | | | | |
| | | | | Asst. Commissioner | | | | |
| | | | | | | **Office of Program Development** | | |
| | | | | | | | Principal Executive | |
| **Office of Border Patrol** | | | **Office of Training and Development** | | | | | |
| | Chief | | | Asst. Commissioner | | **Office of Technology Innovation and Acquisition** | | |
| | | | | | | | Asst. Commissioner | |
| **Office of Chief Counsel** | | | **Office of International Affairs** | | | | | |
| | | | | Asst. Commissioner | | | | |
| | | | | | | **Office of Trade Relations** | | |
| | | | | | | | Senior Advisor | |
| **Office of Congressional Affairs** | | | | | | | | |
| | Asst. Commissioner | | **Office of International Trade** | | | | | |
| | | | | Asst. Commissioner | | **Office of Human Resources Management** | | |
| | | | | | | | Asst. Commissioner | |
| **Office of Diversity & Civil Rights** | | | | | | | | |
| | Executive Director | | | | | | | |
| | | | **Joint Operations Directorate** | | | | | |
| | | | | Executive Director | | | | |
| | | | | | | **Office Comments** | | |
| **Office of Field Operations** | | | | | | | | |
| | Asst. Commissioner | | | | | Soft copies will be provided to EDMED before package delivery. | | |
| | DAC | | **Office of Policy and Planning** | | | | | |
| | COS | | | Executive Director | | | | |
| | CMO | | | | | After EDMED review, please hold for STP Pickup. | | |
| | | | | | | | | |
| **Office of Internal Affairs** | | | **Office of Strategic Integration** | | | EDME - 14 - 26 | | |
| | Asst. Commissioner | | | Principal Executive | | | | |

# Attachment 5

| DHS Office of the Chief Information Officer ROUTING AND TRANSMITTAL SLIP | | DATE: May 16, 2019 | |
|---|---|---|---|
| | | **Initial Approval or Comment** | **Date:** |
| 1.  Alan Jones, Acting Portfolio Management Section Chief, RMD | | ALAN C JONES | Digitally signed by ALAN C JONES Date: 2019.06.07 15:18:08 -04'00' |
| 2.  LaMonte Yarborough, Acting Director, RMD | | LA MONTE R YARBOROUGH | Digitally signed by LA MONTE R YARBOROUGH Date: 2019.06.14 09:56:10 -0400 |
| 3.  Wendell Bonvillian, Senior Advisor, RMD | | WENDELL J BONVILLIAN | Digitally signed by WENDELL J BONVILLIAN Date: 2019.06.19 12:03:06 -0400 |
| 4.  Paul Beckman, DHS CISO, OCIO | | 〽️ | 6/27/19 |

| Subject: | *Interconnection Security Agreement between the U.S. Customs and Border Protection (CBP), TECS Arrival and Departure Information System (ADIS) and the Department of Commerce (DoC), International Trade Administration (ITA), National Travel and Tourism Office (NTTO) for the purpose of sending overseas and Mexico-Air data between DoC and CBP* |
|---|---|

| | Action | | File | | Note and Return |
|---|---|---|---|---|---|
| | Approval | | For Review | | Per Conversation |
| | As Requested | | For Correction | | Prepare Reply |
| | Circulate | | FYI | | See Me |
| | Comment | | Investigate | X | Signature |
| | Coordination | | Justify | | Concurrence |

**Document Overview:** Interconnection Security Agreement between the U.S. Customs and Border Protection (CBP), TECS Arrival and Departure Information System (ADIS) and the Department of Commerce (DoC), International Trade Administration (ITA), National Travel and Tourism Office (NTTO) for the purpose of sending overseas and Mexico-Air data between DoC and CBP

**Actions Required:** Requesting review / approvals.  [*Add ticket number here*]

**Next Steps: Please contact April Yakupkovic @ ███████@hq.dhs.gov, after approval.**

**Due Date:** May 30, 2019

| RESPECTFULLY SUBMITTED BY: April Yakupkovic NAME: Room No ███ 7&D Street, Washington, DC, MS0136 Phone No.: ███████ | **Requested Priority Level** | |
|---|---|---|
| | | Urgent |
| | | Expedite |
| | X | Regular |

# Interconnection Security Agreement Checklist

| ISA INFO / TYPE | |
|---|---|
| **ISA Name:** | Interconnection Security Agreement between the U.S. Customs and Border Protection (CBP), TECS Arrival and Departure Information System (ADIS) and the Department of Commerce (DoC), International Trade Administration (ITA), National Travel and Tourism Office (NTTO) |
| **ISA Type:** *[standard; Master; Internat'l Addendum]* | Standard |
| **Connection Type:**   [VPN/MPLS] | VPN |
| **Connection Via:**   [DHS RTIC/ Onenet] | DHS RTIC |

| ISA ENTITIES | | | |
|---|---|---|---|
| **ISA Entities:** *[DHS-Fed; DHS-EIS; DHS-PGA; DHS-CSP]* | | DHS - Fed | |
| **DHS Component** | CBP | **External Entity** | DoC |

| ISA PURPOSE: |
|---|
| For the purpose of sending overseas and Mexico-Air data between DoC and CBP |
| **FLAGS** |
| |

| ISA SYSTEM INFORMATION | | | |
|---|---|---|---|
| **DHS System Name:** | **ATO Date** | **External Info. System Name** | **ATO Date** |
| CBP/TECS/ADIS | Dec 11, 2017 | DoC/ NTTO | Nov. 7, 2016 |

| ISA DATA TRANSFER | | | | | |
|---|---|---|---|---|---|
| **PII:** *[Y/N]* | Y | **Data Transfer:** *[Push/Pull/Bi-directional]* | Pull | **Connection Monitored** | Y |
| **ATO on File:** *[EIS Only]* | | | | | |

# EXECUTIVE SUMMARY

**Subject**: ISA-2018-09-356: Interconnection Security Agreement between the U.S. Customs and Border Protection TECS Arrival and Departure Information System (ADIS) and Department of Commerce, International Trade Administration (ITA) National Travel and Tourism Office (NTTO)

**Issue:**

Requesting approval for the Interconnection Security Agreement (ISA) renewal between the U.S. Customs and Border Protection's (CBP) TECS and Department of Commerce (DOC), International Trade Administration (ITA).

**Background:**

The purpose of the interconnection between CBP ADIS and DOC ITA NTTO is to send data to NTTO from CBP ADIS. The data traversing the networks will be limited to CBP and DOC ITA network unclassified operational and administrative data.

The sharing of data between these entities is covered in the Memorandum of Agreement (MOU) between DHS CBP and DOC ITA NTTO.

The interconnection between the CBP and the DOC ITA through the DHS RTIC Extranet will be via IPSec AES-256 encrypted tunnels and will utilize the dynamic BGP (Border Gateway Protocol) routing protocol in providing routing/geographic failover and redundancy. Within these encrypted GRE (Generic Routing Encapsulating) tunnels, the DHS RTIC Extranet will also establish IPSec AES-256 encrypted GRE tunnels in routing data to the DOC ITA network.

**Recommendation:**

Based on the justification above, the Chief Information Security Officer recommends approval of this ISA.

| | |
|---|---|
| **Submitted by:** | Alma R. Cole |
| **Date:** | December 5, 2018 |
| **Point of Contact:** | Peter A. Kuempel |
| **Telephone:** | ▮▮▮▮▮▮▮ |

FOR OFFICIAL USE ONLY



# Interconnection Security Agreement between the U.S. Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) and the Department of Commerce (DOC) International Trade Administration (ITA) National Travel and Tourism Office (NTTO) via the DHS Redundant Trusted Internet Connection (DHS RTIC)

## TECS/Arrival & Departure Information System (ADIS) and NTTO I-94

Version 0.6

November 9, 2018

ISA-2018-09-356

WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of the DHS OneNet RTIC, CBP, and the DOC ITA NTTO Network Disclosure Offices.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## DOCUMENT CHANGE HISTORY

| Version | Date | Description |
|---|---|---|
| 0.1 | 07/13/2018 | Initial template population (K.Boah) |
| 0.2 | 08/10/2018 | Reviewed ISA  (S. Griffin) |
| 0.3 | 08/28/2018 | ITA Updates (K. Becht) |
| 0.4 | 09/18/2018 | DHS ISA ISSO Review |
| 0.5 | 10/12/2018 | STP Initial review (pak) |
| 0.6 | 11/9/2018 | ITA updates in response to CBP questions (K.Becht) |
| | | |

FOR OFFICIAL USE ONLY

**FOR OFFICIAL USE ONLY**

## CONTENTS

**1.0   PURPOSE** ...................................................................................................................**1**

    1.1    Security Network Connectivity Policy ...................................................... 1

    1.2    ISA Requirements for Types of System Interconnections........................... 2

    1.3    Scope .................................................................................................. 3

    1.4    Point of Contact (POC) ........................................................................ 3

    1.5    References ........................................................................................... 4

**2.0   INTERCONNECTION JUSTIFICATION** ..................................................**5**

**3.0   SECURITY CONSIDERATIONS** ...............................................................**5**

    3.1    General Information/Data Description ...................................................... 5

    3.2    ISA Requirements Within and Across Organizational Boundaries .................. 6

    3.3    Physical Security and Environmental Controls ......................................... 7

    3.4    Data Sensitivity ................................................................................... 8

    3.5    Services Offered .................................................................................. 8

    3.6    Period of Operation ............................................................................. 9

    3.7    User Community .................................................................................. 9

    3.8    Information Exchange Security .............................................................. 9

    3.9    Trusted Behavior / Rules of Behavior .................................................... 10

    3.10   Formal Security Policy ....................................................................... 10

    3.11   Incident Reporting ............................................................................ 10

    3.12   System Monitoring ............................................................................ 11

    3.13   Security Audit Trail Responsibility ...................................................... 11

    3.14   Specific Equipment/Service Restrictions............................................... 12

    3.15   Dial-Up/Remote Connectivity ............................................................ 12

    3.16   Training and Awareness ..................................................................... 12

    3.17   Security Documentation...................................................................... 12

    3.18   Change Control ................................................................................. 13

**4.0   TOPOLOGICAL DRAWING** .....................................................................**14**

**5.0   SIGNATORY AUTHORITY**........................................................................**15**

**ATTACHMENT A:  SYSTEM CONNECTION OVERVIEW**..............................**16**

iii

**FOR OFFICIAL USE ONLY**

FOR OFFICIAL USE ONLY

## 1.0   PURPOSE

This Interconnection Security Agreement (ISA) is required by Federal and Department of Homeland Security (DHS) policy and establishes individual and organizational security responsibilities for the protection and handling of unclassified information between the U.S. Customs and Border Protection (CBP) TECS Arrival and Departure Information System (ADIS) and the Department of Commerce (DOC), International Trade Administration (ITA) National Travel and Tourism Office (NTTO) through the DHS Redundant Trusted Internet Connection (RTIC). Any specific requirements of the three signatory organizations are also included.

## 1.1   Security Network Connectivity Policy

DHS Sensitive Systems Handbook 4300A establishes information security procedures for the DHS components.

The section on network connectivity (Section 5.4.3) states:

a. Components ensure that appropriate identification and authentication controls, audit logging, and access controls are implemented on every network element.

b. Interconnections between DHS and non-DHS systems are established only through the Trusted Internet Connection (TIC) and by approved service providers. The controlled interfaces are authorized at the highest security level of information on the network. Connections with other Federal agencies are documented based on interagency agreements, memorandums of understanding, Service Level Agreements (SLA) or Interconnection Security Agreements (ISA).

c. Components document all interconnections to the DHS OneNet with an ISA signed by the OneNet AO and by each appropriate AO. Additional information on ISAs is published in, "Preparation of Interconnection Security Agreements," Attachment N to the DHS 4300A Sensitive Systems Handbook.

d. ISAs are reissued every three years or whenever any significant changes have been made to any of the interconnected systems.

e. ISAs are reviewed and updated as needed as a part of the annual Federal Information Security Modernization Act of 2014 (FISMA) self-assessment.

f. Components may complete a master Interconnection Security Agreement (ISA) that includes all transitioning systems as part of their initial OneNet transition. After transition, each additional system or General Support System (GSS) is required to have a separate ISA. Interconnections between DHS Components (not including DHS OneNet) requires an ISA whenever there is a difference in the security categorizations for confidentiality, integrity, and availability between the systems or when the systems do not share the same security policies. (In this context, security policies refers to the set of rules that controls a system's working environment, and not to DHS information security policy). ISAs are signed by the appropriate AO.

g. Components document interconnections between their own and external (non-DHS) networks with an ISA for each connection.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

h. The DHS Chief Information Officer (CIO) approves all interconnections between DHS enterprise-level information systems and non-DHS information systems. The DHS CIO ensures that connections with other Federal Government agencies are properly documented. A single ISA may be used for multiple connections provided that the security authorization is the same for all connections covered by that ISA.

NTTO

Section 2.7.d of the *DOC ITA Policy for Network Connectivity* states:

"Providers of external information system services shall comply with organizational information security requirements and employ, as appropriate and applicable, National Institute of Standards and Technologies (NIST) 800-53 (series) or FedRAMP controls in accordance with applicable federal laws, Executive Orders, directives, policies, regulations, standards, and guidance. Providers of external information system services shall employ, as applicable, the following processes, methods, and techniques to monitor security control compliance:

- Scan operating systems/infrastructure monthly and provide scan reports to the Information System Security Officer (ISSO)

- Scan web applications and databases quarterly and provide scan reports to the ISSO

- Update vulnerability signatures to the most current version before running a scan - Mitigate all discovered high-risk vulnerabilities within 30 days and provide mitigation evidence artifacts to the ISSO

- Mitigate all discovered moderate-risk vulnerabilities within 90 days and provide mitigation evidence artifacts to the ISSO

- Mitigate all discovered low-risk vulnerabilities within 180 days and provide mitigation evidence artifacts to the ISSO

- Update the Plan of Action and Milestones (POA&M), based on findings from security assessments, security impact analyses, risk assessments, continuous monitoring activities and any other indications of a security weakness, as needed and submit it to the ISSO quarterly. DOC ITA requires providers of external information system services (e.g., cloud services) to identify the functions, ports, protocols, and other services required for the use of such services and that such information is documented in an Interconnection Security Agreement (ISA) and Memorandum of Agreement (MOA).

The ISA defines the data exchange requirements between DOC ITA and an external organization, the communication path (with demarcation points defining each organization's area of responsibility), data handling, protection requirements (i.e., encryption), and procedures for the effective transmittal of sensitive data and related information. The MOA is a companion document to the ISA to establish an agreement between DOC ITA and an external organization regarding the development, management, operation, and security of a connection between systems independently managed by each party to the agreement."

## 1.2    ISA Requirements for Types of System Interconnections

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

System interconnections may be characterized as either direct or networked. Direct connections are single purpose point-to-point connections that support only the two connected systems. Directly connected systems do not rely on another network for their connectivity or security and are physically and electronically isolated from other networks and systems. Networked systems connect via an intervening network that exists as a general support system, not a single-purpose connection. Systems that are connected via an encrypted tunnel, whether on HSDN (Homeland Security Data Network) or any other network, are considered networked systems.

For networked U.S. Government systems, the ISA must include the owner and AO (Authorizing Official) of the network, as well as the owners of the applicable systems.

### 1.3    Scope

This interconnection security agreement addresses the interconnection between CBP ADIS and DOC ITA NTTO by way of the DHS RTIC extranet infrastructure. The connection is established through a secure VPN Connection. Additionally, the ISA covers application and/or control data traversing the networks.

### 1.4    Point of Contact (POC)

For all issues associated with this agreement, the established points of contact are as follows:

| DHS CBP TECS | Department of Commerce (DOC) International Trade Administration (ITA) National Travel and Tourism Office (NTTO) | DHS OneNet Redundant Trusted Internet Connection |
|---|---|---|
| **Authorizing Official:**<br><br>Phillip A. Landfried<br>Assistant Commissioner<br>Office of Information and Technology<br>Phone: ▮▮▮▮▮▮<br>▮▮▮▮▮▮@cbp.dhs.gov | **Authorizing Official:**<br><br>Andre Mendes<br>Chief Information Officer (CIO)<br>Phone:202-482-2801<br>Andre.Mendes@trade.gov<br>2/5/19 | **Authorizing Official:**<br><br>Paul Beckman<br>DHS CISO, OCIO<br>Phone: ▮▮▮▮▮▮<br>▮▮▮▮@hq.dhs.gov |
| **System Owner:**<br><br>Ken Oppenheimer<br>Director, Technical Integration Division<br>Passenger Systems Program Directorate (PSPD)<br>Phone: ▮▮▮▮▮▮<br>▮▮▮▮@cbp.dhs.gov | **System Owner:**<br><br>Chuck Hicks<br>Deputy Director, Operations<br>Phone: 202-482-0450<br>Chuck.Hicks@trade.gov | **System Owner:**<br><br>Brian Ogle<br>Director, DHS RTIC<br>Phone: ▮▮▮▮▮▮<br>▮▮▮▮@hq.dhs.gov |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| ISSO: | ISSO: | ISSO: |
|---|---|---|
| Jermaine Gray Information System Security Officer Phone: ███████ ████@cbp.dhs.gov | Marques Young Information System Security Officer Phone:202-482-5188 Marques.Young@trade.gov | Bruce Summers DHS OneNet ISSO Phone: ███████ ████@associates.hq.dhs.gov |
| ISSM: | ISSM: | ISSM: |
| Nick D. Moore Information System Security Manager Phone: ███████ ████@cbp.dhs.gov | Angenette Cash Information System Security Manager Phone:202-482-6048 Angenette.Cash@trade.gov | Jeremy Tucker Information System Security Manager Phone: ███████ ████@hq.dhs.gov |
| CISO: | CISO: | CISO: |
| Alma R. Cole Chief Information Security Officer Phone: ███████ ████@cbp.dhs.gov | Joe Ramsey Director of IT Security/ Chief Information Security Officer (CISO) Phone:202-482-2785 Joe.Ramsey@trade.gov | LaMonte Yarborough DHS HQ CISO Phone: ███████ ████@hq.dhs.gov |
| Program Manager: | Program Managers: | Program Manager: |
| Jun Kong ADIS Program Manager Phone: ███████ ████@cbp.dhs.gov | Claudia Wolfe Program Manager/Economist Phone: 202-482-4555 Claudia.Wolfe@trade.gov  Richard Champley Senior Research Analyst Phone: 202-482-4753 Richard.Champley@trade.gov | Brian Ogle Director, DHS RTIC Phone: ███████ ████@hq.dhs.gov |

## 1.5    References

The documents that served as the primary source for this ISA are the two following National Institute of Standards and Technology (NIST) Special Publications, as well as the IT Security Policy Handbooks Guides, and Manuals of DHS, and DOC ITA NTTO:

- NIST Special Publication (SP) 800-47, *Security Guide for Interconnecting Information Technology Systems.* August 2002.

- NIST Information Technology Laborator (ITL) Bulletin, *Secure Interconnections for Information Technology Systems.* February 2003.

- NIST SP 800-53, Rev. 4, *Security and Privacy Controls for Federal Information Systems and Organization.* April 2014.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- NIST SP 800-53A, Rev. 4, *Assessing Secuirty and Privacy Controls in Federal Information Systems and Organizations: Building Effective Assessment Plans,* December 18, 2014.
- *DHS Sensitive Systems Policy Directive 4300A,* Version 13.1, July 27, 2017.
- *DHS 4300A Sensitive Systems Handbook,* Version 12.0, Novermber 15, 2015
- *DHS 4300A Sensitive Systems Handbook, Attachment N,  Preparation of Interconnection Security Agreements*, Version 11.0, August 5, 2014.
- *DHS 4300A Sensitive Systems Handbook, Attachment F, DHS, Incident Response*, Version 12.0, July 30, 2018.
- *CBP HB 1400-05D Information Systems Security Policies and Procedures Handbook*

In addition to the DHS references above, the following are DOC ITA reference documents:

- DOC ITA Security Program Policies Version 2.0, September 23, 2013

## 2.0   INTERCONNECTION JUSTIFICATION

The requirements for interconnection between the two systems is for the express purpose of transmitting electronic I-94 program data between the CBP ADIS owned and operated by CBP, and the I-94 program owned by DOC ITA NTTO. The DOC ITA NTTO requires the use of the DHS RTIC, owned and operated by DHS OCIO, as a transport system for wide area network (WAN) services and interconnectivity to the DHS infrastructure. The transfer will be a one-way transmission of flat files from CBP ADIS to DOC ITA's secure file transfer protocol (SFTP) site.

## 3.0   SECURITY CONSIDERATIONS

This section describes the security mechanisms in place to secure the connections between both systems. It outlines what the security considerations are and which organization is responsible for each.  In some cases, both organizations will share security responsibility.

### 3.1   General Information/Data Description

The purpose of the interconnection between CBP ADIS and DOC ITA NTTO is to send data to NTTO from CBP ADIS.  The data traversing the networks will be limited to CBP and DOC ITA network unclassified operational and administrative data.

The interconnection between the CBP and the DOC ITA through the DHS RTIC Extranet will be via IPSec AES-256 encrypted tunnels and will utilize the dynamic BGP (Border Gateway Protocol) routing protocol in providing routing/geographic failover and redundancy. Within these encrypted GRE (Generic Routing Encapsulating) tunnels, the DHS RTIC Extranet will also establish IPSec AES-256 encrypted GRE tunnels in routing data to the DOC ITA network.

The sharing of data between these entities is covered in the Memorandum of Agreement (MOU) between DHS CBP and DOC ITA NTTO.  The types of data being exchanged are I-94 program data which consists of 100% of all overseas and Mexico-Air data.  Mandatory data elements include: country of residence for arrival and departure; country of citizenship for arrival and departure; U.S. port of

5

FOR OFFICIAL USE ONLY

customs for arrival, including re-code foreign pre-clearance to first U.S. airport (U.S. arrival location); port of departure, outbound: select demographics (age, gender) and mode of transport (air, sea, land); class of admission (visa type, non-immigrants types); first address (State and City); admission date; departure date; air carrier name/(code) on arrival and if departure by air; flight number on arrival and if departure by air, nationality, and passport issuing country. NTTO is in the process of requesting two additional data elements: to flag in-transit travelers and provide Student and Exchange Visitor Information System (SEVIS) data. SEVIS is a web-based system that DHS uses to maintain information regarding the legal entry and stay of more than one million F (non-immigrant visa issued by the United States to students attending a full-time degree or academic program at a school, college, or university). M (non-immigrant visa issued by the United States to students enrolled in non-academic or vocational study), and J (non-immigrant <u>visa</u> issued by the <u>United States</u> to research scholars, <u>professors</u>, and exchange visitors participating in programs that promote <u>cultural exchange</u>, especially to obtain medical or business training within the United States) nonimmigrants coming to the United States for educational and cultural exchange programs. These data do not include any Personally Identifiable Information (PII) or sensitive trade business information.

<u>Privacy Training Requirements</u>

All Contractor and subcontractor employees that will have access to Personally Identifiable Information (PII) and/or Sensitive PII (SPII) are required to take Privacy at DHS: Protecting Personal Information before accessing PII and/or SPII. The training is accessible at http://www.dhs.gov/dhs-security-and-training-requirements-contractors. Training shall be completed within thirty (30) days of contract award and be completed on an annual basis thereafter not later than October 31 of each year. Any new Contractor employee assigned to the contract shall also complete the training before accessing PII and/or SPII. The Contractor shall maintain copies of training certificates for all Contractor and subcontractor employees as a record of compliance. Initial training certificates for each Contractor and subcontractor employee shall be provided to the COR (Contracting Officer Representative) not later than thirty (30) days after contract award. Subsequent training certificates to satisfy the annual training requirement shall be submitted to the COR via e-mail notification not later than October 31st of each year. The e-mail notification shall state the required training has been completed for all Contractor and subcontractor employees.

## 3.2    ISA Requirements Within and Across Organizational Boundaries

The DHS RTIC is owned, operated and managed by DHS Office of the Chief Information Officer (OCIO)/Enterprise Service Division (ESD). All DHS RTIC Information Technology (IT) equipment interconnected with the CBP Network within the boundary of the CBP Network is owned, operated and maintained by CBP contracted services or government employees. All CBP Network IT equipment interconnected with the DHS OneNet RTIC at the Data Centers will be hardened, at a minimum, per DHS 4300A hardening guidelines or per specific waivers to hardening guidelines requested, documented, and approved by the appropriate ISSM.

The DHS RTIC and the DOC ITA Network shall protect the data in order to maintain confidentiality, integrity, and availability of the data and information systems. The data and information systems will be protected in accordance with the DHS Sensitive Systems Policy Directive 4300A, the NIST SP 800-53 assigned minimum security controls, and the FIPS 199 Security Categorization of both/all systems to ensure that the connection will be protected to the requirements of the higher categorized system. The

FOR OFFICIAL USE ONLY

DHS RTIC is categorized as: Availability = High, Confidentiality = High, and Integrity = High. The ADIS is categorized as: Availability = High, Confidentiality = High, and Integrity = High, as defined by NIST Federal Information Processing Standard (FIPS) FIPS-199 and documented in the DHS IACS. DOC ITA is categorized as: Availability = Moderate, Confidentiality = Moderate, and Integrity = Moderate.

ADIS and DOC ITA NTTO were issued an Authorization to Operate (ATO)/OA:

| System | Autorization to Operate (ATO) | On going Authorization (OA) |
|---|---|---|
| TECS ADIS | Dec 11, 2017 | |
| DOC ITA | Nov 7, 2016 | |

## 3.3   Physical Security and Environmental Controls

For DHS controlled equipment and environments, physical Security, at a minimum will be governed by DHS 4300A Sensitive Systems Policy Section 4.2 "IT Physical Security," and NIST SP 800-53 controls. DHS shall provide physical and system environmental safeguards adequate to provide protection of the system components.

The CBP PSPD systems' servers are located at the National Data Center (NDC) in Springfield, VA. CBP PSPD systems are accredited to ensure adequate physical and environmental controls have been implemented for the system. Physical Security, at a minimum, will be governed by DHS Sensitive Systems Policy Handbook 4300A Section 4.2 "IT Physical Security," and NIST SP 800-53 controls.

The NDC complex is a 24x7x365 guarded facility with a physical security intrusion detection system that monitors doors, ceilings and windows. NDC is under 24-hour video surveillance and surrounded by a chain-link fence with barbed wire and motion sensors. NDC systems are protected from power failures by back-up power generators. NDC has fire detection and suppression system installed throughout the building including the server rooms. CBP maintains a physically secure facility where access to the building is controlled by restricted access, and visitors are required to be escorted at all times.

<u>DOC Office of Security (OSY) Policy for Physical Security</u>

DOC ITA is currently hosting all non-Saas (Software as a Service) infrastructure in the Amazon Web Services (AWS) cloud. AWS US East/West leverages the Infrastructure-as-a-Service (IaaS) cloud computing model as defined by the NIST Special Publication 800-145 (September 2011). The IaaS model enables convenient, on-demand Internet access to a shared pool of configurable AWS computing resources such as servers, storage, network infrastructure, applications, and other services. AWS provides facilities and hardware in support of the AWS US East/West services with security features controlled by AWS at the infrastructure level. In the IaaS model, AWS is responsible for applicable service delivery layers including: infrastructure (i.e., hardware and software that comprise the infrastructure); and service management processes (i.e., the operation and management of the infrastructure and the system and software engineering lifecycles). Customers rely on AWS to manage the cloud infrastructure including the network, data storage, system resources, data centers, physical security, reliability, and supporting hardware and software.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 3.4 Data Sensitivity

All data traversing this connection are presumed Sensitive, but Unclassified (SBU), and includes data that is, but not limited to, Sensitive Personally Identifiable Information, For Official Use Only, and/or Law Enforcement Sensitive.

The highest level of data that traverses the DHS RTIC and CBP is Sensitive but Unclassified (SBU).

### Table 1: FIPS 199 Security Categorization

| System | Confidentiality | Integrity | Availability | Overall |
|---|---|---|---|---|
| TECS ADIS | HIGH | HIGH | HIGH | HIGH |
| DOC ITA Network | MODERATE | MODERATE | MODERATE | MODERATE |
| DHS RTIC | HIGH | HIGH | HIGH | HIGH |

Security measures are in place to protect all data transiting the DHS RTIC Extranet, as required by the Office of Management and Budget (OMB). The drawings provided in this document identify the layered approach to security at the RTIC in section 4.0 of this document.

## 3.5 Services Offered

The interconnection between the CBP and the DOC ITA Network connected through the DHS RTIC are supported by Multiprotocol Label Switching (MPLS) at the RTIC. DHS OneNet transport services utilize MPLS and Dynamic Multipoint Virtual Private Network (DMVPN) technologies. The DHS RTIC provides WAN connectivity services, Internet services, and perimeter security protection to CBP ADIS.

The interconnection between CBP ADIS and the DOC ITA Network via the DHS RTIC is supported by secure Web services and/or SFTP. CBP provides secure Web services and/or SFTP hosted in the CBP DMZ and accessible over the Internet to the DOC ITA Network. The DOC ITA Network will be provided visibility to the CBP DMZ only for specific authorized client Internet Protocol (IP) addresses. Likewise, the DOC ITA Network will provide secure Web services and/or SFTP that would be invoked by CBP. The Advanced Encryption Standard (AES) will be used at the 256 bit level at the line level Transport Level Security 1.2 (TLS). TLS is used to encrypt the segments of network connections above the Transport Layer, using symmetric cryptography for privacy and a keyed message authentication code for message reliability. A unique authentication token (currently a user ID and password) will be assigned to the DOC ITA Network.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

Services and ports that are needed to access the DHS systems are listed in Attachment A: System Connection Overview, DHS RTIC, CBP and DOC ITA, allowed Ports, Protocols & Services.

## 3.6    Period of Operation

CBP and the DOC ITA systems are operational 24 hours a day, 7 days a week.

## 3.7    User Community

The CBP user community is mainly comprised of officers, government employees, and contractors, all with a favorably completed Background Investigation (BI). Additionally, other users may include employees or contractors of other DHS Components and other Federal agencies. All CBP users will have appropriately adjudicated suitability background investigations and will be U.S. citizens.

## DOD ITA

The ITA user community is mainly comprised of government employees and contractors.

## 3.8    Information Exchange Security

Information exchange will be encrypted using a FIPS 140-2 compliant SSH File Transfer Protocol (SFTP) with AES-256 bit ciphers to secure the connection.

Dynamic Multipoint Virtual Private Network (DMVPN) provides a mechanism for the dynamic negotiation of IPSec encrypted tunnels between any two endpoints, alleviating the need for complex router configurations.

DHS RTIC maintains the following Intrusion Detection System (IDS)/Intrusion Protection System (IPS) and firewalls on the DHS RTIC:

Please contact the DHS SOC at 1-877-347-1638, email: dhs.soc@dhs.gov for all IDS/IPS and firewalls on the DHS RTIC.


Please contact DOC ITA's Network Operations Center (NOC) at csc@trade.gov or Chuck Hicks at Chuck.Hicks@trade.gov, 202-482-0450 for all IDS/IPS and firewalls on the DOC ITA Network.

Specific protocols and ports that are needed to support this interconnection are provided in attachment A. Ports and protocols not specifically defined in Attachment A will be approved by DHS firewall change control procedures.

Both organizations will ensure that virus and spyware detection and eradication capabilities are used where appropriate (e.g., workstations, laptops, servers, etc.) and that adequate system access controls are in place and maintained on all components connected to the systems.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 3.9    Trusted Behavior / Rules of Behavior (RoB)

The CBP and DOC ITA network users, to include system administrators, are expected to protect data in accordance with the policies, standards, and regulations specified for each system.  This includes CBP and DOC ITA network policy and the documented rules of behavior for each system.

**DOC ITA**

DOC ITA Security Rules of Behavior, October 3, 2014.

The *DHS 4300A Sensitive Systems Handbook, Attachment G, Rules of Behavior* as specified by the DHS CISO applies to both systems.

## 3.10    Formal Security Policy

Policy documents that govern the protection of the data between the two organizations' systems are:

- *NIST SP 800-47, Security Guide for Interconnecting Information Technology Systems*, August 2002.
- *DHS Sensitive Systems Policy Directive 4300A,* Version 13.1, July 27, 2017.
- *DHS 4300A Sensitive Systems Handbook*, Version 12.0, November 15, 2015.
- *DHS 4300A Sensitive Systems Handbook, Attachment D Type Accreditation.* Version 11.0, August 5, 2015.
- *DHS 4300A Sensitive Systems Handbook, Attachment F, DHS, Incident Response*, 12.0, November 15, 2015.
- *DHS 4300A Sensitive Systems Handbook, Attachment O, Vulnerability Assessment Program*, Attachment O, Version 9.1, July 24, 2012.

**DOC ITA:**

- DOC ITA Security Program Policies, Version 2.0, September 23, 2013

## 3.11    Incident Reporting

The organization discovering a security incident will report it internally, in accordance with the organization's incident reporting procedures.  Each organization will ensure that the other connecting organization is notified when security incidents may have affected the confidentiality, integrity or availability of the shared data or systems being accessed.

### Table 3: Points of Contact for Incident Reporting

| Contact Group | Phone/Email | Hours |
|---|---|---|

---

10

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| DHS Network Operations Center (NOC) and Computer Incident Security Reporting Center (CSIRC)/Security Operations Center (SOC) | 1-877-DHS1NET or 1-877-347-1638 (Option 1 = NOC, Option 2 = SOC) | 24 x 7 x 365 |
|---|---|---|
| DHS CBP | (703) 921-6507 CBPSOC@cbp.dhs.gov | 24 x 7 x 365 |
| DOC/ITA | 202-482-0955 CSC@trade.gov | 24 x 7 x 365 |

## 3.12   System Monitoring

DHS RTIC IDS/IPS & Firewalls: Please contact the DHS SOC at 1-877-DHS1NET or 1-877-347-1638 (Option 2). dhs.soc@hq.dhs.gov for details on the DHS monitoring security vulnerabilities and compliance.

DHS RTIC performance and monitoring: Please contact the DHS SOC at 1-877-DHS1NET or 1-877-347-1638, dhs.soc@hq.dhs.gov for details on the DHS security monitoring tools:

Information provided upon request. The POC is CSIRC 1-877-DHS1NET or 1-877-347-1638 (Option 2).

## CBP

CPB IDS/IPS & Firewalls: Please contact the CBP SOC at (703) 921-6507, CBPSOC@cbp.dhs.gov for details on the CBP monitoring security vulnerabilities and compliance.

CBP performance and monitoring: Please contact the CBP SOC at (703) 921-6507, CBPSOC@cbp.dhs.gov for details on the CBP security monitoring tools.

Information provided upon request. The POC is CBPSOC@cbp.dhs.gov (703) 921-6507.

## DOC ITA

Please contact ITA Information Security at 202-482-3801 or mailto:OpSec@trade.gov for details on ITA compliance, vulnerability assessment, or event monitoring. For network performance information please contact 202-482-3801 or ITA-NOC@trade.gov.

## 3.13   Security Audit Trail Responsibility

Both parties are responsible for auditing system security events and user activities involving the interconnection. Activities that will be recorded include:

- event type
- date and time of event

FOR OFFICIAL USE ONLY

- user identification
- workstation/server identification
- success or failure of access attempts
- security actions taken by system administrators or ISSOs

Given the voluminous nature of audit logs, the logs should be kept at a manageable size by setting logging levels appropriately. Automated tools will be used for scanning for anomalies, unusual patterns, and known attack signatures, and will be configured to alert a system administrator if a threat is detected. An experienced system administrator or security manager will periodically review the logs to detect patterns of suspicious activity that scanning tools may not recognize.

Audit logs will be retained for 90 days on-line and available for at least three (3) years offline.

## 3.14   Specific Equipment/Service Restrictions

The use of specific prohibited or restricted services, protocols, and ports listed in the DHS 4300A System Security Handbook (SSH) require an approved waiver or exception agreement between the system AOs. Any additional interconnections to either system shall be documented in the appropriate security documentation and each party shall be notified of the new interconnections.

DOC ITA is currently hosting all non-Saas (Software as a Service) infrastructure in the Amazon Web Services (AWS) cloud.

## 3.15   Dial-Up/Remote Connectivity

There is no remote dial-up to this system. All access is via network connectivity through secure connections.

## 3.16   Training and Awareness

Both parties will ensure that all individuals using the systems (i.e., CBP and DOC ITA network) have attended initial basic and annual refresher Cyber Security Awareness and Training. Both parties will ensure that persons with significant security responsibilities for the systems receive annual role based training covering their specific areas of responsibility. This training should ensure that staff members know how to report suspicious or prohibited activities.

## 3.17   Security Documentation

Security Documentation (SA) documentation will be updated to reflect the establishment of this interconnection and whenever a significant system change occurs or at least annually. This ISA will be updated should any of the information contained within change. The following information, at a minimum, will be accurately maintained within this ISA:

- Names of interconnected systems
- Organizations owning the other systems
- Type of interconnection

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- Name and title of authorizing management officials (e.g. Chief Information Officer or Designated Authorizing Authority)
- Interaction among the systems

All future changes relating to the security architecture of either system will be updated within the corresponding security documents.

## 3.18   Change Control

Significant changes to the system architecture, documentation, or configurations will be reviewed, approved and documented in accordance with each organization's configuration/change control process. Each organization will notify the other if a system change significantly changes the approved security posture of the system or introduces new significant residual risk to either system.   Whenever significant changes are made at one or both organizations, e.g., through additional staff, service, etc., this ISA will be updated.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 4.0    TOPOLOGICAL DRAWING

An architecture diagram showing the system interconnection is contained in Attachment B.  The diagrams shall illustrate all communication paths, circuits, and other components used for the interconnection.



Department of Commerce (DoC) (ITA/NTTO) Logical Connection to DHS Data Center RTIC Internet VPN Endpoints

Author:   DHS/CBP Network Engineering
Date:        September 11, 2018
Revision: 1

---

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 5.0    SIGNATORY AUTHORITY

This ISA is valid for three (3) years after the latest date on the signatures listed below, if the technology documented herein does not change or if there are no other intervening requirements for updates.  At that time it must be reviewed, updated, and reauthorized.  The security controls for this interconnection will be reviewed at least annually or whenever a significant change occurs.  Either party may terminate this agreement with thirty days advanced notice.  Noncompliance on the part of either organization or its users or contractors with regards to security policies, standards, and procedures explained herein may result in the immediate termination of this agreement.

| | |
|---|---|
| **Phillip A. Landfried** <br> Assistant Commissioner <br> Office of Information and Technology <br> U.S. Customs and Border Protection | *12/11/18* |
| | Signature          Date |
| **DOC ITA AWS AO** <br> Andre' Mendes <br> Chief Information Officer <br> Office of the Chief Information Officer <br> International Trade Administration <br> U.S. Department of Commerce | *2/5/19* |
| | Signature          Date |
| **Paul Beckman** <br> Chief Information Security Officer <br> Office of the Chief Information Officer <br> U.S. Department of Homeland Security | |
| | Signature          Date |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

# ATTACHMENT A: SYSTEM CONNECTION OVERVIEW

**DHS RTIC, CBP, and DOC ITA, allowed Ports, Protocols & Services**

The following ports, protocols, and services are allowed between DHS RTIC, CBP, and DOC ITA, Network, and Security Domains by default.

|  | **CBP ADIS** | **DOD ITA** |
|---|---|---|
| Port Number (Server / Destination | 21 | Web Services on 443 SFTP on 22, 2201, 2202 |
| IP Protocol (TCP/UDP) | TCP | TCP |
| Software Application | SFTP | SFTP |
| PII Data?  (Yes/No) | Yes | No |
| IBI Data?  (Yes/No) | No | No |
| Financial Data? (Yes/No) | No | No |
| Encryption Used | TLS 1.2 | TLS 1.2 |

FOR OFFICIAL USE ONLY

**DEPARTMENT OF HOMELAND SECURITY**
**U.S. Customs and Border Protection**

☐ Congressional   ☐ DHS   ☐ Routine
☐ FYI   ☒ Signature Package

## DOCUMENT ROUTING FORM

| FROM | Writer's Name<br>Pete Kuempel | Office<br>OIT/CSD/STP | OES CBPT2 Tracking No. | |
|---|---|---|---|---|
| | Telephone No. | Room | Subject: ISA-2018-09-356 TECS ADIS & DOC ITA NTTO | |

| Destination | Initials | Date | Comments – Commissioner's Staff Only |
|---|---|---|---|
| Commissioner | | | |
| Deputy Commissioner | | | |
| Chief of Staff | | | |
| Deputy Chief of Staff | | | |
| Deputy Chief of Staff for Policy | | | |
| CoS to the Deputy Commissioner | | | |
| Advisor | | | |
| OES Director | | | |
| OES Writer-Editor | | | |

| To | Office | Initials/Date | To | Office | Initials/Date | To | Office | Initials/Date |
|---|---|---|---|---|---|---|---|---|
| | **Air and Marine Operations** | | | **Enterprise Services** | | | **Operations Support** | |
| | Executive AC | | | Executive AC | | | Executive AC | |
| | | | | | | | | |
| | | | | **Office of Finance** | | | **Office of International Affairs** | |
| | | | | Chief Financial Officer | | | Asst. Commissioner | |
| | **Office of Field Operations** | | | | | | | |
| | Executive AC | | | | | | | |
| | | | | **Office of Accountability** | | | **Office of Intelligence** | |
| | | | | Chief Accountability Officer | | | Asst. Commissioner | |
| | **U.S. Border Patrol** | | | **Office of Programming** | | | | |
| | Chief | | | Chief Programming Officer | | | | |
| | | | | | | | **Policy Directorate** | |
| | | | | | | | Executive Director | |
| | | | | **Office of Facilities & Asset Mgmt** | | | **Planning, Analysis & Requirements Evaluations Directorate** | |
| | **Office of Trade** | | | Asst. Commissioner | | | | |
| | Executive AC | | | | | | Executive Director | |
| | | | | **Office of Acquisition** | | | **Laboratories & Scientific Services Dir.** | |
| | | | | Asst. Commissioner | | | Executive Director | |
| | | | | | | | **Information & Incident Coordination Center** | |
| | **Office of Chief Counsel** | | | **Office of Information & Technology** | | | Director | |
| | | | 4 | Asst. Commissioner | | | **Law Enforcement Officer/Agent Safety & Compliance Directorate** | |
| | | | 3 | CSD XD | | | Director | |
| | | | 2 | STP Director | | | | |
| | **Office of Congressional Affairs** | | | **Office of Training & Development** | | | **Office Comments** | |
| | Asst. Commissioner | | | Asst. Commissioner | | 1 | STP SA Lead | RU1N2№ |
| | **Office of Professional Responsibility** | | | **Office of Human Resources** | | | | |
| | Asst. Commissioner | | | Asst. Commissioner | | | | |
| | **Office of Public Affairs** | | | | | | | |
| | Asst. Commissioner | | | | | | | |
| | | | | **Intergovernmental Public Liaison** | | | | |
| | | | | Executive Director | | | | |
| | **Privacy and Diversity Office** | | | **Office of Trade Relations** | | | | |
| | Executive Director | | | Senior Advisor | | | | |

CBP-HQ Form 123 (08/16)

# Attachment 6

| DHS Office of the Chief Information Officer ROUTING AND TRANSMITTAL SLIP | DATE:  April 1, 2020 | |
|---|---|---|
| | **Initial Approval or Comment** | **Date:** |
| 1.   Jeremy Tucker, ISSM, Portfolio Management, OCISO | | |
| 2.   Robert Walther, Director of PMD, OCISO | | |
| 3.   Hemant Baidwan, Deputy DHS CISO (A), OCIO | | |
| 4.   Thresa Lang, DHS CISO (A), OCIO | | |

**Subject:** *Interconnection Security Agreement between the U.S. Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) Arrival and Departure Information System (ADIS) and the U.S. Department of Commerce (DOC) International Trade Administration (ITA) U.S. International Air Travel Statistics (USIATS) System via the DHS Redundant Trusted Internet Connection (RTIC).*

| | Action | | File | | Note and Return |
|---|---|---|---|---|---|
| | Approval | | For Review | | Per Conversation |
| | As Requested | | For Correction | | Prepare Reply |
| | Circulate | | FYI | | See Me |
| | Comment | | Investigate | X | Signature |
| | Coordination | | Justify | | Concurrence |

**Document Overview:** Interconnection Security Agreement between the U.S. Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) Arrival and Departure Information System (ADIS) and the U.S. Department of Commerce (DOC) International Trade Administration (ITA) U.S. International Air Travel Statistics (USIATS) System via the DHS Redundant Trusted Internet Connection (RTIC).

**Actions Required:** Requesting review / approvals.   [*2020-0045*]

**Next Steps: Please contact April Yakupkovic @** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **@hq.dhs.gov, after approval.**

**Due Date:** April 15, 2020

| RESPECTFULLY SUBMITTED BY:  April Yakupkovic<br>**NAME: Room No.** ▮▮▮  7&D Street, Washington, DC, MS0136<br>**Phone No.:** ▮▮▮▮▮ | **Requested Priority Level** | |
|---|---|---|
| | | Urgent |
| | | Expedite |
| | X | Regular |

# Interconnection Security Agreement Checklist

| ISA INFO / TYPE | |
|---|---|
| **ISA Name:** | Interconnection Security Agreement between the U.S. Department of Homeland Security (DHS) U.S. Customs and Border Protection (CBP) Arrival and Departure Information System (ADIS) and the U.S. Department of Commerce (DOC) International Trade Administration (ITA) U.S. International Air Travel Statistics (USIATS) System via the DHS Redundant Trusted Internet Connection (RTIC) |
| **ISA Type:** *[standard; Master; Internat'l Addendum]* | Standard |
| **Connection Type:**   *[VPN/MPLS]* | VPN |
| **Connection Via:**   *[DHS RTIC/ Onenet]* | DHS RTIC |

| ISA ENTITIES | | | |
|---|---|---|---|
| **ISA Entities:** *[DHS-Fed; DHS-EIS; DHS-PGA; DHS-CSP]* | | DHS-Fed | |
| **DHS Component** | CBP | **External Entity** | DoC |

| ISA PURPOSE: |
|---|
| For the express purpose of sharing APIS data collected by commercial airlines and private planes embarking and debarking passengers in the United States from the CBP I-92 form between the CBP ADIS, owned and operated by CBP, and the DOC ITA USIATS, owned by DOC. |

| FLAGS |
|---|
| |

| ISA SYSTEM INFORMATION | | | |
|---|---|---|---|
| **DHS System Name:** | **ATO Date** | **External Info. System Name** | **ATO Date** |
| CBP ADIS | September 11, 2019 | DoC ITA USIATS | August 10, 2018 |

| ISA DATA TRANSFER | | | | | |
|---|---|---|---|---|---|
| **PII:** *[Y/N]* | N | **Data Transfer:** *[Push/Pull/Bi-directional]* | Bi-directional | **Connection Monitored** | Y |
| **ATO on File:** *[EIS Only]* | | | | | |

FOR OFFICIAL USE ONLY



# Interconnection Security Agreement
# between the
# U.S. Department of Homeland Security (DHS)
# U.S. Customs and Border Protection (CBP)
# and the
# U.S. Department of Commerce (DOC)
# International Trade Administration (ITA)
# via the
# DHS Redundant Trusted Internet Connection
# (DHS RTIC)

# Arrival and Departure Information System (ADIS)
# and
# U.S. International Air Travel Statistics (USIATS)
# System

Version 1.0

March 20, 2020

ISA-2019-03-131

**WARNING:** This document is FOR OFFICIAL USE ONLY (FOUO).  It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552).  It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of the DHS OneNet RTIC, CBP, and the ITA Network Disclosure Offices.

FOR OFFICIAL USE ONLY

**FOR OFFICIAL USE ONLY**

## DOCUMENT CHANGE HISTORY

| Version | Date | Description |
|---|---|---|
| 0.1 | December 12, 2018 | *Initial Template Population (S. Griffin)* |
| 0.2 | February 6, 2019 | ITA/TSI and ITA/NTTO Updates (K. Becht, R. Champley, C. Wolfe) |
| 0.3 | March 19, 2019 | DHS ISA ISSO review |
| 0.4 | June 27, 2019 | STP Review |
| 0.5 | July 17, 2019 | ITA Review and Comment (K. Becht, R. Champley, C. Wolfe) |
| 1.0 | March 20, 2020 | Finalize for signatures |

**FOR OFFICIAL USE ONLY**

FOR OFFICIAL USE ONLY

## CONTENTS

**1.0 PURPOSE** ...................................................................................................1

1.1 Security Network Connectivity Policy ...................................................... 1

1.2 ISA Requirements for Types of System Interconnections......................... 3

1.3 Scope........................................................................................................ 3

1.4 Point of Contact (POC) ............................................................................ 3

1.5 References ................................................................................................ 5

**2.0 INTERCONNECTION JUSTIFICATION** .................................................5

**3.0 SECURITY CONSIDERATIONS** ...............................................................6

3.1 General Information/Data Description ...................................................... 6

3.2 ISA Requirements Within and Across Organizational Boundaries ........... 7

3.3 Physical Security and Environmental Controls ........................................ 7

3.4 Data Sensitivity....................................................................................... 8

3.5 Services Offered....................................................................................... 8

3.6 Period of Operation.................................................................................. 9

3.7 User Community ...................................................................................... 9

3.8 Information Exchange Security ................................................................ 9

3.9 Trusted Behavior / Rules of Behavior ..................................................... 10

3.10 Formal Security Policy ............................................................................ 10

3.11 Incident Reporting .................................................................................. 10

3.12 System Monitoring.................................................................................. 11

3.13 Security Audit Trail Responsibility ......................................................... 11

3.14 Specific Equipment/Service Restrictions ................................................ 12

3.15 Dial-Up/Remote Connectivity ................................................................ 12

3.16 Training and Awareness .......................................................................... 12

3.17 Security Documentation........................................................................... 12

3.18 Change Control ....................................................................................... 13

**4.0 TOPOLOGICAL DRAWING** ...................................................................14

**5.0 SIGNATORY AUTHORITY**.....................................................................16

**ATTACHMENT A: SYSTEM CONNECTION OVERVIEW**............................17

iii

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 1.0   PURPOSE

This Interconnection Security Agreement (ISA) is required by Federal and Department of Homeland Security (DHS) policy and establishes individual and organizational security responsibilities for the protection and handling of unclassified information between the Customs and Border Protection (CBP) and the U.S. Department of Commerce (DOC), International Trade Administration (ITA), National Travel and Tourism Office (NTTO) through the DHS Redundant Trusted Internet Connection (RTIC). Any specific requirements of the three signatory organizations are also included.

ITA requires the use of Advanced Passenger Information System (APIS) data, (previously captured from Form I-92, Aircraft/Vessel Report) as an expeditious and cost-effective method of collecting international air traffic data to/from the United States.  APIS data is stored within the Arrival and Departure Information System (ADIS) and transmits data via the Arrival and Departure Information System Reporting (ADIS-R) Interface.  ITA uses APIS data to assist in quantifying international passenger travel and tourism.  These data include aggregate numbers of all inbound passengers flying to the U.S. and all outbound passengers flying from the U.S., both on non-stop flights.  No passenger-specific information such as biographic or PII information is collected (a detailed listing of the data included in the transmission is documented is Appendix B). The data is dependent on commercial airlines and private aircraft operators which are required to submit passenger manifest data (checked in) to U.S. CBP prior to flight departures from foreign locations (inbound to U.S.) and from U.S. airports (outbound from U.S.). ITA has been receiving a monthly APIS 'extract' file from CBP since July 2010. APIS automation replaced the legacy CBP Form I-92, Aircraft/Vessel Report paper-based system.

Arrival and Departure Information System Reporting (ADIS-R)

ADIS-R was designed to provide multi-agency access to a common database of enforcement data supplied by the participating agencies.

ITA U.S. International Air Travel Statistics (USIATS)

ITA's USIATS program is a joint effort between CBP and the National Travel and Tourism Office (NTTO) to provide international air traffic statistics data to the government and the travel industry.  The system is a source of all international flights to and from the U.S., including flights with less than 10 passengers.

## 1.1   Security Network Connectivity Policy

DHS Sensitive Systems Handbook 4300A establishes information security procedures for the DHS components.

The section on network connectivity (Section 5.4.3) states:

a.   Components ensure that appropriate identification and authentication controls, audit logging, and access controls are implemented on every network element.

---

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

b.  Interconnections between DHS and non-DHS systems are established only through the Trusted Internet Connection (TIC) and by approved service providers.  The controlled interfaces are authorized at the highest security level of information on the network.  Connections with other Federal agencies are documented based on interagency agreements, memorandums of understanding, Service Level Agreements (SLA) or Interconnection Security Agreements (ISA).

c.  Components document all interconnections to the DHS OneNet with an ISA signed by the OneNet AO and by each appropriate AO. Additional information on ISAs is published in, "Preparation of Interconnection Security Agreements," Attachment N to the DHS 4300A Sensitive Systems Handbook.

d.  ISAs are reissued every three years or whenever any significant changes has been made to any of the interconnected systems.

e.  ISAs are reviewed and updated as needed as a part of the annual Federal Information Security Modernization Act of 2014 (FISMA) self-assessment.

f.  Components may complete a master Interconnection Security Agreement (ISA) that includes all transitioning systems as part of their initial OneNet transition. After transition, each additional system or General Support System (GSS) is required to have a separate ISA. Interconnections between DHS Components (not including DHS OneNet) requires an ISA whenever there is a difference in the security categorizations for confidentiality, integrity, and availability between the systems or when the systems do not share the same security policies. (In this context, security policies refers to the set of rules that controls a system's working environment, and not to DHS information security policy).  ISAs are signed by the appropriate AO.

g.  Components document interconnections between their own and external (non-DHS) networks with an ISA for each connection.

h.  The DHS Chief Information Officer (CIO) approves all interconnections between DHS enterprise-level information systems and non-DHS information systems.  The DHS CIO ensures that connections with other Federal Government agencies are properly documented.  A single ISA may be used for multiple connections provided that the security authorization is the same for all connections covered by that ISA.

NTTO

Section 2.7.d of the *DOC ITA Policy for Network Connectivity* states:

"Providers of external information system services shall comply with organizational information security requirements and employ, as appropriate and applicable, National Institute of Standards and Technologies (NIST) 800-53 (series) or FedRAMP controls in accordance with applicable federal laws, Executive Orders, directives, policies, regulations, standards, and guidance.  Providers of external information system services shall employ, as applicable, the following processes, methods, and techniques to monitor security control compliance:

-  Scan operating systems/infrastructure monthly and provide scan reports to the Information System Security Officer (ISSO)

-  Scan web applications and databases quarterly and provide scan reports to the ISSO

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- Update vulnerability signatures to the most current version before running a scan - Mitigate all discovered high-risk vulnerabilities within 30 days and provide mitigation evidence artifacts to the ISSO

- Mitigate all discovered moderate-risk vulnerabilities within 90 days and provide mitigation evidence artifacts to the ISSO

- Mitigate all discovered low-risk vulnerabilities within 180 days and provide mitigation evidence artifacts to the ISSO

- Update the Plan of Action and Milestones (POA&M), based on findings from security assessments, security impact analyses, risk assessments, continuous monitoring activities and any other indications of a security weakness, as needed and submit it to the ISSO quarterly. DOC ITA requires providers of external information system services (e.g., cloud services) to identify the functions, ports, protocols, and other services required for the use of such services and that such information is documented in an Interconnection Security Agreement (ISA) and Memorandum of Agreement (MOA)

The ISA defines the data exchange requirements between DOC ITA and an external organization, the communication path (with demarcation points defining each organization's area of responsibility), data handling, protection requirements (i.e., encryption), and procedures for the effective transmittal of sensitive data and related information. The MOA is a companion document to the ISA to establish an agreement between DOC ITA and an external organization regarding the development, management, operation, and security of a connection between systems independently managed by each party to the agreement.

## 1.2    ISA Requirements for Types of System Interconnections

System interconnections may be characterized as either direct or networked.  Direct connections are single purpose point-to-point connections that support only the two connected systems.  Directly connected systems do not rely on another network for their connectivity or security and are physically and electronically isolated from other networks and systems.  Networked systems connect via an intervening network that exists as a general support system, not a single-purpose connection.  Systems that are connected via an encrypted tunnel, whether on HSDN (Homeland Security Data Network) or any other network, are considered networked systems.

For networked U.S. Government systems, the ISA must include the owner and AO (Authorizing Official) of the network, as well as the owners of the applicable systems.

## 1.3    Scope

This interconnection security agreement addresses the interconnection between CBP ADIS/ADIS Reporting Interface (ADIS-R) and ITA's USIATS system by way of the DHS RTIC extranet infrastructure.  The connection is established through a secure VPN.  Additionally, the ISA covers application and/or control data traversing the networks.

## 1.4    Point of Contact (POC)

For all issues associated with this agreement, the established points of contact are as follows:

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| CBP<br><br>ADIS | Department of Commerce (DOC)<br><br>International Trade Administration (ITA) | DHS OneNet Redundant Trusted Internet Connection |
|---|---|---|
| **Authorizing Official:**<br><br>Phillip A. Landfried<br>Assistant Commissioner<br>Office of Information and Technology<br>Phone: ███████<br>████████ cbp.dhs.gov | **Authorizing Official:**<br><br>Andre Mendes<br>Chief Information Officer (CIO)<br>Phone: 202-482-3801<br>Andre.Mendes@trade.gov | **Authorizing Official:**<br><br>Dr. Thresa Lang<br>Acting DHS CISO, OCIO<br>Phone: ███████<br>████████@hq.dhs.gov |
| **System Owner:**<br><br>Ken Oppenheimer<br>Director, Technical Integration Division<br>Passenger Systems Program Directorate (PSPD)<br>Phone: ███████<br>████████@cbp.dhs.gov | **System Owner:**<br><br>Chuck Hicks<br>Deputy Director, Operations<br>Phone: 202-482-0450<br>Chuck.Hicks@trade.gov | **System Owner:**<br><br>Brian Ogle<br>Director, DHS RTIC<br>Phone ███████<br>████████ hq.dhs.gov |
| **ISSO:**<br><br>Seth Hopkins<br>Information System Security Officer<br>Phone: ███████<br>████████ associates.cbp.dhs.gov | **ISSO:**<br><br>Marques Young<br>Information System Security Officer<br>Phone: 202-482-5188<br>Marques.Young@trade.gov | **ISSO:**<br><br>Bruce Summers<br>DHS OneNet ISSO<br>Phone: ███████<br>████████@associates.hq.dhs.gov |
| **ISSM:**<br><br>Nick D. Moore<br>Information System Security Manager<br>Phone: ███████<br>████████ cbp.dhs.gov | **ISSM:**<br><br>Angenette Cash<br>Information System Security Manager<br>Phone: 202-482-6048<br>Angenette.Cash@trade.gov | **ISSM:**<br><br>Jeremy Tucker<br>Information System Security Manager<br>Phone: ███████<br>████████@hq.dhs.gov |
| **CISO:**<br><br>Alma R. Cole<br>Chief Information Security Officer<br>Phone: ███████<br>████████ cbp.dhs.gov | **CISO:**<br><br>Joe Ramsey<br>Director of IT Security/ Chief Information Security Officer (CISO)<br>Phone: 202-482-2785<br>Joe.Ramsey@trade.gov | **CISO:**<br><br>Hemant Baidwan<br>DHS HQ CISO (Acting)<br>Phone: ███████<br>████████@hq.dhs.gov |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| Program Manager: | Program Managers: | Program Manager: |
|---|---|---|
| Rick Hall<br>ADIS Program Manager<br>Phone: ███<br>██████@cbp.dhs.gov<br><br>Kwaku Boah<br>ADIS-R Program Manager<br>Phone: ███<br>████@cbp.dhs.gov | Richard Champley<br>Senior Research Analyst<br>Phone: 202-482-4753<br>Richard.Champley@trade.gov<br><br>Claudia Wolfe<br>Program Manager/Economist<br>Phone: 202-482-4555<br>Claudia.Wolfe@trade.gov | Brian Ogle<br>Director, DHS RTIC<br>Phone: ███<br>███ hq.dhs.gov |

## 1.5   References

The documents that served as the primary source for this ISA are the two following National Institute of Standards and Technology (NIST) Special Publications, as well as the IT Security Policy Handbooks Guides, and Manuals of DHS, and DOC ITA:

- NIST Special Publication (SP) 800-47, *Security Guide for Interconnecting Information Technology Systems,* August 2002
- NIST Information Technology Laborator (ITL) Bulletin, *Secure Interconnections for Information Technology Systems*, February 2003
- NIST SP 800-53, Rev. 4, *Security and Privacy Controls for Federal Information Systems and Organization*, April 2014
- NIST SP 800-53A, Rev. 4, *Assessing Security and Privacy Controls in Federal Information Systems and Organizations: Building Effective Assessment Plans,* December 18, 2014
- *DHS Sensitive Systems Policy Directive 4300A*, Version 13.1, July 27, 2017
- *DHS 4300A Sensitive Systems Handbook*, Version 12.0, November 15, 2015
- *DHS 4300A Sensitive Systems Handbook, Attachment N, Preparation of Interconnection Security Agreements*, Version 11.0, August 5, 2014
- *DHS 4300A Sensitive Systems Handbook, Attachment F, DHS, Incident Response*, Version 12.0, July 30, 2018
- *CBP HB 1400-05D Information Systems Security Policies and Procedures Handbook*

In addition to the DHS references above, the following are DOC ITA reference documents:

- DOC ITA Security Program Policies Version 2.0, September 23, 2013

## 2.0   INTERCONNECTION JUSTIFICATION

The requirements for interconnection between the two systems is for the express purpose of sharing APIS data collected by commercial airlines and private planes embarking and debarking passengers in

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

the United States from the CBP I-92 form between the CBP ADIS, owned and operated by CBP, and the DOC ITA USIATS, owned by DOC. The ITA DOC USIATS requires the use of the DHS RTIC, owned and operated by DHS OCIO, as a transport system for wide area network (WAN) services and interconnectivity to the DHS infrastructure. The transfer will be a one-way transmission of flat files from CBP ADIS-R to DOC ITA's secure file transfer protocol (SFTP) site.

Examples of the data transmitted include, passenger arrival or departure code, U.S. Port/foreign port, date, airline code, flight number, total number of passengers, and transport code (commercial or private aircraft).  In addition to the application data, this circuit also carries operational, administrative, test, and /or control data traversing the network.

ITA requires the use of APIS data as an expeditious and cost effective means of collecting information and statistics regarding travel and tourism (no Personally Identifiable information (PII) is shared).  The data is generated by commercial airlines and private planes embarking and debarking passengers in the United States.

## 3.0    SECURITY CONSIDERATIONS

This section describes the security mechanisms in place to secure the connections between both systems. It outlines what the security considerations are and which organization is responsible for each.  In some cases, both organizations will share security responsibility.

### 3.1    General Information/Data Description

The purpose of the interconnection between CBP  ADIS-R and ITA's USIATS system is to share data collected by commercial airlines and private planes both on flights arriving in the U.S. (APIS data collected on passengers who debarked flights about to leave the foreign countries), and flights departing the U.S. (APIS data collected on passengers who embarked on flights in the U.S.) from the APIS record, such as passenger arrival or departure code, U.S. Port/foreign port, date, airline code, flight number, total number of passengers, and transport code (commercial or private aircraft). CBP runs algorithms to produce the data and statistics needed by ITA.  The data traversing the networks will include CBP ADIS unclassified, non-sensitive statistical and summary information. No financial or privacy data is transmitted over this circuit.

Examples of the data include, passenger arrival or departure code, U.S. Port/foreign port, date, airline code, flight number, total number of passengers, and transport code (commercial or private aircraft).  In addition to the application data, this circuit also carries operational, administrative, test, and /or control data traversing the network.

The interconnection between the CBP and the DOC ITA through the DHS RTIC Extranet will be via IPSec AES-256 encrypted tunnels and will utilize the dynamic BGP (Border Gateway Protocol) routing protocol in providing routing/geographic failover and redundancy. Within these encrypted GRE (Generic Routing Encapsulating) tunnels, the DHS RTIC Extranet will also establish IPSec AES-256 encrypted GRE tunnels in routing data to the DOC ITA network.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 3.2    ISA Requirements Within and Across Organizational Boundaries

The DHS RTIC is owned, operated and managed by DHS Office of the Chief Information Officer (OCIO)/Enterprise Service Division (ESD).  All DHS RTIC Information Technology (IT) equipment interconnected with the CBP Network within the boundary of the CBP Network is owned, operated and maintained by CBP contracted services or government employees.  All CBP Network IT equipment interconnected with the DHS OneNet RTIC at the Data Centers will be hardened, at a minimum, per DHS 4300A hardening guidelines or per specific waivers to hardening guidelines requested, documented, and approved by the appropriate ISSM.

The DHS RTIC and the DOC ITA Network shall protect the data in order to maintain confidentiality, integrity, and availability of the data and information systems.  The data and information systems will be protected in accordance with the DHS Sensitive Systems Policy Directive 4300A, the NIST SP 800-53 assigned minimum security controls, and the FIPS 199 Security Categorization of both/all systems to ensure that the connection will be protected to the requirements of the higher categorized system.  The DHS RTIC is categorized as: Availability = High, Confidentiality = High, and Integrity = High.  The ADIS system is categorized as: Availability = Moderate, Confidentiality = Moderate,  and Integrity = Moderate, as defined by NIST Federal Information Processing Standard (FIPS) FIPS-199 and documented in the DHS IACS. DOC ITA USIATS is categorized as: Availability =Moderate, Confidentiality = Moderate, and Integrity = Moderate.

**CBP  ADIS-R** and **DOC ITA USIATS were issued an Authorization to Operate (ATO)/OA:**

| System | Authorization to Operate (ATO) | On going Authorization (OA) |
|---|---|---|
| ADIS | September 11, 2019 | |
| DOC ITA USIATS | August 10, 2018 | |

## 3.3    Physical Security and Environmental Controls

For DHS controlled equipment and environments, physical Security, at a minimum will be governed by DHS 4300A Sensitive Systems Policy Section 4.2 "IT Physical Security," and NIST SP 800-53 controls. DHS shall provide physical and system environmental safeguards adequate to provide protection of the system components.

The CBP PSPD systems' servers are located at the National Data Center (NDC) in Springfield, VA. CBP PSPD systems are accredited to ensure adequate physical and environmental controls have been implemented for the system.  Physical Security, at a minimum, will be governed by DHS Sensitive Systems Policy Handbook 4300A Section 4.2 "IT Physical Security," and NIST SP 800-53 controls.

The NDC complex is a 24x7x365 guarded facility with a physical security intrusion detection system that monitors doors, ceilings and windows.  NDC is under 24-hour video surveillance and surrounded by a chain-link fence with barbed wire and motion sensors.  NDC systems are protected from power failures by back-up power generators.  NDC has fire detection and suppression system installed throughout the building including the server rooms.  CBP maintains a physically secure facility where

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

access to the building is controlled by restricted access, and visitors are required to be escorted at all times.

<u>DOC Office of Security (OSY) Policy for Physical Security</u>

DOC ITA is currently hosting all non-SaaS (Software as a Service) infrastructure in the Amazon Web Services (AWS) cloud.  AWS US East/West leverages the Infrastructure-as-a-Service (IaaS) cloud computing model as defined by the NIST Special Publication 800-145 (September 2011).  The IaaS model enables convenient, on-demand Internet access to a shared pool of configurable AWS computing resources such as servers, storage, network infrastructure, applications, and other services.  AWS provides facilities and hardware in support of the AWS US East/West services with security features controlled by AWS at the infrastructure level.  In the IaaS model, AWS is responsible for applicable service delivery layers including: infrastructure (i.e., hardware and software that comprise the infrastructure); and service management processes (i.e., the operation and management of the infrastructure and the system and software engineering lifecycles). Customers rely on AWS to manage the cloud infrastructure including the network, data storage, system resources, data centers, physical security, reliability, and supporting hardware and software.

## 3.4   Data Sensitivity

All data traversing this connection are presumed Sensitive, but Unclassified (SBU), and includes data that is, but not limited to, Sensitive Personally Identifiable Information, For Official Use Only, and/or Law Enforcement Sensitive.

The highest level of data that traverses the DHS RTIC and CBP is Sensitive but Unclassified (SBU).

**Table 1: FIPS 199 Security Categorization**

| System | Confidentiality | Integrity | Availability | Overall |
|---|---|---|---|---|
| ADIS | MODERATE | MODERATE | MODERATE | MODERATE |
| ITA USIATS | MODERATE | MODERATE | MODERATE | MODERATE |
| DHS RTIC | HIGH | HIGH | HIGH | HIGH |

Security measures are in place to protect all data transiting the DHS RTIC Extranet, as required by the Office of Management and Budget (OMB).  The drawings provided in this document identify the layered approach to security at the RTIC in section 4.0 of this document.

## 3.5   Services Offered

The interconnection between the CBP and the DOC ITA Network connected through the DHS RTIC are supported by Multiprotocol Label Switching (MPLS) at the RTIC.  DHS OneNet transport services utilize MPLS and Dynamic Multipoint Virtual Private Network (DMVPN) technologies. The DHS RTIC provides WAN connectivity services, Internet services, and perimeter security protection to the ADIS system.

The interconnection between CBP ADIS and the DOC ITA Network via the DHS RTIC is supported by secure Web services and/or SFTP.  CBP provides secure Web services and/or SFTP hosted in the CBP

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

DMZ and accessible over the Internet to the DOC ITA Network.  The DOC ITA Network will be provided visibility to the CBP DMZ only for specific authorized client Internet Protocol (IP) addresses. Likewise, the DOC ITA Network will provide secure Web services and/or SFTP that would be invoked by CBP.  The Advanced Encryption Standard (AES) will be used at the 256 bit level at the line level Transport Level Security 1.2 (TLS).  TLS is used to encrypt the segments of network connections above the Transport Layer, using symmetric cryptography for privacy and a keyed message authentication code for message reliability.  A unique authentication token (currently a user ID and password) will be assigned to the DOC ITA Network.

Services and ports that are needed to access the DHS systems are listed in Attachment A: System Connection Overview, DHS RTIC, CBP and ITA, allowed Ports, Protocols & Services.

## 3.6   Period of Operation

CBP ADIS and the DOC ITA systems are operational 24 hours a day, 7 days a week.

## 3.7   User Community

The CBP user community is mainly comprised of officers, government employees, and contractors, all with a favorably completed Background Investigation (BI).  Additionally, other users may include employees or contractors of other DHS Components and other Federal agencies.  All CBP users will have appropriately adjudicated suitability background investigations and will be U.S. citizens.

### ITA

The ITA user community is comprised of ITA employees and contractors.  All ITA users have appropriate clearances.

## 3.8   Information Exchange Security

Information exchange will be encrypted using a FIPS 140-2 compliant SSH File Transfer Protocol (SFTP) with AES-256 bit ciphers to secure the connection.

Dynamic Multipoint Virtual Private Network (DMVPN) provides a mechanism for the dynamic negotiation of IPSec encrypted tunnels between any two endpoints, alleviating the need for complex router configurations.

DHS RTIC maintains the following Intrusion Detection System (IDS)/Intrusion Protection System (IPS) and firewalls on the DHS RTIC:

Please contact the DHS SOC at 1-877-347-1638, email: dhs.soc@dhs.gov for all IDS/IPS and firewalls on the DHS RTIC.

Please contact DOC ITA's Network Operations Center (NOC) at csc@trade.gov or Chuck Hicks at Chuck.Hicks@trade.gov, 202-482-0450 for all IDS/IPS and firewalls on the DOC ITA Network.

Specific protocols and ports that are needed to support this interconnection are provided in attachment A.  Ports and protocols not specifically defined in Attachment A will be approved by DHS firewall change control procedures.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

Both organizations will ensure that virus and spyware detection and eradication capabilities are used where appropriate (e.g., workstations, laptops, servers, etc.) and that adequate system access controls are in place and maintained on all components connected to the systems.

### 3.9    Trusted Behavior / Rules of Behavior (RoB)

The CBP ADIS and ITA USIATS users, to include system administrators, are expected to protect data in accordance with the policies, standards, and regulations specified for each system.  This includes CBP ADIS and ITA USIATS policy and the documented rules of behavior for each system.

**DOC ITA**

DOC ITA Security Rules of Behavior, October 3, 2014.

The *DHS 4300A Sensitive Systems Handbook, Attachment G, Rules of Behavior* as specified by the DHS CISO applies to both systems.

### 3.10    Formal Security Policy

Policy documents that govern the protection of the data between the two organizations' systems are:

- *NIST SP 800-47, Security Guide for Interconnecting Information Technology Systems*, August 2002
- *DHS Sensitive Systems Policy Directive 4300A,* Version 13.1, July 27, 2017
- *DHS 4300A Sensitive Systems Handbook*, Version 12.0, November 15, 2015
- *DHS 4300A Sensitive Systems Handbook, Attachment D Type Accreditation*. Version 11.0, August 5, 2015
- *DHS 4300A Sensitive Systems Handbook*, *Attachment F, DHS, Incident Response*, 12.0, November 15, 2015
- *DHS 4300A Sensitive Systems Handbook*, *Vulnerability Assessment Program*, Attachment O, Version 9.1, July 24, 2012

**ITA**

- DOC ITA Security Program Policies, Version 2.0, dated September 23, 2013

### 3.11    Incident Reporting

The organization discovering a security incident will report it internally, in accordance with the organization's incident reporting procedures.  Each organization will ensure that the other connecting organization is notified when security incidents may have affected the confidentiality, integrity or availability of the shared data or systems being accessed.

**Table 3: Points of Contact for Incident Reporting**

| Contact Group | Phone/Email | Hours |
|---|---|---|
| DHS Network Operations Center (NOC) and Computer Incident | 1-877-DHS1NET or 1-877-347-1638 (Option 1 = NOC, Option 2 | 24 x 7 x 365 |

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

| Security Reporting Center (CSIRC)/Security Operations Center (SOC) | = SOC) | |
|---|---|---|
| DHS CBP | (703) 921-6507<br>CBPSOC@cbp.dhs.gov | 24 x 7 x 365 |
| DOC/ITA | 202-482-0955<br>CSC@trade.gov | 24 x 7 x 365 |

## 3.12    System Monitoring

DHS RTIC IDS/IPS & Firewalls: Please contact the DHS SOC at 1-877-DHS1NET or 1-877-347-1638 (Option 2), dhs.soc@hq.dhs.gov for details on the DHS monitoring security vulnerabilities and compliance.

DHS RTIC performance and monitoring: Please contact the DHS SOC at 1-877-DHS1NET or 1-877-347-1638, dhs.soc@hq.dhs.gov for details on the DHS security monitoring tools:

Information provided upon request.  The POC is CSIRC 1-877-DHS1NET or 1-877-347-1638 (Option 2).

**CBP**

CPB IDS/IPS & Firewalls: Please contact the CBP SOC at (703) 921-6507, CBPSOC@cbp.dhs.gov for details on the CBP monitoring security vulnerabilities and compliance.

CBP performance and monitoring:  Please contact the CBP SOC at (703) 921-6507, CBPSOC@cbp.dhs.gov for details on the CBP security monitoring tools.

Information provided upon request.  The POC is CBPSOC@cbp.dhs.gov (703) 921-6507.

**DOC ITA**

Please contact ITA Information Security at 202-482-3801 or mailto: OpSec@trade.govfor details on ITA compliance, vulnerability assessment, or event monitoring.  For network performance information please contact 202-482-3801 or ITA-NOC@trade.gov.

## 3.13    Security Audit Trail Responsibility

Both parties are responsible for auditing system security events and user activities involving the interconnection.  Activities that will be recorded include:

- event type
- date and time of event
- user identification
- workstation/server identification
- success or failure of access attempts

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- security actions taken by system administrators or ISSOs

Given the voluminous nature of audit logs, the logs should be kept at a manageable size by setting logging levels appropriately.  Automated tools will be used for scanning for anomalies, unusual patterns, and known attack signatures, and will be configured to alert a system administrator if a threat is detected.  An experienced system administrator or security manager will periodically review the logs to detect patterns of suspicious activity that scanning tools may not recognize.

Audit logs will be retained for 90 days on-line and available for at least three (3) years offline.

### 3.14   Specific Equipment/Service Restrictions

The use of specific prohibited or restricted services, protocols, and ports listed in the DHS 4300A System Security Handbook (SSH) require an approved waiver or exception agreement between the system AOs.  Any additional interconnections to either system shall be documented in the appropriate security documentation and each party shall be notified of the new interconnections.

DOC ITA is currently hosting all non-Saas (Software as a Service) infrastructure in the Amazon Web Services (AWS) cloud.

### 3.15   Dial-Up/Remote Connectivity

There is no remote dial-up to this system.  All access is via network connectivity through secure connections.

### 3.16   Training and Awareness

Both parties will ensure that all individuals using the systems (i.e., CBP ADIS and ITA USIATS) have attended initial basic and annual refresher Cyber Security Awareness and Training.  Both parties will ensure that persons with significant security responsibilities for the systems receive annual role based training covering their specific areas of responsibility.  This training should ensure that staff members know how to report suspicious or prohibited activities.

### ITA

It is required that all ITA employees and contractors take the ITA Security Awareness Training.  New hires must take the training as part of their on-boarding process and all users must take refresher training annually.  Each supervisor and manager is required to ensure that their personnel complete training and that a training record is maintained.

### 3.17   Security Documentation

Security Documentation (SA) documentation will be updated to reflect the establishment of this interconnection and whenever a significant system change occurs or at least annually.  This ISA will be updated should any of the information contained within change.  The following information, at a minimum, will be accurately maintained within this ISA:

- Names of interconnected systems

- Organizations owning the other systems

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

- Type of interconnection

- Name and title of authorizing management officials (e.g. Chief Information Officer or Designated Authorizing Authority)

- Interaction among the systems

All future changes relating to the security architecture of either system will be updated within the corresponding security documents.

## 3.18    Change Control

Significant changes to the system architecture, documentation, or configurations will be reviewed, approved and documented in accordance with each organization's configuration/change control process. Each organization will notify the other if a system change significantly changes the approved security posture of the system or introduces new significant residual risk to either system.  Whenever significant changes are made at one or both organizations, e.g., through additional staff, service, etc., this ISA will be updated.

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

## 4.0    TOPOLOGICAL DRAWING

An architecture diagram showing the system interconnection is contained below. The diagrams illustrate all communication paths, circuits, and other components used for the interconnection.



FOR OFFICIAL USE ONLY

**FOR OFFICIAL USE ONLY**



**FOR OFFICIAL USE ONLY**

FOR OFFICIAL USE ONLY

## 5.0    SIGNATORY AUTHORITY

This ISA is valid for three (3) years after the latest date on the signatures listed below, if the technology documented herein does not change or if there are no other intervening requirements for updates. At that time it must be reviewed, updated, and reauthorized. The security controls for this interconnection will be reviewed at least annually or whenever a significant change occurs. Either party may terminate this agreement with thirty days advanced notice. Noncompliance on the part of either organization or its users or contractors with regards to security policies, standards, and procedures explained herein may result in the immediate termination of this agreement.

| | |
|---|---|
| **Phillip A. Landfried**<br><br>Assistant Commissioner<br><br>Office of Information and Technology<br><br>U.S. Customs and Border Protection | PHILLIP A LANDFRIED  Digitally signed by PHILLIP A LANDFRIED Date: 2020.03.31 12:05:46 -04'00' |
| | Signature                                Date |
| **DOC ITA AWS AO**<br><br>**Andre' Mendes**<br><br>Chief Information Officer<br><br>Office of the Chief Information Officer<br><br>International Trade Administration<br><br>U.S. Department of Commerce | RONA BUNN  Digitally signed by RONA BUNN Date: 2020.03.31 15:28:34 -04'00' |
| | Signature                                Date |
| **Dr. Thresa Lang**<br><br>Acting Chief Information Security Officer<br><br>Office of the Chief Information Officer<br><br>U.S. Department of Homeland Security | |
| | Signature                                Date |

# ATTACHMENT A:  SYSTEM CONNECTION OVERVIEW

## DHS RTIC, CBP, and ITA, allowed Ports, Protocols & Services

The following ports, protocols, and services are allowed between DHS RTIC, CBP, and ITA, Network, and Security Domains by default.

|  | CBP ADIS (ADIS-R) | ITA USIATS |
|---|---|---|
| Port Number (Server / Destination | 22 | Web Services on 443 SFTP on 22, 2201, 2202 |
| IP Protocol (TCP/UDP) | TCP/IP | TCP |
| Software Application | SFTP | SFTP |
| PII Data?  (Yes/No) | No | No |
| IBI Data?  (Yes/No) | No | No |
| Financial Data? (Yes/No) | No | No |
| Encryption Used | TLS 1.2 | TLS 1.2 |

FOR OFFICIAL USE ONLY

## ATTACHMENT B: DATA TRANSMITTED FROM ADIS-R TO USIATS

| Seq | Field Name | Data Type | Source Table/Column Name | Data Format |
|---|---|---|---|---|
| 1 | Manifest_Id | NUMBER(38,0) | HPPQ.MNFST_PSNGR.MNFST_ID | |
| 2 | Arrival_Departure_Code | CHAR(1 CHAR) | HPPQ.MNFST.TRVL_DRCTN_CD | |
| 3 | Airline_Class_Code | CHAR(3 CHAR) | HPPQ.PQS_CARR_MNFST.CARR_CD | |
| 4 | Airline_Code | CHAR(3 CHAR) | HPPQ.PQS_CARR_MNFST.CARR_CD | |
| 5 | Flight_Number | VARCHAR2(7 CHAR) | HPPQ.PQS_CARR_MNFST.CARR_RTE_NBR | |
| 6 | US_Port_Code | VARCHAR2(10 CHAR) | HPPQ.MNFST.TRVL_DRCTN_CD, DPRTR_LOC_CD, ARVL_LOC_CD | |
| 7 | Arrival_Date | CHAR(8 CHAR) | HPPQ.MNFST.ARVL_DT | MMDDYYYY |
| 8 | Transportation_Code | CHAR(3 CHAR) | HPPQ.PQS_CARR_MNFST.CARR_CD | |
| 9 | Total_PAX | NUMBER | | |
| 10 | Foreign_Port_Code | VARCHAR2(10 CHAR) | HPPQ.MNFST.TRVL_DRCTN_CD | |
| 11 | Passengers_US_DOC | NUMBER | HPPQ.MNFST_PSNGR_DOC.ISUNG_ISO_CTRY_CD, HPPQ.MNFST.ARVL_DT, HPPQ.MNFST_PSNGR.MNFST_ID | |
| 12 | Passengers_CAN_DOC | NUMBER | HPPQ.MNFST_PSNGR_DOC.ISUNG_ISO_CTRY_CD, HPPQ.MNFST.ARVL_DT, HPPQ.MNFST_PSNGR.MNFST_ID | |
| 13 | Passengers_Other_DOC | NUMBER | HPPQ.MNFST_PSNGR_DOC.ISUNG_ISO_CTRY_CD, HPPQ.MNFST.ARVL_DT, HPPQ.MNFST_PSNGR.MNFST_ID | |
| | 45+ fields | | | |

FOR OFFICIAL USE ONLY

# Attachment 7

**DHS/CBP I-94 Data Share Agreement with NTTO**
**Process Implemented from 2011 through 2015**

**Step A**

> **DHS/CBP Responsibilities**
> **CD - Disc**
> 1. Creates raw I-94 file containing millions of individual records.
> 2. Transmits CD - Disc (monthly raw data file) to CIC Research, Inc.

**Step B**

> **CIC Research, Inc. (CIC) Responsibilities**
> **SAS Server**
> 1. Receives CD - DISC (raw data file) from DHS/CBP.
> 2. Loads raw data into a SAS Database on a SAS Server. No data are modified.
> 3. Cleans data. Identifies duplicates and invalid records. No records are deleted.
> 4. Safeguards against disclosure of personally identifiable and sensitive information (e.g., I-94 Number).
>    No information is deleted.
> 5. Creates additional fields on records to assist with processing reports from the SAS Database more efficiently.
>    None of the data supplied by CBP is modified.
> 6. Aggregates and processes data based on the UNWTTO definition of an international visitor.
> 7. Output Files are generated in excel, pdf, or specified data file formats.
>    Using SAS programs on the SAS Server.

**Step C**

> **CIC Research, Inc. (CIC) Responsibilities**
> **File Server**
> 1. Output files are transferred and stored on a CIC-maintained File Server.
> 2. Output files include:
>    Summary of International Travel to the U.S. Report (excel and pdf) ("Standardized Report").
>    Custom tables, reports, and data files (excel, pdf, or specified data file formats) purchased by clients.

**Step D**

> **National Travel and Tourism Office (NTTO) Responsibilities**
> **Data Files Received Via Email and Stored on Agency-Maintained File Server**
> 1. NTTO receives processed and aggregated output files from CIC via e-mail.
>    Summary of International Travel to the U.S. Report (excel and pdf formats) ("Standardized Report").
>    Custom tables, reports, and data files (excel, pdf, or specified data file formats) purchased by clients.